# 21-1920-cr

# United States Court of Appeals

### *for the*

# Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

ARI TEMAN, AKA Sealed Defendant 1,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 1 of 11 (Pages A-1 to A-128)

KEDAR S. BHATIA
WON S. SHIN
  *Assistant U.S. Attorney*
UNITED STATES ATTORNEY'S OFFICE
  SOUTHERN DISTRICT OF NEW YORK
*Attorneys for Appellee*
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-2200

EDEN QUAINTON
QUAINTON LAW
*Attorneys for Defendant-Appellant*
2 Park Avenue, 20th Floor
New York, New York 10169
(212) 419-0575

i

# TABLE OF CONTENTS

**Page**

District Court Docket Entries ................................... A-1

Complaint, filed June 20, 2019 ................................. A-46.2

Notice of Appearance, dated August 27, 2019 .......... A-47

Indictment, filed September 26, 2019 ....................... A-49

Waiver of Appearance for Arraignment, dated
    October 14, 2019 ................................................... A-53

Transcript of Proceedings held before the
    Honorable Paul A. Engelmayer, dated
    October 21, 2019 ................................................... A-55

Supeseding Indictment, filed November 12, 2019 .... A-96.1

Transcript of Proceedings held before the
    Honorable Paul A. Engelmayer, dated November
    21, 2019 ................................................................. A-96.7

Opinion and Order of the Honorable Paul A.
    Engelmayer, dated December 20, 2019 ................. A-97

Second Superseding Indictment, filed
    January 3, 2020 ..................................................... A-121

Defendant Teman's Requested Voir Dire Questions,
    filed January 6, 2020 ............................................ A-129

Excerpts of Transcript of Conference Proceedings
    held before the Honorable Paul A. Engelmayer,
    dated January 10, 2020 .......................................... A-137.1

Transcript of Conference Proceedings held before
    the Honorable Paul A. Engelmayer, dated
    January 10, 2020 ................................................... A-137.6

Letter from Kedar S. Bhatia to the Honorable Paul
    A. Engelmayer, dated January 14, 2020 ............... A-137.96

ii

**Page**

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 21, 2020 ..................................................... A-138

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 22, 2020 ..................................................... A-265

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 23, 2020 ..................................................... A-398

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 24, 2020 ..................................................... A-672

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 27, 2020 ..................................................... A-998

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 28, 2020 ..................................................... A-1187

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 29, 2020 ..................................................... A-1264

Verdict Sheet, dated January 29, 2020 ...................... A-1298.1

Order of the Honorable Paul A. Engelmayer, dated
    January 29, 2020 ..................................................... A-1299

Defendant's Motion for Judgment of Acquittal or in
    the Alternative, Motion for New Trial, filed
    February 26, 2020 ................................................. A-1437

Motion for New Trial Based on Undisclosed Brady
    and Jencks Act Evidence, filed April 9, 2020 ....... A-1473

iii

**Page**

Exhibit A to Motion -
Excerpts of Transcript of Proceedings, dated
August 9, 2018 ................................................ A-1498

Exhibit B to Motion -
Report of Violations of New York City's Housing
Maintenance Code ............................................ A-1512

Exhibit C to Motion -
Report of Violations of New York City's Housing
Maintenance Code ............................................ A-1513

Exhibit D to Motion -
HPD's Housing Maintenance Code Violations
User Guide ...................................................... A-1514

Exhibit E to Motion -
Report re: New York Civil Litigation – Joseph
Soleimani ........................................................ A-1548

Exhibit F to Motion -
Report re: New York Civil Litigation – Elie
Gabay .............................................................. A-1549

Exhibit G to Motion -
Glossary of Terms for Litigation Status Report
from HPD .......................................................... A-1550

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated April 9, 2020 .............. A-1552

Letter from Kedar S. Bhatia, Assistant United States
Attorney to the Honorable Paul A. Engelmayer,
dated May 1, 2020 re: Trial Exhibits .................... A-1554

Government's Exhibits:

GX 101-
GateGuard Account Opening Documents ............. A-1555

GX 102 -
GateGuard Bank Statements .................................. A-1559

iv

Page

GX 103-
Friend or Fraud Account Opening Documents ...... A-1581

GX 104-
Friend or Fraud Bank Statements .......................... A-1585

GX 105-
Touchless Labs Account Opening Documents ...... A-1609

GX 106-
Touchless Labs Bank Statements........................... A-1613

GX 107 -
Ari Teman Account Opening Document................ A-1629

GX 108-
Ari Teman Bank Statements .................................. A-1631

GX 110-
April 19, 2019 2:37 PM Surveillance
Photographs ........................................................... A-1649

GX 111-
April 19, 2019 6:00 PM Surveillance
Photographs ........................................................... A-1652

GX 112-
May 8, 2019 3_04 PM Surveillance
Photographs ........................................................... A-1655

GX 113-
Bank Records Spreadsheet
(CD-Rom)* ........................................................... A-1657.1

GX 114 -
Returned Check Records ...................................... A-1658

GX 121 -
ABJ Lenox Account Opening Document .............. A-1660

---

* GX 113 is a Microsoft Excel file. CD-Rom with the Excel
spreadsheet provided to Court and Service parties.

v

Page

GX 122 -
ABJ Lenox Bank Statements .................................. A-1661

GX 123 -
ABJ Milano Account Opening Documents ........... A-1669

GX 124 -
ABJ Milano Bank Statements................................ A-1670

GX 127 -
May 2, 2019 Letter - ABJ Lenox .......................... A-1678

GX 129 -
May 2, 2019 Letter - ABJ Milano......................... A-1679

GX 130 -
ABJ Lenox Checks ............................................... A-1680

GX 131 -
ABJ Milano Checks .............................................. A-1682

GX 141 -
18 Mercer Account Opening Documents .............. A-1685

GX 142 -
18 Mercer Bank Statements.................................. A-1694

GX 143 -
April 4, 2018 Check from 18 Mercer Equity to
GateGuard............................................................. A-1699

GX 144 -
518 W 204 Account Opening Documents ............. A-1700

GX 145 -
518 W 204 Bank Statements................................. A-1707

GX 146 -
January 31, 2018 Check from 518 W 204 to
GateGuard............................................................. A-1725

vi

**Page**

GX 147 -
March 28, 2019 Check from 518 West 205 to
GateGuard.................................................. A-1726

GX 150 -
Affidavit.................................................. A-1727

GX 201 -
March 28, 2019 Check from Coney Realty to
GateGuard.................................................. A-1728

GX 202 -
March 28, 2019 Check from 18 Mercer Equity to
GateGuard.................................................. A-1729

GX 203 -
April 19, 2019 Check from 518 West 205 to
GateGuard.................................................. A-1730

GX 204 -
April 19, 2019 Check from ABJ Milano to
GateGuard.................................................. A-1733

GX 205 -
April 19, 2019 Check from ABJ Lennox to
GateGuard.................................................. A-1739

GX 206 -
April 19, 2019 GateGuard Counter Deposit .......... A-1757

GX 401 -
September 9, 2017 E-mail - 'We're Live' ............. A-1758

GX 402 -
November 6, 2017 E-mail - 'Current Issues'......... A-1760

GX 403 -
March 9, 2018 E-mail - 'Ending GateGuard' ........ A-1761

GX 404 -
May 7, 2018 E-mail - 'All Communication in
Writing'.................................................. A-1762

vii

**Page**

GX 405 -
May 22, 2018 E-mail - 'GateGuard' ...................... A-1763

GX 406 -
August 26, 2018 E-mail - 'Dispute on Charge...' .. A-1765

GX 407 -
September 18, 2018 E-mail - 'Sublet Spy Hits...' . A-1767

GX 408 -
December 14, 2018 E-mail - 'Notice of Intent' ..... A-1773

GX 409 -
June 14, 2019 GateGuard Invoice ......................... A-1775

GX 409A -
Invoices (1) ............................................... A-1777

GX 409B -
Invoices (2) ............................................... A-1785

GX 409C -
Conversation between Teman and Soleimani ........ A-1786

GX 412 -
January 1, 2018 E-mail - 'Tenant Ana Esterg' ....... A-1787

GX 413 -
January 19, 2018 E-mail - 'Invoice Sent' .............. A-1788

GX 414 -
January 24, 2018 E-mail - 'Form for the 10
Buildings' ............................................... A-1791

GX 415 -
March 25, 2018 E-mail - 'Invoice for 20
Buildings' ............................................... A-1795

GX 416 -
March 26, 2018 E-mail - 'Invoice for 20
Buildings' (1) ........................................... A-1815

viii

**Page**

GX 417 -
March 26, 2018 E-mail - 'Invoice for 20
Buildings' (2) ........................................................ A-1820

GX 418 -
March 27, 2018 E-mail - 'Proof it's Your...' .......... A-1829

GX 431 -
April 4, 2018 E-mail - 'Invoice' ............................ A-1831

GX 441 -
GateGuard Terms and Conditions........................... A-1834

GX 442 -
April 2, 2018 E-mail - 'References' ...................... A-1856

GX 443 -
January 7, 2019 E-mail - 'Contract' ..................... A-1862

GX 501 -
Bank Records Stipulation ..................................... A-1868

GX 702 -
January 2, 2019 WhatsApp Messages ................... A-1872

GX 704 -
April 2, 2019 WhatsApp Messages ...................... A-1874

GX 727 -
April 2, 2019 Whatsapp Messages (2).................. A-1875

GX 728 -
April 3, 2019 Whatsapp Messages ....................... A-1876

GX 729 -
April 10, 2019 WhatsApp Messages .................... A-1877

Defense Exhibits:

DX 2 -
Payment Terms (1/27/2019).................................. A-1880

DX 14 -
October 11, 2018 E-mail – 'ABJ Properties'......... A-1887

ix

**Page**

DX 15 -
October 22, 2018 E-mail - 'SubletSpy hits' .......... A-1889

DX 16 -
'Notice of Hold' ....................................................... A-1892

DX 29 -
Affidavit ................................................................. A-1893

DX 36 -
March 28, 2018 E-mail – 'Invoice for 20
Buildings' ............................................................... A-1894

DX 49 -
Declaration ............................................................. A-1902

DX 51 -
Chase Information Request .................................... A-1903

DX 52 -
Chase Information Request .................................... A-1904

DC 62 -
March 9, 2018 E-mail Correspondence ................. A-1928

DX 70 -
GateGuard Logs ..................................................... A-1930

DX 71 -
May 22, 2018 E-mail – 'Re: Gateguard' ............... A-1932

Order of the Honorable Paul A. Engelmayer, dated
May 6, 2020 ........................................................... A-1933

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated May 8, 2020 ............... A-1935

Opinion and Order of the Honorable Paul A.
Engelmayer, dated June 5, 2020 ........................... A-1937

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated June 29, 2020 ............. A-2044

x

| | Page |
|---|---|
| Sentencing Memorandum and Motion for Downward Variance, filed July 7, 2020................. | A-2045 |
| Exhibit 1 to Sentencing Memorandum - Letter from Dr. Rami Cohen, M.D to the Honorable Paul A. Engelmayer, dated June 29, 2020........................................................ | A-2070 |
| Exhibit 2 to Sentencing Memorandum - Letter from Juhan Sonin to the Honorable Paul A. Engelmayer, dated July 6, 2020............................ | A-2074 |
| Exhibit 3 to Sentencing Memorandum - Letter from Jeffrey Katz to the Honorable Paul A. Engelmayer ................................................................ | A-2076 |
| Exhibit 4 to Sentencing Memorandum - Letter from Oliver Josephs t to the Honorable Paul A. Engelmayer, dated June 6, 2020 ............... | A-2077 |
| Exhibit 5 to Sentencing Memorandum - Letter from Thomas Orosz to the Honorable Paul A. Engelmayer ........................................................ | A-2079 |
| Exhibit 6 to Sentencing Memorandum - Letter from David Diwby to the Honorable Paul A. Engelmayer ........................................................ | A-2080 |
| Exhibit 7 to Sentencing Memorandum - Letter from Nachum Klar to the Honorable Paul A. Engelmayer, dated July 6, 2020 ........................ | A-2082 |
| Exhibit 8 to Sentencing Memorandum - Letter from Anthony Zachariadis to the Honorable Paul A. Engelmayer, dated July 6, 2020............................................................ | A-2084 |
| Exhibit 9 to Sentencing Memorandum - eJewish Philanthrophy- Coverage of Teman's Award ................................................................ | A-2085 |

xi

**Page**

Exhibit 10 to Sentencing Memorandum -
HarvardX Verified Certificate of Achievement,
issued May 11, 2020 ............................................. A-2094

Exhibit 11 to Sentencing Memorandum -
Letter from Avi Ganz to the Honorable Paul A.
Engelmayer, dated July 7, 2020 ............................ A-2095

Exhibit 12 to Sentencing Memorandum -
Letter from Steven Oved to the Honorable Paul
A. Engelmayer, dated June 15, 2020 ..................... A-2098

Exhibit 13 to Sentencing Memorandum -
Letter from Rabbi Chaim Lipskar to the
Honorable Paul A. Engelmayer, dated
July 7, 2020 ............................................................ A-2099

Exhibit 14 to Sentencing Memorandum -
Letter from Jonathan Lubin to the Honorable
Paul A. Engelmayer ................................................ A-2101

Exhibit 15 to Sentencing Memorandum -
Letter from Talia Reiss to the Honorable Paul A.
Engelmayer ............................................................. A-2103

Exhibit 16 to Sentencing Memorandum -
Letter from Rivka Korf to the Honorable Paul A.
Engelmayer ............................................................. A-2104

Exhibit 17 to Sentencing Memorandum -
Letter from Russell DiBona to the Honorable
Paul A. Engelmayer ................................................ A-2105

Letter from Justin K. Gelfand to the Honorable Paul
A. Engelmayer, dated September 8, 2020 ............. A-2107

Appearance of Counsel, dated November 2, 2020 .... A-2108.1

Letter from Justin Harris to the Honorable Paul
Engelmayer, dated November 2, 2020 ................... A-2108.2

xii

**Page**

Exhibit B to Letter -
Letter from Justine A. Harris to Kedar Bhatia and
Edward A. Imperatore, dated October 23, 2020 .... A-2108.6

Exhibit C to Letter -
Letter from Kedar S. Bhatia to Justine A. Harris,
dated October 29, 2020 ......................................... A-2108.9

Order of the Honorable Paul A. Engelmayer, dated
November 19, 2020 ................................................ A-2109

Letter from Justine Harris to the Honorable Paul A.
Engelmayer, dated November 20, 2020 ................. A-2111

Letter from Justine Harris to the Honorable Paul A.
Engelmayer, dated November 30, 2020 ................ A-2113

Letter from Audrey Strauss to the Honorable Paul
A. Engelmayer, dated November 30, 2020 ........... A-2114

Transcript of Remote Conference Proceedings held
before the Honorable Paul A. Engelmayer, dated
December 1, 2020 .................................................. A-2116

Order of the Honorable Paul A. Engelmayer, dated
January 28, 2021 ................................................... A-2170

Letter Motion from Audrey Strauss to the
Honorable Paul A. Engelmayer, dated
April 23, 2021 ....................................................... A-2173

Exhibit A to Letter -
Proposed Order of Restitution ............................... A-2181

Exhibit B to Letter -
Proposed Preliminary Order of Forfeiture/Money
Judgment................................................................ A-2185

Exhibit C to Letter -
Document - Finocchiaro 3503-19 .......................... A-2189

Exhibit D to Letter -
Revised Document - Finocchiaro 3503-19 ............ A-2190

xiii

**Page**

Exhibit E to Letter -
Affidavit of Karen Finocchiaro, dated
April 2, 2021 ........................................................  A-2191

Letter from Andrew J. Frisch to the Honorable Paul
A. Engelmayer, dated April 23, 2021 ...................  A-2195.1

Attachment to Letter -
*Curriculum Vitae* of Richard M. Fraher.................  A-2195.3

Letter Motion to Vacate Conviction from Andrew J.
Frisch to the Honorable Paul A. Engelmayer,
dated April 28, 2021 .............................................  A-2196

Exhibit A to Letter Motion -
Document - Finocchiaro 3503-19 .........................  A-2211

Exhibit B to Letter Motion -
Revised Document - Finocchiaro 3503-19 ............  A-2213

Exhibit C to Letter Motion -
E-mail Correspondence, dated
November 30, 2020 ...............................................  A-2215

Exhibit D to Letter Motion -
E-mail Correspondence, dated March 10, 2021 ....  A-2217

Exhibit E to Letter Motion -
E-mail Correspondence, dated March 12, 2021 ....  A-2219

Exhibit F to Letter Motion -
Copies of Various Cashier's Checks ......................  A-2221

Order of the Honorable Paul A. Engelmayer, dated
May 5, 2021 ..........................................................  A-2223

Letter from Andrew J. Frisch to Kedar Bhatia, dated
May 12, 2021 ........................................................  A-2225

Annexed to Letter -
Declaration of Richard M. Fraher, executed
May 11, 2021 ........................................................  A-2226

xiv

Page

Letter from Audrey Strauss to the Honorable Paul
A. Engelmayer, dated June 9, 2021 ...................... A-2236

Letter from Andrew J. Frisch to the Honorable Paul
A. Engelmayer, dated June 14, 2021 .................... A-2246.1

Letter from Audrey Strauss to the Honorable Paul
A. Engelmayer, dated June 29, 2021 .................... A-2246.4

Transcript of Conference Proceedings held before
the Honorable Paul A. Engelmayer, dated
July 9, 2021............................................................ A-2247

Sentencing Submission Letter from Susan G.
Kellman to the Honorable Paul A. Engelmayer,
dated July 16, 2021 ................................................ A-2315

Transcript of Sentencing Proceedings held before
the Honorable Paul A. Engelmayer, dated
July 28, 2021.......................................................... A-2333

Notice of Appeal, dated August 2, 2021 .................... A-2458

Letter Motion from Ari Teman to the Honorable
Paul A. Engelmayer, dated March 3, 2022 ........... A-2459

Letter Motion from Ari Teman to the Honorable
Paul A. Engelmayer, dated April 12, 2022............. A-2462

Order of the Honorable Paul A. Engelmayer, dated
April 13, 2022........................................................ A-2463

Letter Motion from Ari Teman to the Honorable
Paul A. Engelmayer, dated April 13, 2022............. A-2465

Letter from Eden P. Quainton to the Honorable Paul
A. Engelmayer, dated April 13, 2022 .................... A-2467

Notice of Appearance, filed April 13, 2022 ............... A-2469

Letter Motion from Ari B. Teman to the Honorable
Paul A. Engelmayer, dated April 14, 2022............. A-2470

xv

**Page**

Order of the Honorable Paul A. Engelmayer, dated
    April 15, 2022.................................................... A-2473

Emergency Letter Motion from Ari B. Teman to the
    Honorable Paul A. Engelmayer, dated April 20,
    2022 ........................................................ A-2476

Order of the Honorable Paul A. Engelmayer, dated
    April 20, 2022.................................................... A-2479

Emergency Letter Motion from Ari B. Teman to the
    Honorable Paul A. Engelmayer, dated April 20,
    2022 ........................................................ A-2481

Letter from Kedar S. Bhatia, Asst. United States
    Attorney to the Honorable Paul A. Engelmayer,
    dated April 21, 2022 ............................... A-2482

Order of the Honorable Paul A. Engelmayer, dated
    April 21, 2022.................................................... A-2483

A-1

Query    Reports    Utilities    Help    Log Out

CLOSED,APPEAL,ECF,PRIOR

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:19-cr-00696-PAE-1

Case title: USA v. Teman

Magistrate judge case number: 1:19-mj-05858-UA

Date Filed: 09/26/2019

Date Terminated: 07/29/2021

Assigned to: Judge Paul A. Engelmayer

### Defendant (1)

**Ari Teman**
*TERMINATED: 07/29/2021*
*also known as*
Sealed Defendant 1
*TERMINATED: 07/29/2021*

represented by **Ari Teman**
Ari Teman
Miami Beach
650 West Ave
1704
Miami beach, Ste 1704
Miami Beach, FL 33139
781-718-3375
Email: ari@teman.com
PRO SE

**Andrew James Frisch**
Andrew J. Frisch
40 Fulton Street
New York, NY 10038
212-285-8000
Fax: 646-304-0352
Email: afrisch@andrewfrisch.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joseph Andrew Diruzzo , III**
DiRuzzo & Company
401 E Las Olas Blvd #1400
Fort Lauderdale, FL 33301
954.615.1676
Fax: 954.827.0340
Email: jd@diruzzolaw.com
*TERMINATED: 01/29/2021*
*LEAD ATTORNEY*
*Designation: Retained*

**Justin Gelfand**
Margulis Gelfand, LLC

A-2

7700 Bonhomme Ave.
Suite 750
Saint Louis, MO 63105
314-390-0234
Email: justin@margulisgelfand.com
*TERMINATED: 01/29/2021*
*Designation: Retained*

**Justine Aleta Harris**
Sher Tremonte LLP
90 Broad Street
New York, NY 10004
212-202-2600
Fax: 212-202-4156
Email: jharris@shertremonte.com
*TERMINATED: 12/11/2020*
*Designation: Retained*

**Noam Korati Biale**
Sher Tremonte LLP
90 Broad Street
New York, NY 10004
(212)-202-2600
Fax: (212)-202-4156
Email: nbiale@shertremonte.com
*TERMINATED: 12/11/2020*
*Designation: Retained*

**Susan Gail Kellman**
Law Offices of Susan G. Kellman
25 Eighth Avenue
Brooklyn, NY 11217
(718)-783-8200
Fax: (718)-783-8226
Email: sgk@kellmanesq.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1344A.F BANK FRAUD<br>(1ss-2ss) | IMPRISONMENT: One (1) year and one (1) day on each count, the terms to run concurrently. SUPERVISED RELEASE: Three (3) years on each count, the terms to run concurrently. |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION<br>(3ss-4ss) | IMPRISONMENT: One (1) year and one (1) day on each count, the terms to run concurrently. SUPERVISED RELEASE: Three (3) years on each count, the terms to run concurrently. |

**Highest Offense Level (Opening)**

Felony

A-3

| Terminated Counts | Disposition |
|---|---|
| 18:1344A.F BANK FRAUD<br>(1) | Dismissed |
| 18:1344A.F BANK FRAUD<br>(1s-2s) | Dismissed |
| 18:1028A.F FRAUD WITH<br>IDENTIFICATION DOCUMENTS<br>(AGGRAVATED IDENTITY THEFT)<br>(3s-4s) | Dismissed |
| 18:1028A.F FRAUD WITH<br>IDENTIFICATION DOCUMENTS<br>(AGGRAVATED IDENTITY THEFT)<br>(5ss-6ss) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| Complaints | Disposition |
|---|---|
| 18:1344A.F BANK FRAUD | |

---

**Plaintiff**

**USA**                                    represented by **Jacob Harris Gutwillig**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2215
Email: jacob.gutwillig@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Kedar Sanjay Bhatia**
U.S. Attorney's Office, S.D.N.Y. (SA-CR)
One Saint Andrew's Plaza
New York, NY 10007
212-637-2465
Email: kedar.bhatia@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Arthur Imperatore**
Morrison & Foerster LLP
250 West 55th St
New York, NY 10019
212-468-4320
Email: EImperatore@mofo.com
*TERMINATED: 02/24/2022*
*Designation: Retained*

A-4

| Date Filed | # | Docket Text |
|---|---|---|
| 06/20/2019 | | SEALED ORAL ORDER as to Sealed Defendant 1. (Signed by Magistrate Judge Sarah Netburn on 6/20/2019)(dif) [1:19-mj-05858-UA] (Entered: 08/21/2019) |
| 06/20/2019 | 1 | COMPLAINT as to Ari Teman (1). In Violation of 18 U.S.C. 1344 and 2 (Signed by Magistrate Judge Sarah Netburn) (dif) [1:19-mj-05858-UA] (Entered: 08/21/2019) |
| 07/03/2019 | | Arrest of Ari Teman in the United States District Court - Southern District of Florida. (dif) [1:19-mj-05858-UA] (Entered: 08/21/2019) |
| 07/23/2019 | 3 | Rule 5(c)(3) Documents Received as to Ari Teman from the United States District Court - Southern District of Florida. (dif) [1:19-mj-05858-UA] (Entered: 08/21/2019) |
| 08/21/2019 | 4 | Order to Unseal Case as to Ari Teman.. (Signed by Magistrate Judge Gabriel W. Gorenstein on 8/21/2019)(dif) [1:19-mj-05858-UA] (Entered: 08/21/2019) |
| 08/27/2019 | 5 | NOTICE OF ATTORNEY APPEARANCE: Joseph Andrew Diruzzo, III appearing for Ari Teman. Appearance Type: Retained. (Diruzzo, Joseph) [1:19-mj-05858-UA] (Entered: 08/27/2019) |
| 09/06/2019 | 6 | NOTICE OF ATTORNEY APPEARANCE: Joseph Andrew Diruzzo, III appearing for Ari Teman. (vb) [1:19-mj-05858-UA] (Entered: 09/06/2019) |
| 09/06/2019 | 7 | Minute Entry for proceedings held before Magistrate Judge Sarah Netburn:Bond Hearing as to Ari Teman held on 9/6/2019. Peter Davis Present for the Government. Defendant Ari Teman present with attorney Joseph A DiRuzzo. Agreed upon Bail conditions set: $25,000.00 PRB co-signed by 1 FRP; travel limits include the SDNY/EDNY/SDFL and points between for travel purposes only. Surrender of travel documents and no new applications; Pretrial supervision as directed; Mental health evaluation and treatment as directed by PTS; defendant must submit to a urine analysis. I Positive add the condition of drug testing / treatment. Defendant is prohibits from possession narcotics or controlled substances without a prescription. Preliminary hearing set for 9/27/19. (vb) [1:19-mj-05858-UA] (Entered: 09/06/2019) |
| 09/06/2019 | | Set/Reset Hearings as to Ari Teman: Preliminary Hearing set for 9/27/2019 at 10:00 AM in Courtroom 5A, 500 Pearl Street, New York, NY 10007 before Judge Unassigned.. (vb) [1:19-mj-05858-UA] (Entered: 09/06/2019) |
| 09/06/2019 | 8 | PRB Bond Entered as to Ari Teman in amount of $25,000.00 PRB co-signed by 1 FRP; travel limits include the SDNY/EDNY/SDFL and points between for travel purposes only. Surrender of travel documents and no new applications; Pretrial supervision as directed; Mental health evaluation and treatment as directed by PTS; defendant must submit to a urine analysis. I Positive add the condition of drug testing / treatment. Defendant is prohibits from possession narcotics or controlled substances without a prescription. (vb)[1:19-mj-05858-UA] (Main Document 8 replaced on 2/18/2020) (jw). (Entered: 09/06/2019) |
| 09/26/2019 | 9 | INDICTMENT FILED as to Ari Teman (1) count(s) 1. (jm) (Entered: 09/26/2019) |
| 09/26/2019 | | Case Designated ECF as to Ari Teman. (jm) (Entered: 09/26/2019) |
| 09/28/2019 | 10 | NOTICE OF ATTORNEY APPEARANCE: Joseph Andrew Diruzzo, III appearing for Ari Teman. Appearance Type: Retained. (Diruzzo, Joseph) (Entered: 09/28/2019) |
| 10/03/2019 | 11 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from USA dated October 3, 2019 Document filed by USA. (Gutwillig, Jacob) (Entered: 10/03/2019) |

| | | |
|---|---|---|
| 10/04/2019 | 12 | MEMO ENDORSEMENT as to Ari Teman on re: 11 LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from USA dated October 3, 2019. ENDORSEMENT: GRANTED. The Court schedules the arraignment for October 21, 2019 at 10:00 a.m. For the reasons stated above, time is excluded, pursuant to 8 U.S.C. §316l(h)(7)(A), until October 21, 2019. (Arraignment set for 10/21/2019 at 10:00 AM before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 10/4/2019) (ap) Modified on 10/7/2019 (ap). (Entered: 10/04/2019) |
| 10/04/2019 | | Set/Reset Deadlines/Hearings as to Ari Teman: Arraignment set for 10/21/2019 at 10:00 AM before Judge Paul A. Engelmayer. (do) (Entered: 10/17/2019) |
| 10/08/2019 | 13 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Justin K. Gelfand to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-17737172. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Ari Teman. (Attachments: # 1 Proposed Order, # 2 Certificate of Good Standing) (Gelfand, Justin) Modified on 10/8/2019 (wb). (Entered: 10/08/2019) |
| 10/08/2019 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice as to Ari Teman to RE-FILE Document No. 13 MOTION for Justin K. Gelfand to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-17737172. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): Pursuant to Rule 1.3. the Attorney Affidavit missing the language of disciplinary.;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (wb)** (Entered: 10/08/2019) |
| 10/10/2019 | 14 | MOTION for Justin K. Gelfand to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Ari Teman. (Attachments: # 1 Affidavit Affidavit of Justin K. Gelfand, # 2 Proposed Order, # 3 Certificate of Good Standing)(Gelfand, Justin) (Entered: 10/10/2019) |
| 10/10/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 14 MOTION for Justin K. Gelfand to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 10/10/2019) |
| 10/11/2019 | 15 | ORDER FOR ADMISSION PRO HAC VICE as to Ari Teman (1) on 14 MOTION for Justin K. Gelfand to Appear Pro Hac Vice. (Signed by Judge Paul A. Engelmayer on 10/10/2019) (ap) (Entered: 10/11/2019) |
| 10/14/2019 | 16 | CONSENT LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from USA dated October 14, 2019 Document filed by USA. (Attachments: # 1 Text of Proposed Order)(Gutwillig, Jacob) (Entered: 10/14/2019) |
| 10/15/2019 | 17 | PROTECTIVE ORDER as to Ari Teman...regarding procedures to be followed that shall govern the handling of confidential material..... (Signed by Judge Paul A. Engelmayer on 10/15/2019) (lnl) (Entered: 10/15/2019) |
| 10/15/2019 | 18 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Ari Teman. (Diruzzo, Joseph) (Entered: 10/15/2019) |
| 10/16/2019 | 19 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 10/16/2019 re: arraignment (Diruzzo, Joseph) (Entered: 10/16/2019) |
| 10/17/2019 | 20 | MEMO ENDORSEMENT as to Ari Teman on re: 19 LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 10/16/2019 re: arraignment. ENDORSEMENT: DENIED. The arraignment will proceed as scheduled. |

|  |  |  |
|---|---|---|
|  |  | For any future requests for adjournment the Court directs counsel to 2.E of this Court's Individual Rules and Practices in Criminal Cases. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 10/17/2019) (lnl) (Entered: 10/17/2019) |
| 10/21/2019 |  | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Arraignment as to Ari Teman (1) Count 1Ari Teman (1) Count 1 held on 10/21/2019.Defendant present (on bond) with attorney, Joseph Diruzzo. AUSA Jacob Gutwillig present. Court reporter present. Defendant sworn, pleads NOT GUILT to the Indictment. Bond continued. See transcript. Plea entered by Ari Teman (1) Count 1Ari Teman (1) Count 1 Not Guilty. (ajs) (Entered: 10/21/2019) |
| 10/21/2019 | 21 | SCHEDULING ORDER as to Ari Teman: For the reasons stated on the record at today's conference, it is hereby ORDERED that a conference in this matter is scheduled for November 22, 2019 at 2:30 p.m. in Courtroom 1305 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. Time is excluded, pursuant to 18 U.S.C. § 3161(h)(7)(A), until November 22, 2019. The parties shall file a joint letter by close of business tomorrow, October 22, 2019, outlining whether, and why, they prefer to proceed to trial on January 20, 2020, or, March 9, 2020. (Pretrial Conference set for 11/22/2019 at 02:30 PM in Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007 before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 10/21/2019) (lnl) (Entered: 10/21/2019) |
| 10/22/2019 | 22 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 10/22/2019 re: trial date (Diruzzo, Joseph) (Entered: 10/22/2019) |
| 10/25/2019 | 23 | ORDER as to Ari Teman: The Court thanks the parties for their joint letter. Dkt. 22. The courthouse will be closed on Monday, January 20, 2020, in observance of Martin Luther King, Jr., day. The jury trial in this matter is therefore set for January 21, 2020. The parties should clear their calendars for the entire week, and are on notice that the Court will sit on Friday, January 24, if needed. For planning purposes, a final pretrial conference is scheduled for January 10, 2020, at 10:30 a.m. SO ORDERED. (Final Pretrial Conference set for 1/10/2020 at 10:30 AM before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 10/25/2019) (lnl) (Entered: 10/25/2019) |
| 11/05/2019 | 24 | TRANSCRIPT of Proceedings as to Ari Teman re: Conference held on 10/21/19 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Kelly Surina, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/26/2019. Redacted Transcript Deadline set for 12/6/2019. Release of Transcript Restriction set for 2/3/2020. (McGuirk, Kelly) (Entered: 11/05/2019) |
| 11/05/2019 | 25 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Conference proceeding held on 10/21/19 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/05/2019) |
| 11/12/2019 | 26 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from USA dated November 12, 2019 Document filed by USA. (Gutwillig, Jacob) (Entered: 11/12/2019) |
| 11/12/2019 | 27 | (S1) SUPERSEDING INDICTMENT FILED as to Ari Teman (1) count(s) 1s-2s, 3s-4s. (jm) (Entered: 11/13/2019) |

| 11/14/2019 | 28 | MEMO ENDORSEMENT as to Ari Teman on re: 26 LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from USA dated November 12, 2019. ENDORSEMENT: The Court, at the hearing scheduled for November 22, 2019 at 2:30 p.m., will arraign Mr. Teman on the S1 Indictment. The Court had previously excluded time, pursuant to 18 U.S.C. § 3161(h)(7)(A), until that date (Dkt. No. 21), and reaffirms that exclusion as warranted. (Arraignment set for 11/22/2019 at 02:30 PM before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 11/14/2019) (ap) (Entered: 11/14/2019) |
|---|---|---|
| 11/20/2019 | 29 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 11/20/2019 re: briefing schedule (Diruzzo, Joseph) (Entered: 11/20/2019) |
| 11/20/2019 | 30 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from USA dated November 20, 2019 Document filed by USA. (Gutwillig, Jacob) (Entered: 11/20/2019) |
| 11/22/2019 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Pretrial Conference as to Ari Teman held on 11/22/2019. Defendant present (on bond) with attorneys, Joseph Diruzzo & Justin Gelfand. AUSA Jacob Gutwillig present. Court reporter present. Bond continued. See transcript. (ajs) (Entered: 11/25/2019) |
| 11/25/2019 | 31 | ORDER as to Ari Teman: For the reasons stated on the record at today's conference, the Court sets the following deadlines with regards to the defendant's anticipated pretrial motions: Defense pretrial motions, including those related to speedy trial, suppression, and venue, are due by November 27, 2019; The government's response is due by December 11, 2019; Defendant's reply is due by December 18, 2019; The Court neglected to set a deadline for motions in limine. Those will be due by January 3, 2020, with oppositions due on January 7, 2020. As stated at today's conference, proposed voir dire and requests to charge are due January 6, 2020. The final pretrial conference in this matter remains set for January 10, 2020, at 10:30 a.m. The Court will also use this date for a factual hearing on the motion to suppress, if necessary. Time is excluded, pursuant to 18 U.S.C. § 3161(h)(7)(A), until the scheduled trial date of January 21, 2020. (Time excluded from 11/22/2019 until 1/21/2020) (Motions due by 1/3/2020. Responses due by 1/7/2020) (Signed by Judge Paul A. Engelmayer on 11/22/2019) (lnl) (Entered: 11/25/2019) |
| 11/27/2019 | 32 | MOTION to Dismiss re Venue. Document filed by Ari Teman. (Attachments: # 1 Exhibit) (Diruzzo, Joseph) (Entered: 11/27/2019) |
| 11/27/2019 | 33 | MOTION to Dismiss on Speedy Trial Motion to Dismiss for Violation of the Speedy Trial Act. Document filed by Ari Teman. (Gelfand, Justin) (Entered: 11/27/2019) |
| 11/27/2019 | 34 | MOTION to Suppress Evidence. Document filed by Ari Teman. (Attachments: # 1 Exhibit 1)(Gelfand, Justin) (Entered: 11/27/2019) |
| 12/06/2019 | 35 | TRANSCRIPT of Proceedings as to Ari Teman re: Conference held on 11/22/19 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Kelly Surina, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/27/2019. Redacted Transcript Deadline set for 1/6/2020. Release of Transcript Restriction set for 3/5/2020. (McGuirk, Kelly) (Entered: 12/06/2019) |
| 12/06/2019 | 36 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Conference proceeding held on 11/22/19 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have |

|            |    |                                                                                                                                                                                                                                                                                                                                  |
|------------|----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    | seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/06/2019)                                 |
| 12/11/2019 | 37 | NOTICE OF ATTORNEY APPEARANCE Kedar Sanjay Bhatia appearing for USA. (Bhatia, Kedar) (Entered: 12/11/2019)                                                                                                                                                                                                                        |
| 12/11/2019 | 38 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** RESPONSE in Opposition by USA as to Ari Teman re: 33 MOTION to Dismiss on Speedy Trial *Motion to Dismiss for Violation of the Speedy Trial Act.*, 32 MOTION to Dismiss *re Venue.*, 34 MOTION to Suppress *Evidence.*. (Gutwillig, Jacob) Modified on 12/12/2019 (ka). (Entered: 12/11/2019) |
| 12/12/2019 |    | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Ari Teman: Notice to Attorney Gutwillig, Jacob to RE-FILE Document 38 Response in Opposition to Motion. Use the event type Memorandum in Opposition to Motion found under the event list Replies, Opposition and Supporting Documents.** (ka) (Entered: 12/12/2019) |
| 12/12/2019 | 39 | MEMORANDUM in Opposition by USA as to Ari Teman re 33 MOTION to Dismiss on Speedy Trial *Motion to Dismiss for Violation of the Speedy Trial Act.*, 32 MOTION to Dismiss *re Venue.*, 34 MOTION to Suppress *Evidence.*. (Gutwillig, Jacob) (Entered: 12/12/2019)                                                                 |
| 12/12/2019 | 40 | ORDER as to Ari Teman: The Court will hold a telephonic conference at 4 p.m. today to address the defendant's pretrial supervision. All counsel and the defendant are expected to participate in such conference. The Court directs government counsel to circulate a dial-in number. SO ORDERED. (Telephone Conference set for 12/12/2019 at 04:00 PM before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 12/12/2019) (lnl) (Entered: 12/12/2019) |
| 12/12/2019 | 41 | NOTICE OF ATTORNEY APPEARANCE Edward Arthur Imperatore appearing for USA. (Imperatore, Edward) (Entered: 12/12/2019)                                                                                                                                                                                                              |
| 12/12/2019 |    | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Telephone Conference as to Ari Teman held on 12/12/2019. Defendant present (on bond) with attorneys, Joseph Diruzzo & Justin Gelfand. AUSAs Jacob Gutwillig, Kedar Bhatia & Edward Imperatore present. USPTS Officers Dayshawn Bostic & David Ozoria present. Court reporter present. See transcript. (ajs) (Entered: 12/19/2019) |
| 12/16/2019 | 42 | ORDER as to Ari Teman: The Court has received the Government's memorandum of law, Dkt. 39, submitted in opposition to defendant Ari Teman's motion to suppress, Dkt. 34. The Government's memorandum of law turns on factual representations about the defendant's arrest, including with respect to the identity, affiliation, and authority of the law enforcement officers who were present for and carried out that arrest. These facts appear germane to the resolution of the motion. However, these factual representations, at present, are contained solely in a memorandum of law. As such, they are not cognizable, and the Court cannot credit them. The Government has not substantiated them by, e.g., submitting along with its memorandum of law a sworn declaration or affidavit by a person competent to attest to such facts, setting forth the basis for the witness's knowledge. The Court will give the Government until the close of Tuesday, December 17, 2019, to file a sworn declaration validating the factual representations in its memorandum of law. To the extent there is documentary corroboration of these points, the Court encourages Government counsel to attach such documentation as exhibits to its declaration. SO ORDERED (Signed by Judge Paul A. Engelmayer on 12/16/2019) (lnl) (Entered: 12/16/2019) |

| 12/17/2019 | 43 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated December 17, 2019 re: Affidavit In Support of Memorandum of Law Document filed by USA. (Bhatia, Kedar) (Entered: 12/17/2019) |
| 12/18/2019 | 44 | REPLY MEMORANDUM OF LAW in Opposition as to Ari Teman re: 33 MOTION to Dismiss on Speedy Trial *Motion to Dismiss for Violation of the Speedy Trial Act.*, 32 MOTION to Dismiss *re Venue.*, 34 MOTION to Suppress *Evidence.* . (Diruzzo, Joseph) (Entered: 12/18/2019) |
| 12/20/2019 | 45 | OPINION & ORDER as to Ari Teman. CONCLUSION: For the foregoing reasons, the Court dismisses Count One of the Superseding Indictment, without prejudice. The Clerk of Court is respectfully directed to close the motion pending at docket 33. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 12/20/19)(jbo) (Entered: 12/20/2019) |
| 12/20/2019 | 47 | LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated December 20, 2019 re: Modification of Bail Conditions . Document filed by USA as to Ari Teman. (Bhatia, Kedar) (Entered: 12/20/2019) |
| 12/20/2019 | 48 | ORDER 32 Motion to Dismiss as to Ari Teman (1); 34 Motion to Suppress as to Ari Teman. The Court today has issued a decision granting defendant Ari Temans motion to dismiss Count One of Indictment S1 Cr. 696 (PAE) based on a violation of the Speedy Trial Act, 18 U.S.C. § 3161. The Court, however, has not dismissed the Indictments other three counts, and the dismissal of Count One is without prejudice to the Governments ability to bring the same charge against Teman in a new or superseding indictment. This Order addresses, and denies, the other two pretrial motions Teman has made. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 32 and 34. (Signed by Judge Paul A. Engelmayer on 12/20/2019) (jw) (Entered: 12/20/2019) |
| 12/23/2019 | 49 | LETTER RESPONSE in Opposition by Ari Teman addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated 12/23/2019 re: 47 LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated December 20, 2019 re: Modification of Bail Conditions .. (Gelfand, Justin) (Entered: 12/23/2019) |
| 12/23/2019 | 50 | ORDER as to Ari Teman: The Court has received the parties' letters, Dkts. 47 & 49, on the Government's application to modify the defendant's bail conditions based on certain recent social media postings. The Court does not believe these postings merit a change in existing bail conditions. However, the Court encourages Mr. Teman to confer with his counsel before any future such postings, as such postings have the potential to adversely affect, inter alia, Mr. Teman's legal interests in this case, depending on the course the case takes. The Clerk of Court is respectfully directed to terminate the motion pending at docket 47. (Signed by Judge Paul A. Engelmayer on 12/23/2019) (ap) (Entered: 12/23/2019) |
| 01/03/2020 | 51 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 1/3/2020 re: computers in courtroom (Diruzzo, Joseph) (Entered: 01/03/2020) |
| 01/03/2020 | 52 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 1/3/2020 re: extension of time to file m/in limine (Diruzzo, Joseph) (Entered: 01/03/2020) |
| 01/03/2020 | 53 | MEMO ENDORSEMENT as to Ari Teman on re: 52 LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 1/3/2020 re: extension of time to file m/in limine. ENDORSEMENT: Granted. (Motions due by 1/6/2020) (Signed by Judge Paul A. Engelmayer on 1/3/2019) (ap) (Entered: 01/03/2020) |
| 01/03/2020 | 54 | MOTION in Limine . Document filed by USA as to Ari Teman. (Bhatia, Kedar) |

| | | |
|---|---|---|
| | | (Entered: 01/03/2020) |
| 01/03/2020 | 55 | (S2) SUPERSEDING INDICTMENT FILED as to Ari Teman (1) count(s) 1ss-2ss, 3ss-4ss, 5ss-6ss. (jm) (Entered: 01/06/2020) |
| 01/06/2020 | 56 | Request To Charge by USA as to Ari Teman. (Bhatia, Kedar) (Entered: 01/06/2020) |
| 01/06/2020 | 57 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** Proposed Voir Dire Questions by USA as to Ari Teman. (Bhatia, Kedar) Modified on 1/7/2020 (ka). (Entered: 01/06/2020) |
| 01/06/2020 | 58 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 6, 2020 re: Proposed Verdict Form Document filed by USA. (Attachments: # 1 Exhibit Proposed Verdict Form)(Bhatia, Kedar) (Entered: 01/06/2020) |
| 01/06/2020 | 59 | Request To Charge by Ari Teman. (Gelfand, Justin) (Entered: 01/06/2020) |
| 01/06/2020 | 60 | MOTION in Limine *to Admit Defense Exhibit A*. Document filed by Ari Teman. (Attachments: # 1 Exhibit A)(Gelfand, Justin) (Entered: 01/06/2020) |
| 01/06/2020 | 61 | MOTION in Limine *to Prevent the Government from Introducing Expert Opinion Testimony at Trial*. Document filed by Ari Teman. (Attachments: # 1 Exhibit 1)(Gelfand, Justin) (Entered: 01/06/2020) |
| 01/06/2020 | 62 | MOTION in Limine *to Preclude the Government from Offering Unnoticed Rule 404(b) Evidence*. Document filed by Ari Teman. (Gelfand, Justin) (Entered: 01/06/2020) |
| 01/06/2020 | 63 | MOTION to Seal Document . Document filed by Ari Teman. (Attachments: # 1 Text of Proposed Order Proposed Order)(Gelfand, Justin) (Entered: 01/06/2020) |
| 01/06/2020 | 64 | Proposed Voir Dire Questions by Ari Teman. (Gelfand, Justin) (Entered: 01/06/2020) |
| 01/07/2020 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Ari Teman: Notice to Attorney Bhatia, Kedar to RE-FILE Document 57 Proposed Voir Dire Questions. Use the event type Proposed Examination of Jurors found under the event list Trial Documents. (ka)** (Entered: 01/07/2020) |
| 01/07/2020 | 65 | PROPOSED EXAMINATION OF JURORS by USA as to Ari Teman. (Bhatia, Kedar) (Entered: 01/07/2020) |
| 01/07/2020 | 66 | LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 7, 2020 re: Deadline for Response to Defendant's Motions In Limine . Document filed by USA as to Ari Teman. (Bhatia, Kedar) (Entered: 01/07/2020) |
| 01/07/2020 | 67 | MEMO ENDORSEMENT as to Ari Teman (1) on 66 LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 7, 2020 re: Deadline for Response to Defendant's Motions In Limine. The defendant was granted until yesterday, January 6, 2020, to file his motions. Dkt. 53. The government's request is granted. Its response is due by tomorrow, January 8, 2020, at 5 p.m. The Clerk of Court is requested to terminate the motion at Dkt. No. 66. (Signed by Judge Paul A. Engelmayer on 1/7/2020) (ap) (Entered: 01/07/2020) |
| 01/07/2020 | | Set/Reset Deadlines as to Ari Teman: Responses due by 1/8/2020. (ap) (Entered: 01/07/2020) |
| 01/07/2020 | 68 | MEMO ENDORSEMENT as to Ari Teman on re: 51 LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 1/3/2020 re: computers in courtroom. ENDORSEMENT: The Court directs counsel to submit the proposed electronic device order form that can be found on the Court's website. The Court also |

| | | directs counsel to contact the Court's A/V Department to schedule a tech walk-through of the courtroom prior to trial. (Signed by Judge Paul A. Engelmayer on 1/6/2020) (ap) (Entered: 01/07/2020) |
|---|---|---|
| 01/07/2020 | 69 | ORDER as to Ari Teman (1) granting 63 MOTION to Seal Document. The Court has received defendant's request to file one of his motions in limine under seal. Dkt. 63. The Court grants defendant leave to file such motion under seal. (Signed by Judge Paul A. Engelmayer on 1/7/2020) (ap) (Entered: 01/07/2020) |
| 01/07/2020 | 70 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated January 7, 2020 re: Bond Modification to Permit Travel to Meet with Legal Counsel . Document filed by Ari Teman. (Gelfand, Justin) (Entered: 01/07/2020) |
| 01/07/2020 | 71 | RESPONSE in Opposition by Ari Teman re: 54 MOTION in Limine .. (Gelfand, Justin) (Entered: 01/07/2020) |
| 01/08/2020 | 72 | NOTICE of notice of filing proposed order as to Ari Teman re: 68 Memo Endorsement,,. (Attachments: # 1 Text of Proposed Order)(Diruzzo, Joseph) (Entered: 01/08/2020) |
| 01/08/2020 | 73 | MEMORANDUM in Opposition by USA as to Ari Teman re 62 MOTION in Limine *to Preclude the Government from Offering Unnoticed Rule 404(b) Evidence*., 63 MOTION to Seal Document ., 61 MOTION in Limine *to Prevent the Government from Introducing Expert Opinion Testimony at Trial*., 60 MOTION in Limine *to Admit Defense Exhibit A*.. (Bhatia, Kedar) (Entered: 01/08/2020) |
| 01/08/2020 | 74 | LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 8, 2020 re: Preclude Expert Testimony . Document filed by USA as to Ari Teman. (Attachments: # 1 Exhibit Expert Disclosure Letter)(Bhatia, Kedar) (Entered: 01/08/2020) |
| 01/09/2020 | 75 | ORDER as to Ari Teman re: 74 LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 8, 2020 re: Preclude Expert Testimony. The Court has received the Governments motion in limine seeking to preclude testimony from defendant's proposed expert, J. Benjamin Davis. Dkt. 74. To allow the Court time to consider this motion in advance of the final pretrial conference tomorrow defendant's opposition is due by 5 p.m. today, January 9, 2020. (Responses due by 1/9/2020) (Signed by Judge Paul A. Engelmayer on 1/9/2020) (ap) (Entered: 01/09/2020) |
| 01/09/2020 | 76 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** LETTER RESPONSE in Opposition by Ari Teman addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated January 9, 2020 re: 74 LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 8, 2020 re: Preclude Expert Testimony .. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Gelfand, Justin) Modified on 1/9/2020 (ka). (Entered: 01/09/2020) |
| 01/09/2020 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Ari Teman: Notice to Attorney Gelfand, Justin to RE-FILE Document 76 Response in Opposition to Motion. Use the event type Response to Motion found under the event list Replies, Opposition and Supporting Documents. (ka)** (Entered: 01/09/2020) |
| 01/09/2020 | 77 | RESPONSE to Motion by Ari Teman re: 74 LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 8, 2020 re: Preclude Expert Testimony .. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Gelfand, Justin) (Entered: 01/09/2020) |
| 01/10/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Arraignment as to Ari Teman (1) Count 1ss-2ss,3ss-4ss,5ss-6ssAri Teman (1). Defendant present (on bond) |

**A-12**

| | | |
|---|---|---|
| | | with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco. Court reporter present. Defendant sworn, pleads NOT GUILTY to the S2 Indictment. See transcript. Plea entered by Ari Teman (1) Count 1ss-2ss,3ss-4ss,5ss-6ssAri Teman (1) Count 1ss-2ss,3ss-4ss,5ss-6ss Not Guilty. (ajs) (Entered: 01/10/2020) |
| 01/10/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Pretrial Conference as to Ari Teman held on 1/10/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco. Court reporter present. Bond continued. See transcript. (ajs) (Entered: 01/10/2020) |
| 01/10/2020 | 78 | MEMO ENDORSEMENT: as to Ari Teman (1) granting 70 LETTER MOTION addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated January 7, 2020 re: Bond Modification to Permit Travel to Meet with Legal Counsel. ENDORSEMENT: GRANTED. Mr. Teman's pretrial release terms shall be amended to permit his travel to the state of Missouri for the purpose of attorney-client visits. The Clerk of Court is directed to terminate the motion at Dkt. No. 70. (Signed by Judge Paul A. Engelmayer on 1/10/2020) (ap) (Entered: 01/10/2020) |
| 01/14/2020 | 79 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 14, 2020 re: Counts Five and Six Document filed by USA. (Bhatia, Kedar) (Entered: 01/14/2020) |
| 01/15/2020 | 80 | JOINT LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 15, 2020 re: Supplemental Jury Instructions Document filed by USA. (Bhatia, Kedar) (Entered: 01/15/2020) |
| 01/17/2020 | 81 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 1/17/2020 re: leave to file Giglio motion . Document filed by Ari Teman. (Attachments: # 1 Exhibit, # 2 Exhibit)(Diruzzo, Joseph) (Entered: 01/17/2020) |
| 01/19/2020 | 82 | LETTER RESPONSE in Opposition by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 19, 2020 re: 81 LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 1/17/2020 re: leave to file Giglio motion .. (Bhatia, Kedar) (Entered: 01/19/2020) |
| 01/21/2020 | 83 | LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 19, 2019 re: Motion to Preclude . Document filed by USA as to Ari Teman. (Attachments: # 1 Exhibit Housing Court Order)(Bhatia, Kedar) Modified on 1/22/2020 (ka). (Entered: 01/21/2020) |
| 01/21/2020 | 84 | LETTER MOTION addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 21, 2020 re: Good Acts Evidence . Document filed by USA as to Ari Teman. (Attachments: # 1 Exhibit DX 34)(Bhatia, Kedar) (Entered: 01/21/2020) |
| 01/21/2020 | 85 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 21, 2020 re: Scope of Waiver Document filed by USA. (Bhatia, Kedar) (Entered: 01/21/2020) |
| 01/21/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Pretrial Conference as to Ari Teman held on 1/21/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. Bond continued. See transcript. (ajs) (Entered: 01/22/2020) |
| 01/22/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Voir Dire held on 1/22/2020 as to Ari Teman. Defendant present (on bond) with attorneys Joseph DiRuzzo |

**A-13**

|  |  | & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. Jury panel sworn, voir dire began. Jury selected and sworn. Jury instructions issued. See transcript. (ajs) (Entered: 01/22/2020) |
|---|---|---|
| 01/22/2020 | 86 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** Proposed Jury Instructions by Ari Teman. (Gelfand, Justin) Modified on 1/23/2020 (ka). (Entered: 01/22/2020) |
| 01/22/2020 |  | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Jury Trial as to Ari Teman held on 1/22/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. Government opening statement. Defense opening statement. Government witnesses called. Trial continued to 1/23/2020. See transcript. (ajs) (Entered: 01/23/2020) |
| 01/23/2020 |  | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Ari Teman: Notice to Attorney Gelfand, Justin to RE-FILE Document 86 Proposed Jury Instructions. Use the event type Request to Charge found under the event list Trial Documents. (ka)** (Entered: 01/23/2020) |
| 01/23/2020 | 87 | TRANSCRIPT of Proceedings as to Ari Teman re: Conference held on 1/10/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/13/2020. Redacted Transcript Deadline set for 2/24/2020. Release of Transcript Restriction set for 4/22/2020. (McGuirk, Kelly) (Entered: 01/23/2020) |
| 01/23/2020 | 88 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Conference proceeding held on 1/10/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/23/2020) |
| 01/23/2020 |  | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Jury Trial as to Ari Teman held on 1/23/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. Government case continued. Trial continued to 1/24/2020. See transcript. (ajs) (Entered: 01/24/2020) |
| 01/24/2020 | 89 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated January 24, 2020 re: Unanimity Instruction Document filed by USA. (Bhatia, Kedar) (Entered: 01/24/2020) |
| 01/24/2020 |  | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Jury Trial as to Ari Teman held on 1/24/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. Government rests. Defense witnesses called. Trial continued to 1/27/2020. See transcript. (ajs) (Entered: 01/27/2020) |
| 01/27/2020 | 90 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 1/26/20 re: constructive amendement (Diruzzo, Joseph) (Entered: 01/27/2020) |

A-14

| | | |
|---|---|---|
| 01/27/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Jury Trial as to Ari Teman held on 1/27/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. Charge conference held. Defense rests. Closing arguments. Trial continued to 1/28/2020. See transcript. (ajs) (Entered: 01/27/2020) |
| 01/28/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Jury Trial as to Ari Teman held on 1/28/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. Jury charged. Marshal sworn. Jury deliberations begin. Trial continued to 1/29/2020. See transcript. (ajs) (Entered: 01/29/2020) |
| 01/29/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Jury Trial as to Ari Teman held on 1/29/2020. Defendant present (on bond) with attorneys Joseph DiRuzzo & Justin Gelfand. AUSAs Kedar Bhatia & Edward Imperatore with paralegal specialist William Magliocco & Daniel Alessandrino (NYPD). Court reporter present. The jury has reached a verdict. The jury finds defendant guilty on counts 1 - 4. Bond continued. See transcript. (ajs) (Entered: 01/29/2020) |
| 01/29/2020 | | Order of Referral to Probation for Presentence Investigation and Report as to Ari Teman. (ajs) (Entered: 01/29/2020) |
| 01/29/2020 | 91 | Minute Entry for proceedings held before Judge Paul A. Engelmayer: UPDATED BAIL DISPOSITION as to Ari Teman held on 1/29/2020. AUSA: Kedar Bhatia present. Defense counsel Joseph Diruzzo present with defendant Ari Teman. $25,000.00 PRB. 2 FRP - The second FRP is to sign bond no later than February 5, 2020. Travel restricted to SDNY/EDNY/SDFL. Strict Pretrial Supervision. Def. to submit to urinalysis; if positive, add condition of drug testing/treatment. Home detention. Electronic monitoring. Defendant has leave to attend medical & mental health appointments. Defendant is not to create or deposit any remotely created check. The defendant is to immediately suspend or terminate all credit card auto-pay arrangements with him or with any company which he is affiliated. Defendant may not invoice or bill any person or business without the written approval of his Pretrial Services Officer. (lnl) (Entered: 01/29/2020) |
| 01/29/2020 | 92 | JURY VERDICT as to Ari Teman (1) Guilty on Count 1ss-2ss,3ss-4ss. (ajs) (Entered: 01/29/2020) |
| 01/29/2020 | 93 | ORDER re: Court Exhibits as to Ari Teman. (Signed by Judge Paul A. Engelmayer on 1/29/2020)(ajs) (Entered: 01/29/2020) |
| 01/29/2020 | 94 | ORDER as to Ari Teman: The Court, at a conference held on January 21, 2020, dismissed counts 5ss and 6ss of the S2 Indictment. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 1/29/2020) (lnl) (Entered: 01/29/2020) |
| 01/29/2020 | | DISMISSAL OF COUNTS by the Court as to Ari Teman (1) Count 5ss-6ss. (lnl) (Entered: 01/29/2020) |
| 01/29/2020 | 95 | ORDER re: Jury notes as to Ari Teman. (Signed by Judge Paul A. Engelmayer on 1/29/2020)(ajs) (Entered: 01/29/2020) |
| 01/31/2020 | 96 | SCHEDULING ORDER as to (S2 19-Cr-696) Ari Teman. It is hereby ORDERED that sentencing in this matter is scheduled for June 4, 2020 at 10:00 a.m. in Courtroom 1305 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York 10007. The parties should consult the Courts Individual Rules and Practices for Criminal Cases (available at http://nysd.uscourts.gov/judge/Engelmayer) for sentencing-related procedures and practices. Consistent with the Court's Rules, the defendant's sentencing |

| | | |
|---|---|---|
| | | submission shall be served two weeks in advance of the date set for sentencing. The Government's sentencing submission shall be served one week in advance of the date set for sentencing. The parties should provide the Court with one courtesy hard copy of each submission when it is served. If a party does not intend to file a substantive sentencing submission, the party should file a letter to that effect. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 1/31/2020)(bw) (Entered: 01/31/2020) |
| 02/04/2020 | 97 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 2/4/2020 re: 91 Bond Hearing,,, re: additional time . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 02/04/2020) |
| 02/04/2020 | 98 | MEMO ENDORSEMENT as to Ari Teman (1) granting 97 LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 2/4/2020 re: 91 Bond Hearing, re: additional time. ENDORSEMENT: GRANTED. The Clerk of Court is requested to terminate the motion at Dkt. No. 97. (Signed by Judge Paul A. Engelmayer on 2/4/2020) (ap) (Entered: 02/04/2020) |
| 02/14/2020 | 99 | TRANSCRIPT of Proceedings as to Ari Teman re: Trial held on 1/21/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/14/2020. (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 100 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Trial proceeding held on 1/21/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 101 | TRANSCRIPT of Proceedings as to Ari Teman re: Trial held on 1/22/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Steven Griffing, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/14/2020. (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 102 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Trial proceeding held on 1/22/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 103 | TRANSCRIPT of Proceedings as to Ari Teman re: Trial held on 1/23/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/14/2020. (McGuirk, Kelly) (Entered: 02/14/2020) |

A-16

| 02/14/2020 | 104 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Trial proceeding held on 1/24/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/14/2020) |
|---|---|---|
| 02/14/2020 | 105 | TRANSCRIPT of Proceedings as to Ari Teman re: Trial held on 1/27/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/14/2020. (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 106 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Trial proceeding held on 1/27/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 107 | TRANSCRIPT of Proceedings as to Ari Teman re: Trial held on 1/28/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/14/2020. (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 108 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Trial proceeding held on 1/28/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 109 | TRANSCRIPT of Proceedings as to Ari Teman re: Trial held on 1/29/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Steven Griffing, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/14/2020. (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/14/2020 | 110 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Trial proceeding held on 1/29/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/14/2020) |
| 02/26/2020 | 111 | MOTION for Acquittal *Or, in the Alternative, Motion for New Trial*. Document filed by |

| | | |
|---|---|---|
| | | Ari Teman. (Gelfand, Justin) (Entered: 02/26/2020) |
| 03/25/2020 | 111 | MEMORANDUM in Opposition by USA as to Ari Teman re 111 MOTION for Acquittal *Or, in the Alternative, Motion for New Trial*.. (Bhatia, Kedar) (Entered: 03/25/2020) |
| 03/30/2020 | 113 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 03/30/2020 re: modify terms of release . Document filed by Ari Teman. (Attachments: # 1 Exhibit)(Diruzzo, Joseph) (Entered: 03/30/2020) |
| 03/30/2020 | 114 | LETTER RESPONSE in Opposition by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated March 30, 2020 re: 113 LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 03/30/2020 re: modify terms of release .. (Bhatia, Kedar) (Entered: 03/30/2020) |
| 03/31/2020 | 115 | ORDER 113 LETTER MOTION Defendant Ari Teman is presently awaiting sentencing following his conviction at trial on four counts of bank and wire fraud. He has been released on bail subject to conditions including home confinement at his home in Miami Beach, Florida, and electronic monitoring. By letter from his counsel, Teman now moves, Dkt. 113, for a modification of the conditions of home confinement, to enable him to attend medical appointments and to shop for food at stores, the latter because Teman reports experiencing difficulty obtaining timely food delivery following Miami Beach's adoption of a safer-at-home order. The Court denies Temans motion for relief as unnecessary. Temans bail conditions already permit him to travel for medical appointments. And as the Government reports in its letter responding to Teman's request, Dkt. 114, Government counsel have confirmed with Temans pretrial services officer that, now notified by the Government of Temans expressed need to leave home to shop for groceries, the officer is prepared to authorize such shopping pursuant to the discretion accorded him by the Court in administering home detention. Temans letter notably had not indicated that, before writing the Court, he or his counsel had raised the need to leave home for food shopping with the pretrial services officer. In the future, should an issue of this nature arise, defense counsel are instructed, before writing the Court, to speak with the pretrial officer to determine whether a genuine controversy exists requiring court resolution. The Court wishes all counsel and Teman well at this challenging time. The Clerk of Court is requested to terminate the motion at Dkt. No. 113. (Signed by Judge Paul A. Engelmayer on 3/31/2020) (jw) (Entered: 03/31/2020) |
| 04/01/2020 | 116 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 04/01/2020 re: 112 Memorandum in Opposition to Motion re: leave to file reply . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 04/01/2020) |
| 04/02/2020 | 117 | MEMO ENDORSEMENT as to Ari Teman (1) on 116 LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 04/01/2020 re: 112 Memorandum in Opposition to Motion re: leave to file reply. ENDORSEMENT: The Court grants Teman leave to file a reply. The reply is due April 9, 2020. (Signed by Judge Paul A. Engelmayer on 4/2/2020) (ap) (Entered: 04/02/2020) |
| 04/02/2020 | | Set/Reset Deadlines as to Ari Teman: Replies due by 4/9/2020. (ap) (Entered: 04/02/2020) |
| 04/09/2020 | 118 | MOTION for New Trial *Based on Undisclosed Brady and Jencks Act Evidence*. Document filed by Ari Teman. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Gelfand, Justin) (Entered: 04/09/2020) |
| 04/09/2020 | 119 | REPLY TO RESPONSE to Motion by Ari Teman re 111 MOTION for Acquittal *Or, in the Alternative, Motion for New Trial*.. (Gelfand, Justin) (Entered: 04/09/2020) |
| 04/09/2020 | 120 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III |

Case 21-1920, Document 78, 05/25/2022, 3321477, Page34 of 228

A-18

| | | |
|---|---|---|
| | | dated 04/09/2020 re: Rule6(e) disclosure . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 04/09/2020) |
| 04/09/2020 | 121 | MEMO ENDORSEMENT as to Ari Teman on re: 118 MOTION for New Trial Based on Undisclosed Brady and Jencks Act Evidence. The Court has received a new motion from defendant Ari Teman, seeking a new trial. Dkt. 118. The Government's response is due Friday, April 24, 2020. The Court does not, at this time, authorize a reply. (Responses due by 4/24/2020) (Signed by Judge Paul A. Engelmayer on 4/9/2020) (ap) (Entered: 04/10/2020) |
| 04/10/2020 | 122 | MEMO ENDORSEMENT as to Ari Teman on re: 120 LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 04/09/2020 re: Rule6(e) disclosure. ENDORSEMENT: The Court has received defendant Ari Teman's request for disclosure of grand jury transcripts pursuant to Federal Rule of Criminal Procedure 6(e) (3)(E). The Government is to respond to this request no later than April 24, 2020. The Court does not authorize a reply. (Responses due by 4/24/2020) (Signed by Judge Paul A. Engelmayer on 4/9/2020) (ap) (Entered: 04/10/2020) |
| 04/24/2020 | 124 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** RESPONSE in Opposition by USA as to Ari Teman re: 118 MOTION for New Trial *Based on Undisclosed Brady and Jencks Act Evidence*.. (Bhatia, Kedar) Modified on 4/27/2020 (ka). (Entered: 04/24/2020) |
| 04/24/2020 | 125 | LETTER RESPONSE in Opposition by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated April 24, 2020 re: 120 LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 04/09/2020 re: Rule6(e) disclosure .. (Bhatia, Kedar) (Entered: 04/24/2020) |
| 04/27/2020 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Ari Teman: Notice to Attorney Bhatia, Kedar to RE-FILE Document 124 Response in Opposition to Motion. Use the event type Memorandum in opposition to Motion found under the event list Replies, Opposition and Supporting Documents. (ka)** (Entered: 04/27/2020) |
| 04/27/2020 | 126 | MEMORANDUM in Opposition by USA as to Ari Teman re 118 MOTION for New Trial *Based on Undisclosed Brady and Jencks Act Evidence*.. (Bhatia, Kedar) (Entered: 04/27/2020) |
| 04/29/2020 | 127 | ORDER as to Ari Teman: The Court is currently reviewing defendant Ari Teman's post-trial motions. Dkts. 111, 118, 120. As a result of the public health crisis and resulting remote work, the Court does not have easy access to the exhibits received at trial. The Court accordingly instructs Government counsel to file a copy of the received trial exhibits on the docket of this case by 5 p.m. on May 1, 2020. The Court expects that Government counsel will confer in advance with defense counsel to assure that the exhibits are correctly selected. (Signed by Judge Paul A. Engelmayer on 4/29/2020) (ap) (Entered: 04/29/2020) |
| 05/01/2020 | 128 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated May 1, 2020 re: Trial Exhibits Document filed by USA. (Attachments: # 1 Exhibit GX 101, # 2 Exhibit GX 102, # 3 Exhibit GX 103, # 4 Exhibit GX 104, # 5 Exhibit GX 105, # 6 Exhibit GX 106, # 7 Exhibit GX 107, # 8 Exhibit GX 108, # 9 Exhibit GX 110, # 10 Exhibit GX 111, # 11 Exhibit GX 112, # 12 Exhibit GX 114, # 13 Exhibit GX 121, # 14 Exhibit GX 122, # 15 Exhibit GX 123, # 16 Exhibit GX 124, # 17 Exhibit GX 127, # 18 Exhibit GX 129, # 19 Exhibit GX 130, # 20 Exhibit GX 131, # 21 Exhibit GX 141, # 22 Exhibit GX 142, # 23 Exhibit GX 143, # 24 Exhibit GX 144, # 25 Exhibit GX 145, # 26 Exhibit GX 146, # 27 Exhibit GX 147, # 28 Exhibit GX 150, # 29 Exhibit GX 201, # 30 Exhibit GX 202, # 31 Exhibit GX 203, # 32 Exhibit GX |

| | | |
|---|---|---|
| | | 204, # [33](#) Exhibit GX 205, # [34](#) Exhibit GX 206, # [35](#) Exhibit GX 401, # [36](#) Exhibit GX 402, # [37](#) Exhibit GX 403, # [38](#) Exhibit GX 404, # [39](#) Exhibit GX 405, # [40](#) Exhibit GX 406, # [41](#) Exhibit GX 407, # [42](#) Exhibit GX 408, # [43](#) Exhibit GX 409, # [44](#) Exhibit GX 409A, # [45](#) Exhibit GX 409B, # [46](#) Exhibit GX 409C, # [47](#) Exhibit GX 412, # [48](#) Exhibit GX 413, # [49](#) Exhibit GX 414, # [50](#) Exhibit GX 415, # [51](#) Exhibit GX 416, # [52](#) Exhibit GX 417, # [53](#) Exhibit GX 418, # [54](#) Exhibit GX 431, # [55](#) Exhibit GX 441, # [56](#) Exhibit GX 442, # [57](#) Exhibit GX 443, # [58](#) Exhibit GX 501, # [59](#) Exhibit GX 702, # [60](#) Exhibit GX 704, # [61](#) Exhibit GX 727, # [62](#) Exhibit GX 728, # [63](#) Exhibit GX 729, # [64](#) Exhibit DX 2, # [65](#) Exhibit DX 14, # [66](#) Exhibit DX 15, # [67](#) Exhibit DX 16, # [68](#) Exhibit DX 29, # [69](#) Exhibit DX 36, # [70](#) Exhibit DX 49, # [71](#) Exhibit DX 51, # [72](#) Exhibit DX 51, # [73](#) Exhibit DX 62, # [74](#) Exhibit DX 70, # [75](#) Exhibit DX 71)(Bhatia, Kedar) (Entered: 05/01/2020) |
| 05/04/2020 | [129](#) | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 5/4/2020 re: [126](#) Memorandum in Opposition to Motion re: leave to file reply . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 05/04/2020) |
| 05/04/2020 | [130](#) | MEMO ENDORSEMENT as to Ari Teman (1) granting [129](#) LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 5/4/2020 re: 126 Memorandum in Opposition to Motion re: leave to file reply. ENDORSEMENT: Defendant is granted leave to file a reply no later than May 11, 2020 at 5 p.m. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 5/4/2020) (lnl) (Entered: 05/04/2020) |
| 05/04/2020 | | Set/Reset Deadlines/Hearings as to Ari Teman: Replies due by 5/11/2020. (lnl) (Entered: 05/04/2020) |
| 05/07/2020 | [131](#) | ORDER as to Ari Teman: The Court is currently reviewing defendant Ari Teman's post-trial motions, including his claim that the Indictment was constructively amended at trial insofar as it described certain checks as "counterfeit." The Court has determined, in the interest of due care, to review itself the transcripts of the grand jury proceedings in this case, to enable the Court independently to assess Teman's contention that the theory of liability with respect to these checks pursued at trial departed from that presented to the grand jury. For avoidance of doubt, the Court's review of the grand jury transcripts will be in camera and ex parte. The grand jury transcripts are not to be supplied to the defense, which has not provided sufficient justification for defense access to these materials. The Court's decision resolving Teman's motion will address these matters further. The Government is therefore directed to provide the Court with the grand jury transcripts by May 8, 2020. In light of the current public health crisis, the Government, in lieu of supplying hard copies of these transcripts, is to email them to the Court's Chambers email address. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 5/6/2020) (lnl) (Entered: 05/07/2020) |
| 05/08/2020 | [132](#) | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 5/8/2020 re: [131](#) Order,,,,, re: grand jury material . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 05/08/2020) |
| 05/11/2020 | [133](#) | REPLY MEMORANDUM OF LAW in Support as to Ari Teman re: [118](#) MOTION for New Trial *Based on Undisclosed Brady and Jencks Act Evidence.* . (Attachments: # [1](#) Exhibit E)(Diruzzo, Joseph) (Entered: 05/11/2020) |
| 05/20/2020 | [134](#) | LETTER RESPONSE in Opposition by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated May 20, 2020 re: [132](#) LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 5/8/2020 re: [131](#) Order,,,,, re: grand jury material .. (Bhatia, Kedar) (Entered: 05/20/2020) |
| 05/20/2020 | [135](#) | CONSENT LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. |

**A-20**

| | | |
|---|---|---|
| | | DiRuzzo, III dated 5/20/2020 re: postpone sentencing hearing . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 05/20/2020) |
| 05/26/2020 | 136 | MEMO ENDORSEMENT as to Ari Teman (1) granting 135 CONSENT LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 5/20/2020 re: postpone sentencing hearing. ENDORSEMENT: GRANTED. Sentencing is adjourned to July 21, 2020 at 11:15 a.m. The parties shall serve their sentencing submissions in accordance with this Court's Individual Rules & Practices in Criminal Cases. The Clerk of Court is requested to terminate the motion at Dkt. No. 135. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 5/26/2020) (lnl) (Entered: 05/26/2020) |
| 05/26/2020 | | Set/Reset Hearings as to Ari Teman: Sentencing set for 7/21/2020 at 11:15 AM before Judge Paul A. Engelmayer. (lnl) (Entered: 05/26/2020) |
| 06/01/2020 | 137 | ORDER as to Ari Teman. The Court has received the attached email this morning from a person identifying himself as journalist "Jake Green" from "LawReports360." The email poses questions to the Court about this case. The Court, however, has been unable to identify a journalist by the name "Jake Green" or a news organization by the name given by "Jake Green." It appears possible that a person posing as "Jake Green" has sought to obtain the requested information from the Court. The Court notifies counsel that it has provided a copy of the email to the United States Marshals Service for further investigation. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 6/1/2020)(jbo) (Entered: 06/01/2020) |
| 06/05/2020 | 138 | OPINION & ORDER as to Ari Teman. For the reasons outlined above, the Court denies all of Teman's post-trial motions. The case will now proceed to sentencing. For purposes of assuring a full appellate record, the Government is instructed to file the grand jury materials provided ex parte to the Court under seal as soon as possible. There are to be accessible to the Court (and reviewing appellate courts)only. The Clerk of Court is respectfully directed to terminate the motion pending at dockets 111, 118, 120, and 132. SO ORDERED (Signed by Judge Paul A. Engelmayer on 6/5/20)(jw) (Entered: 06/05/2020) |
| 06/08/2020 | 139 | TRANSCRIPT of Proceedings as to Ari Teman re: Trial held on 1/24/2020 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Vincent Bologna, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/29/2020. Redacted Transcript Deadline set for 7/9/2020. Release of Transcript Restriction set for 9/8/2020. (McGuirk, Kelly) (Entered: 06/08/2020) |
| 06/08/2020 | 140 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Trial proceeding held on 1/24/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/08/2020) |
| 06/26/2020 | 141 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 6/26/20202 re: sleep study & MRI . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 06/26/2020) |
| 06/29/2020 | 142 | MEMO ENDORSED granting 141 LETTER MOTION sleep study & MRI as to Ari Teman (1)...ENDORSEMENT: GRANTED. The Clerk of Court is requested to terminate |

**A-21**

|  |  |  |
|---|---|---|
|  |  | the motion at Dkt. No. 141. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 6/29/2020) (jbo) (Entered: 06/29/2020) |
| 06/29/2020 | 143 | CONSENT LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 06/29/20 re: continue/adjournment of sentencing . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 06/29/2020) |
| 07/01/2020 | 144 | MEMO ENDORSEMENT 143 LETTER MOTION Reschedule Sentencing as to Ari Teman....ENDORSEMENT..GRANTED. Sentencing is adjourned to September 28, 2020 at 10:00 a.m. However, the Court declines to extend the deadlines for sentencing submissions, as there is no stated need for such an extension and filing on the current scheduling will enable the Court to prepare for the sentencing during the time in which it had planned to do so. The defense sentencingsubmission remains due July 7, 2020 and the Government's sentencing submission remains due July 14, 2020. The Clerk of Court is requested to terminate the motion at Dkt. No. 143. (Signed by Judge Paul A. Engelmayer on 7/1/2020) (jw) (Entered: 07/01/2020) |
| 07/01/2020 |  | Set/Reset Deadlines/Hearings as to Ari Teman:Defense Replies due by 7/7/2020. Government Responses due by 7/14/2020; Sentencing set for 9/28/2020 at 10:00 AM before Judge Paul A. Engelmayer (jw) (Entered: 07/01/2020) |
| 07/07/2020 | 145 | SENTENCING SUBMISSION by Ari Teman. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit)(Diruzzo, Joseph) (Entered: 07/07/2020) |
| 07/09/2020 | 146 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 7/9/2020 re: 145 Sentencing Submission, re: ommited exhibit . Document filed by Ari Teman. (Attachments: # 1 Exhibit)(Diruzzo, Joseph) (Entered: 07/09/2020) |
| 07/09/2020 | 147 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 7/9/2020 re: 145 Sentencing Submission, re: leave to file under seal . Document filed by Ari Teman. (Diruzzo, Joseph) (Entered: 07/09/2020) |
| 07/10/2020 | 148 | MEMO ENDORSEMENT as to Ari Teman (1) granting 147 LETTER MOTION addressed to Judge Paul A. Engelmayer from Joseph A. DiRuzzo, III dated 7/9/2020 re: 145 Sentencing Submission, re: leave to file under seal. ENDORSEMENT: GRANTED. The Court requests that counsel email chambers a completed, unredacted, copy of the sentencing submission, along with sending one courtesy hard copy via mail when it is safe to do so. The Clerk of Court is requested to terminate the motion at Dkt. No. 147. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 7/10/2020) (lnl) (Entered: 07/10/2020) |
| 07/14/2020 | 149 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** MOTION to Seal Document 148 Order on Letter Motion,, . Document filed by Ari Teman. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit) (Diruzzo, Joseph) Modified on 7/14/2020 (ka). (Entered: 07/14/2020) |
| 07/14/2020 |  | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Ari Teman: Notice to Attorney Diruzzo, Joseph to RE-FILE Document 149 MOTION to Seal Document 148 Order on Letter Motion. Use the event type Letter Motion found under the event list Motions. (ka)** (Entered: 07/14/2020) |
| 07/14/2020 | 150 | SENTENCING SUBMISSION by USA as to Ari Teman. (Bhatia, Kedar) (Entered: 07/14/2020) |
| 09/08/2020 | 151 | CONSENT LETTER MOTION addressed to Judge Paul A. Engelmayer from Justin K. Gelfand and Joseph A. DiRuzzo dated September 8, 2020 re: 60-Day Adjournment of |

| | | |
|---|---|---|
| | | Sentencing Hearing . Document filed by Ari Teman. (Gelfand, Justin) (Entered: 09/08/2020) |
| 09/10/2020 | 152 | MEMO ENDORSED granting 151 LETTER MOTION 60-Day Adjournment of Sentencing Hearing as to Ari Teman (1)...ENDORSEMENT: GRANTED. Sentencing is adjourned to December 1, 2020 at 10:30 a.m. The Clerk of Court is requested to terminate the motion at Dkt. No. 151. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 9/10/2020) (jbo) (Entered: 09/10/2020) |
| 09/10/2020 | | Set/Reset Hearings as to Ari Teman: Sentencing set for 12/1/2020 at 10:30 AM before Judge Paul A. Engelmayer. (jbo) (Entered: 09/10/2020) |
| 10/30/2020 | 153 | ORDER as to Ari Teman. This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f), to confirm the Government's disclosure obligations under Brady v. This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f), to confirm the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations. (See ORDER set forth). (Signed by Judge Paul A. Engelmayer on 10/30/2020)(ajs) (Entered: 10/30/2020) |
| 11/02/2020 | 154 | NOTICE OF ATTORNEY APPEARANCE: Noam Korati Biale appearing for Ari Teman. Appearance Type: Retained. (Biale, Noam) (Entered: 11/02/2020) |
| 11/02/2020 | 155 | NOTICE OF ATTORNEY APPEARANCE: Justine Aleta Harris appearing for Ari Teman. Appearance Type: Retained. (Harris, Justine) (Entered: 11/02/2020) |
| 11/02/2020 | 156 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Justine A. Harris and Noam K. Biale dated November 2, 2020 re: respectfully requesting that the Court direct additional disclosures . Document filed by Ari Teman. (Attachments: # 1 Exhibit A - Meeting of January 7, 2020, # 2 Exhibit B - October 23, 2020 Letter, # 3 Exhibit C - October 29, 2020 Letter)(Harris, Justine) (Entered: 11/02/2020) |
| 11/04/2020 | 157 | ORDER as to Ari Teman: The Court has received a letter from new counsel f defendant Ari Teman seeking additional Brady disclosures from the Government relating to trial witness Joseph Soleiman. The Court directs the Government to respond by Tuesday, November 10, 2020. With the appearance of post-conviction defense counsel, based in New York, it appears that Mr. Teman's sentencing which the Court deferred, to accommodate Mr. Teman's out-of-state trial counsel can now proceed as scheduled, on December 1, 2020, at 10:30 a.m. Counsel should treat that date as firm. (Sentencing set for 12/1/2020 at 10:30 AM before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 11/4/2020) (ap) Modified on 11/5/2020 (ap). (Entered: 11/04/2020) |
| 11/04/2020 | | ***DELETED DOCUMENT. Deleted document number 158 ORDER, as to Ari Teman. The document was incorrectly filed in this case. (ap) (Entered: 11/04/2020) |
| 11/10/2020 | 158 | LETTER RESPONSE in Opposition by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated November 10, 2020 re: 156 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Justine A. Harris and Noam K. Biale dated November 2, 2020 re: respectfully requesting that the Court direct additional disclosures .. (Bhatia, Kedar) (Entered: 11/10/2020) |
| 11/11/2020 | 159 | LETTER REPLY TO RESPONSE to Motion by Ari Teman addressed to Judge Paul A. Engelmayer from Justine Harris/Noam Biale dated 11/11/20 re 156 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Justine A. Harris and Noam K. Biale dated November 2, 2020 re: respectfully requesting that the Court direct additional disclosures .. (Biale, Noam) (Entered: 11/11/2020) |
| 11/16/2020 | 160 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated |

A-23

| | | |
|---|---|---|
| | | November 16, 2020 re: Respectfully Requesting that Mr. Teman Be Permitted to Relocate from One Apartment to Another Within the Same Building Due to End of Lease Term . Document filed by Ari Teman. (Gelfand, Justin) (Entered: 11/16/2020) |
| 11/16/2020 | 161 | ORDER as to Ari Teman. The Government's letter in response to Teman's letter (Dkt. No. 158) indicates that the answer to each of these questions is no. Id. at 23. The Court nevertheless would benefit from receipt of a declaration from counsel explicitly responding to these questions. Counsel's declaration need not answer the other queries Teman poses in his reply letter (Dkt. No. 159). If, however, the answer to either of the above questions is other than no, the Court expects that counsels declaration will elaborate. The Governments declaration is due Wednesday, November 18, 2020. The Court does not invite any additional submissions from counsel as to the issues addressed herein (Signed by Judge Paul A. Engelmayer on 11/16/20)(jw) (Entered: 11/16/2020) |
| 11/16/2020 | 162 | MEMO ENDORSEMENT 160 LETTER MOTION We are requesting that our client, Ari Teman, be permitted to move from one apartment unit to another apartment unit within the same building on November 20, 2020...ENDORSEMENT...The Court approves Mr. Temans application to relocate within his present apartment building. However, the Court reminds counsel that Mr. Teman is due in this District of December 1, 2020, for sentencing, and to obtain entry into the courthouse, will be required to certify his compliance with the protocols of the United States District Court for the Southern District of New York governing domestic travel. These can be found on the Court's website [https://www.nysd.uscourts.gov/covid-19-coronavirus]. The Clerk of Court is requested to terminate the motion at Dkt. No. 160. (Signed by Judge Paul A. Engelmayer on 11/16/20) (jw) (Entered: 11/16/2020) |
| 11/16/2020 | 163 | AMENDED ORDER as to Ari Teman. (Signed by Judge Paul A. Engelmayer on 11/16/2020)(ajs) (Entered: 11/17/2020) |
| 11/18/2020 | 164 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from AUSA Kedar S. Bhatia dated November 18, 2020 re: Declaration Document filed by USA. (Attachments: # 1 Exhibit Declaration)(Bhatia, Kedar) (Entered: 11/18/2020) |
| 11/19/2020 | 165 | ORDER 156 LETTER MOTION The Court has reviewed counsels' submissions on the recent letter by defendant Ari Teman regarding his claims of violations of Brady v. Maryland, 373 U.S. 83, 87 (1963), Giglio v. United States, 405 U.S. 150, 154 (1972), and the Jencks Act, 18 U.S.C. § 3500. See Dkts. 156 (Teman letter), 158 (Government response), 159 (Teman reply), 163 (court order seeking declaration from Government), 164 (Government letter and declaration). Teman's request that the Court direct additional disclosures from the Government is therefore denied.Teman's request that the Court direct additional disclosures from the Government is therefore denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket 156. (Signed by Judge Paul A. Engelmayer on 11/19/20) (jw) (Entered: 11/19/2020) |
| 11/19/2020 | 166 | ORDER as to Ari Teman. In light of the worsening public health conditions in the nation and New York City, the Court would be receptive to an application by defendant Ari Teman to adjourn the date of sentencing, which is presently scheduled for December 1, 2020. The Court is mindful that sentencing would require Mr. Teman to travel from Florida to New York City - and might also require interstate travel by others-at a time when public health authorities are discouraging such travel. If, however, Mr. Teman prefers to proceed with the current sentencing date, the Court stands ready to proceed on December 1. The Court asks that any application for an adjournment be filed promptly, by letter on the docket of this case (Signed by Judge Paul A. Engelmayer on 11/19/20) (jw) (Entered: 11/19/2020) |
| 11/20/2020 | 167 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Justine Harris/Noam Biale dated 11/20/20 re: In response to Court's order regarding scheduling of sentencing . |

|  |  | Document filed by Ari Teman. (Biale, Noam) (Entered: 11/20/2020) |
|---|---|---|
| 11/20/2020 | 168 | MEMO ENDORSEMENT as to Ari Teman on re: 167 LETTER MOTION addressed to Judge Paul A. Engelmayer from Justine Harris/Noam Biale dated 11/20/20 re: In response to Court's order regarding scheduling of sentencing. ENDORSEMENT: The Court appreciates the defense's prompt response. The Court will determine after receiving the Government's response, and the defense's submission regarding Mr. Teman's mental health, whether (1) to hold the sentencing remotely on December 1; (2) to adjourn the sentencing; or (3) to hold the sentencing in person on December 1, as is currently scheduled. The Court directs counsel to file these submissions by noon on Tuesday, November 24, 2020. The Court asks the defense, in its submission, to state whether-if the Court were to decide against a remote sentencing-Mr. Teman would prefer (and be able, consistent with current travel restrictions) to have an in-person sentencing on December 1 or to adjourn the sentencing. The Court further authorizes each side to submit a brief reply, due to be filed on the docket of the case by 10:00 a.m. on Wednesday, November 25, 2020. (Motions due by 11/24/2020. Replies due by 11/25/2020) (Signed by Judge Paul A. Engelmayer on 11/20/2020) (ap) (Entered: 11/23/2020) |
| 11/24/2020 | 169 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Justine Harris/Noam Biale dated 11/24/20 re: Remote Sentencing (Attachments: # 1 Exhibit A) (Biale, Noam) (Entered: 11/24/2020) |
| 11/24/2020 | 170 | LETTER RESPONSE to Motion by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated November 24, 2020 re: 167 LETTER MOTION addressed to Judge Paul A. Engelmayer from Justine Harris/Noam Biale dated 11/20/20 re: In response to Court's order regarding scheduling of sentencing .. (Bhatia, Kedar) (Entered: 11/24/2020) |
| 11/25/2020 | 171 | ORDER as to Ari Teman: Sentencing in this case is presently scheduled for Tuesday, December 1, 2020, at 10:30 a.m. The Court has reviewed counsels' letters (Dkt Nos. 169, 170) as to the defense's application that that sentencing proceed remotely, by video, rather than in person, on the same date and time. The Court grants the defense's application. A scheduling order to this effect will issue shortly, containing directions as to how counsel and the public may remotely access the sentencing hearing, and instructions as to the waiver form that the defendant must complete and submit in advance of the December 1 hearing. The Court will place on the record at sentencing its basis for determining, consistent with the CARES Act, that the defense has consented to a remote proceeding and that sentencing cannot be further delayed without harm to the interests of justice. The Court wishes counsel and Mr. Teman a healthy and good Thanksgiving holiday. (Signed by Judge Paul A. Engelmayer on 11/25/2020) (ap) (Entered: 11/25/2020) |
| 11/25/2020 | 172 | ORDER as to Ari Teman: The conference scheduled for December 1, 2020 at 10:30 a.m., is to occur as a video/teleconference using Skype. To optimize the quality of the video feed, the Court, the Defendant, and a single counsel for each of the defense and the Government will appear by video for the proceeding; all others will participate by telephone. Co-counsel, members of the press, and the public may access the audio feed of the conference by calling 917-933-2166 and using participant code 840663566. (Signed by Judge Paul A. Engelmayer on 11/25/2020) (See ORDER set forth) (ap) (Entered: 11/25/2020) |
| 11/29/2020 | 173 | DECLARATION of Ari Teman & Counsel by Ari Teman. *Waiver of Right to Appear in Person at Sentencing* (Biale, Noam) (Entered: 11/29/2020) |
| 11/30/2020 | 174 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated November 30, 2020 re: Forfeiture Document filed by USA. (Attachments: # 1 Text of Proposed Order Proposed Forfeiture Order, # 2 Exhibit Account Summary)(Bhatia, Kedar) (Entered: 11/30/2020) |

| 11/30/2020 | 175 | SEALED DOCUMENT placed in vault. (jus) (Entered: 11/30/2020) |
|---|---|---|
| 11/30/2020 | 176 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Justine Harris/Noam Biale dated 11/30/20 re: Restitution (Biale, Noam) (Entered: 11/30/2020) |
| 11/30/2020 | 177 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated November 30, 2020 re: Forfeiture Document filed by USA. (Bhatia, Kedar) (Entered: 11/30/2020) |
| 12/01/2020 | 178 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING as to Ari Teman. Accepted: (Signed by Judge Paul A. Engelmayer on 12/1/2020)(bw) (Entered: 12/01/2020) |
| 12/01/2020 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Video Status Conference as to Ari Teman held on 12/1/2020.Defendant present (on bond), with attorney Noam Biale. AUSA Kedar Bhatia present. Court reporter present. All parties present via video. (ajs) (Entered: 12/01/2020) |
| 12/01/2020 | 179 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Justine Harris dated December 1, 2020 re: Termination as Counsel for Ari Teman and Redaction Request Pursuant to FRCP 49.1(a)(3) . Document filed by Ari Teman. (Harris, Justine) (Entered: 12/01/2020) |
| 12/02/2020 | 180 | ORDER as to Ari Teman. For the reasons stated on the record at today's conference, the Court hereby directs the parties to file a joint letter on December 15, 2020, addressing (1) the status of the defendant's legal representation, including whether a Curcio proceeding is necessary, and the inquiries to be made of the defendant at any Curcio hearings; and (2) any other issues that counsel believe need to be addressed prior to sentencing. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 12/1/2020)(bw) (Entered: 12/02/2020) |
| 12/02/2020 | 181 | MEMO ENDORSEMENT granting 179 LETTER MOTION filed by Ari Teman addressed to Judge Paul A. Engelmayer from Attorney Justine Harris dated December 1, 2020 re: Termination as Counsel for Ari Teman and Redaction Request Pursuant to FRCP 49.1(a)(3). ENDORSEMENT: GRANTED. The Court grants the motion to redact the name of Mr. Biale's child from the transcript of yesterday's conference. The Clerk of Court is requested to terminate the motion at Dkt. No. 179. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 12/2/2020) (bw) (Entered: 12/02/2020) |
| 12/04/2020 | 182 | TRANSCRIPT of Proceedings as to Ari Teman re: Conference held on 12/1/20 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/28/2020. Redacted Transcript Deadline set for 1/4/2021. Release of Transcript Restriction set for 3/4/2021. (McGuirk, Kelly) (Entered: 12/04/2020) |
| 12/04/2020 | 183 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Conference proceeding held on 12/1/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/04/2020) |
| 12/10/2020 | 184 | NOTICE of Intent to Request Redaction of 182 Transcript,, by Justine Aleta Harris in case as to Ari Teman. (Harris, Justine) (Entered: 12/10/2020) |

| 12/10/2020 | 185 | MOTION for Justine A. Harris and Noam Biale to Withdraw as Attorney . Document filed by Ari Teman. (Attachments: # 1 Affidavit Affirmation of Justine A. Harris, # 2 Text of Proposed Order)(Harris, Justine) (Entered: 12/10/2020) |
| --- | --- | --- |
| 12/11/2020 | 186 | ORDER ON MOTION FOR PERMISSION FOR SHER TREMONTE LLP TO WITHDRAW AS COUNSL FOR ARI TEMAN 185 Motion to Withdraw as Attorney. GRANT the Motion Sher Tremonte is withdrawn as counsel to the Defendant Ari Teman. (Signed by Judge Paul A. Engelmayer on 12/10/20) (jw) (Entered: 12/11/2020) |
| 12/11/2020 | | Attorney update in case as to Ari Teman. Attorney Noam Korati Biale and Justine Aleta Harris terminated. (jw) (Entered: 12/11/2020) |
| 12/11/2020 | 187 | Redaction of 182 Transcript,, in case as to Ari Teman. (McGuirk, Kelly) (Entered: 12/11/2020) |
| 12/14/2020 | 188 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated December 14, 2020 re: Extension of Time to File Joint Letter Pursuant to Court Order (Doc. 180) *(Unopposea)*. Document filed by Ari Teman. (Gelfand, Justin) (Entered: 12/14/2020) |
| 12/15/2020 | 189 | MEMO ENDORSEMENT as to Ari Teman (1) on 188 LETTER MOTION addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated December 14, 2020 re: Extension of Time to File Joint Letter Pursuant to Court Order (Doc. 180) (Unopposed). ENDORSEMENT: GRANTED. Counsels joint letter is due Wednesday, January 5, 2021. The Court wishes all counsel and Mr. Teman a happy and healthy New Year. The Clerk of Court is requested to terminate the motion at Dkt. No. 188. (Signed by Judge Paul A. Engelmayer on 12/15/2020) (ap) (Entered: 12/15/2020) |
| 12/23/2020 | 190 | ORDER as to Ari Teman: The Court has received the attached letter from defendant Ari Teman, indicating that he has experienced delays in retaining new counsel on account of difficulties securing the funds necessary to do so. The Court extends until January 8, 2021 the deadline for new counsel for Mr. Teman to appear. Mr. Teman's letter also states that he has terminated his trial counsel, Justin Gelfand, Esq., and Joseph DiRuzzo, Esq. For avoidance of doubt, the Court has not authorized the withdrawal of trial counsel, and it is imperative, unless and until the Court has affirmatively authorized Mr. Teman to represent himself pro se, that Mr. Teman be represented by counsel in this matter. Therefore, although the Court expects that it will grant a motion by trial counsel to withdraw upon the appearance of successor counsel, for the time being, Mr. Gelfand and Mr. DiRuzzo remain counsel of record to Mr. Teman. Mr. Teman's letter further asks the Court to direct that the law firm of Sher Tremonte return a retainer to him or transfer it to the potential successor counsel he has identified. The Court is not privy to the written or other terms of any agreement governing Mr. Teman's representation by Sher Tremonte or any retainers paid thereunder, and in any event, it is not within the Court's purview in this case to resolve that commercial dispute. The Court hopes that Mr. Teman's existing counsel will assist him in amicably resolving any dispute he may have with Sher Tremonte. Mr. Teman's letter finally refers again to alleged Brady violations in this case. The Court reminds Mr. Teman that it has comprehensively reviewed and resolved his claims of Brady violations and has found them to be completely without merit. To the extent Mr. Teman claims that the updated restitution order that the Government submitted on the eve of the scheduled sentencing date bespoke a Brady violation, the Court, on the presen record, finds that claim meritless too. The Government acted properly in securing updated information from the victim as to the present state of its out-of-pocket loss and properly notified the Court and the defense of a calculation that modestly reduced the amount needed to make the bank whole. While the Court was dismayed by the Government's late attention to the issue and lastminute submissions, which would have necessitated a short delay of sentencing had Mr. Teman's representation issues not |

A-27

| | | |
|---|---|---|
| | | independently required an adjournment, there is no basis on which to claim that the Government violated its Brady obligations in connection with these events. The Court wishes Mr. Teman and all counsel a healthy and happy new year. (Signed by Judge Paul A. Engelmayer on 12/23/2020) (ap) Modified on 1/4/2021 (ap). (Entered: 12/23/2020) |
| 12/28/2020 | 191 | ENDORSED LETTER as to Ari Teman addressed to Judge Paul A. Engelmayer from Domingo R. Gallardo dated 12/23/20 re: I represent Sher Tremonte LLP with respect to the transition of Ari Teman's defense to incoming counsel, Susan G. Kellman and Andrew J. Frisch. As you are aware, Sher Tremonte LLP's representation of Mr. Teman ended on December 11, 2020, with the Court's Order granting the firm's motion to withdraw as Mr. Teman's counsel...ENDORSEMENT: The Court stands ready to order the transfer to Mr. Teman's incoming counsel of the funds held in escrow for purposes of restitution. To assure that there is a meeting of the minds among all relevant persons, the Court asks that outgoing and incoming defense counsel, and Mr. Teman, jointly submit a letter to the Court requesting the issuance, and attaching a proposed draft, of an order directing this transfer. The proposed order should set out, inter alia, the precise amount of the funds to be transferred. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 12/28/2020)(jw) (Entered: 12/28/2020) |
| 01/08/2021 | 192 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from counsel for Teman dated 1/8/2021 re: additional time to retain new counsel (Diruzzo, Joseph) (Entered: 01/08/2021) |
| 01/08/2021 | 193 | MEMO ENDORSEMENT as to Ari Teman on re: 192 LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from counsel for Teman dated 1/8/2021 re: additional time to retain new counsel. ENDORSEMENT: SO ORDERED. (Signed by Judge Paul A. Engelmayer on 1/8/2021) (ap) (Entered: 01/08/2021) |
| 01/15/2021 | 194 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Justin K. Gelfand dated January 15, 2021 re: Extension of Time to Retain Counsel . Document filed by Ari Teman. (Gelfand, Justin) (Entered: 01/15/2021) |
| 01/19/2021 | 195 | MEMO ENDORSEMENT 194 LETTER MOTION We are writing at the request of our client, Ari Teman (Teman), to respectfully request one final extension of time to enable him to retain new counsel....ENDORSEMENT...GRANTED. The Court extends the time for successor counsel for Mr. Teman to appear to January 29, 2021. The Clerk of Court is requested to terminate the motion at Dkt. No. 194. (Signed by Judge Paul A. Engelmayer on 1/19/21) (jw) (Entered: 01/19/2021) |
| 01/22/2021 | 196 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Andrew J. Frisch and Domingo Gallardo dated 1/21/2021 re: Attorney Susan Kellman and I expect to enter notices of appearances as soon as possible to represent Ari Teman in the above-referenced case. We submit this letter jointly with counsel for Sher Tremonte LLP in response to the Courts order of December 28, 2020 (Docket No. 191). With the Courts permission, because Ms. Kellman and I are not yet prepared to file notices of appearance, we submit this letter via email and propose that we file it via ECF upon filing our notices of appearance, or that the Court do so in anticipation of the filing of our notices (jw) (Entered: 01/22/2021) |
| 01/22/2021 | 197 | LETTER addressed to Judge Paul A. Engelmayer from Andrew J. Frisch and Domingo Gallardo dated January 22, 2021 re: I write on behalf of defense counsel to supplement our letter of yesterday and to submit the accompanying revised stipulation for the Courts consideration. The stipulation submitted yesterday is withdrawn. The parties now submit a revised stipulation, submitted herewith, which protects the identities of the contributors, but accomplishes return of their funds so they can decide whether, to what extent, and for what purpose to contribute funds to Mr. Teman. (jw) (Entered: 01/22/2021) |

A-28

| 01/22/2021 | 198 | STIPULATION as to Ari Teman. IT IS HEREBY STIPULATED and AGREED, by and between Ari Teman, Domingo Gallardo, Esq. for Sher Tremonte LLP, and Susan G. Kellman and Schlam Stone & Dolan LLP, by Andrew J. Frisch for Ari Teman, as follows: 1. Sher Tremonte LLP is holding $260,000 in escrow received from various contributors (collectively the "Escrow "Contributors") for purposes of paying the anticipated restitution order in this matter. 2. The $260,000 held in escrow by Sher Tremonte LLP will be returned, forthwith, to each Escrow Contributor corresponding to the amount of each Escrow Contributor's contribution (each Escrow Contributor will then be free to decide whether to contribute funds for the benefit of Ari Teman, the extent of any such contribution, and the purpose of any such contribution, such as restitution, or legal fees). Each Escrow Contributor shall complete and execute an Authorization to Transfer Fund form (attached as Exhibit "A") verifying each contributor's authority to order the transfer of said fund and directing where said funds are to be transferred; 3. Upon return of the $260,000 to the Escrow Contributors, Sher Tremonte LLP shall have no further obligations related to these escrowed funds. (Signed by Judge Paul A. Engelmayer on 1/22/2021) (ap) Modified on 1/25/2021 (ap). (Entered: 01/22/2021) |
|---|---|---|
| 01/27/2021 | 199 | NOTICE OF ATTORNEY APPEARANCE: Susan Gail Kellman appearing for Ari Teman. Appearance Type: Retained. (Kellman, Susan) (Entered: 01/27/2021) |
| 01/27/2021 | 200 | NOTICE OF ATTORNEY APPEARANCE: Andrew James Frisch appearing for Ari Teman. Appearance Type: Retained. (Frisch, Andrew) (Entered: 01/27/2021) |
| 01/27/2021 | 201 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 1/27/2021 re: Modification of Conditions of Release ., MOTION to Modify Conditions of Release . Document filed by Ari Teman. (Kellman, Susan) (Entered: 01/27/2021) |
| 01/28/2021 | 202 | ORDER as to Ari Teman: The sentencing hearing for defendant Ari Teman was scheduled for December 1, 2020, but was terminated shortly after it began after the Court identified the need for a Curcio hearing in order to permit Sher Tremonte LLP, which had recently appeared on Mr. Teman's behalf, to represent him alongside trial counsel. The Court has since granted a series of adjournments to enable Mr. Teman to secure alternative post-trial counsel. Yesterday, notices of appearance for Mr. Teman were filed by Susan G. Kellman, Esq., and Andrew J. Frisch, Esq. See Dkts. 199, 200. The Court welcomes new counsel, for whom the Court has great esteem. Although the sentencing record otherwise appears complete, the Court, before setting a new sentencing date, would benefit from receiving letter submissions from counsel addressing the following discrete points: 1. Bail pending appeal: The Court wishes to reach a determination, before imposing sentence, on whether it will grant bail pending appeal. That is because the Court regards it as relevant to the reasonable and proper sentence under 18 U.S.C. § 3553(a) whether Mr. Teman is likely to be incarcerated at a time when the restrictive and difficult conditions attendant to the COVID-19 pandemic remain in place. In numerous cases involving defendants who either have been in custody since March 2020 and/or who have been about to enter custody, the Court has imposed a shorter sentence than it otherwise would have, in recognition of the heightened rigors of custody during the pandemic. That factor would be present were Mr. Teman to commence serving his sentence not long after the upcoming sentencing, but would not clearly be so were the Court to grant bail pending appeal. The Court therefore solicits counsels' views on whether Mr. Teman qualifies for bail pending appeal. See 18 U.S.C. § 3143(b); United States v. Randell, 761 F.2d 122 (1985).2. Restitution and forfeiture: On the eve of the December 1, 2020 sentencing, the Government submitted evidentiary materials in support of a proposed forfeiture order that, had Mr. Teman's representation issue not arisen, independently would have required an adjournment. The Court wishes to resolve, in an orderly fashion, what the appropriate restitution order is, and whether and if so, on what |

|  |  | terms a forfeiture order is also warranted, as the Government has urged. The Court therefore solicits counsels' views as to whether and on what terms restitution and/or forfeiture orders are merited. The Court accordingly sets the following schedule: By Friday, February 12, 2021, the defense is to submit a memorandum setting out its views on bail pending appeal, and the Government is to submit a memorandum setting out its views on restitution and forfeiture, attaching proposed such orders and evidentiary material supporting the monetary calculations in those orders. By Friday, February 26, 2021, the Government is to respond to the defense's memorandum as to bail pending appeal, and the defense is to respond to the Government's memorandum as to forfeiture and restitution. The Court does not invite replies to these submissions. (Signed by Judge Paul A. Engelmayer on 1/28/2021) (See ORDER set forth) (ap) Modified on 2/1/2021 (ap). (Entered: 01/28/2021) |
|---|---|---|
| 01/28/2021 | 203 | MEMO ENDORSEMENT as to Ari Teman (1) granting 201 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 1/27/2021 re: Modification of Conditions of Release. ENDORSEMENT: GRANTED. The Clerk of Court is requested to terminate the motion at Dkt. No. 201. (Signed by Judge Paul A. Engelmayer on 1/28/2021) (ap) (Entered: 01/28/2021) |
| 01/28/2021 | 204 | MOTION for Justin K. Gelfand to Withdraw as Attorney . Document filed by Ari Teman. (Attachments: # 1 Affidavit Affirmation of Justin K. Gelfand, # 2 Text of Proposed Order)(Gelfand, Justin) (Entered: 01/28/2021) |
| 01/28/2021 | 205 | MOTION for Joseph A. DiRuzzo, III to Withdraw as Attorney . Document filed by Ari Teman. (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Diruzzo, Joseph) (Entered: 01/28/2021) |
| 01/29/2021 | 206 | ORDER ON MOTION FOR PERMISSION FOR JOSEPH A. DiRUZZO, III AND DiRUZZO & COMPANY TO WITHDRAW AS COUNSEL FOR ARI TEMAN as to Ari Teman: UPON the Motion to Withdraw filed by Joseph A. DiRuzzo, III, and the law firm DiRuzzo & Company, the Court does hereby: GRANT the Motion. Joseph A. DiRuzzo, III, and the law firm DiRuzzo & Company are withdrawn as counsel for Defendant Ari Teman. The Clerk of Court is requested to terminate the motion at Dkt. No. 205. Attorney Joseph Andrew Diruzzo, III terminated in case as to Ari Teman. (Signed by Judge Paul A. Engelmayer on 1/29/2021) (ap) (Entered: 01/29/2021) |
| 01/29/2021 | 207 | ORDER ON MOTION FOR PERMISSION FOR JUSTIN K. GELFAND AND MARGULIS GELFAND LLC TO WITHDRAW AS COUNSEL FOR ARI TEMAN as to Ari Teman. UPON the Motion to Withdraw filed by Justin K. Gelfand and Margulis Gelfand, LLC, the Court does hereby: GRANT the Motion. Margulis Gelfand, LLC and Justin K. Gelfand, Esq., are withdrawn as counsel for Defendant Ari Teman. The Clerk of Court is requested to terminate the motion at Dkt. No. 204. Attorney Justin Gelfand terminated in case as to Ari Teman. (Signed by Judge Paul A. Engelmayer on 1/29/2021) (ap) (Entered: 01/29/2021) |
| 01/29/2021 | 208 | ORDER as to Ari Teman: The Court today has issued orders approving the withdrawal of defendant Teman's trial counsel, Justin Gelfand, Esq., and Joseph Diruzzo, Esq. The Court wishes to thank and commend trial counsel for the energetic and high-quality representation of Mr. Teman and for their unflagging professionalism. The Court wishes Mr. Gelfand and Mr. Diruzzo well. (Signed by Judge Paul A. Engelmayer on 1/29/2021) (ap) (Entered: 01/29/2021) |
| 01/29/2021 | 209 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 1/29/2021 re: Letter Scheduling Motion . Document filed by Ari Teman. (Kellman, Susan) (Entered: 01/29/2021) |
| 01/29/2021 | 210 | MEMO ENDORSEMENT as to Ari Teman (1) granting 209 FIRST LETTER MOTION |

A-30

| | | |
|---|---|---|
| | | addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 1/29/2021 re: Letter Scheduling Motion. ENDORSEMENT: GRANTED. The Court modifies the deadlines set in its order of January 28, 2021, such that the parties' opening letters, which had been due February 12, 2021, are now due March 12, 2021, and the parties' responsive letters, which had been due February 26, 2021, are now due March 26, 2021. The parties should anticipate that sentencing will likely be scheduled for April, and is hopeful than an in-person proceeding can then be held consistent with the health needs of all attendees. The Clerk of Court is requested to terminate the motion at Dkt. No. 209. (Signed by Judge Paul A. Engelmayer on 1/29/2021) (ap) (Entered: 01/29/2021) |
| 01/29/2021 | | Set/Reset Deadlines as to Ari Teman: Motions due by 3/12/2021. Responses due by 3/26/2021. (ap) (Entered: 01/29/2021) |
| 03/12/2021 | 211 | SECOND LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 3/12/2021 re: Extension of Time ., MOTION for Extension of Time . Document filed by Ari Teman. (Kellman, Susan) (Entered: 03/12/2021) |
| 03/15/2021 | 212 | MEMO ENDORSEMENT 211 SECOND LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 3/12/2021 re: Extension of Time MOTION for Extension of Time...ENDORSEMENT..Granted. The Court extends both parties filing deadlines by three weeks (Signed by Judge Paul A. Engelmayer on 3/12/21) (jw) (Entered: 03/15/2021) |
| 04/02/2021 | 213 | SECOND LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 4/2/2021 re: Extension to File by All Parties ., MOTION for Extension of Time . Document filed by Ari Teman. (Kellman, Susan) (Entered: 04/02/2021) |
| 04/05/2021 | 214 | MEMO ENDORSEMENT as to Ari Teman (1) granting 213 LETTER MOTION re: 213 SECOND LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 4/2/2021 re: Extension to File by All Parties. ENDORSEMENT: GRANTED. However, the parties should not expect further extensions. The Clerk of Court is requested to terminate the motion at Dkt. No. 213. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 4/5/2021) (lnl) (Entered: 04/05/2021) |
| 04/23/2021 | 215 | LETTER MOTION addressed to Judge Paul A. Engelmayer from the Government dated April 23, 2021 re: Restitution and Forfeiture . Document filed by USA as to Ari Teman. (Attachments: # 1 Exhibit Proposed Restitution Order, # 2 Exhibit Preliminary Order of Forfeiture, # 3 Exhibit 3503-19, # 4 Exhibit Revised 3503-19, # 5 Exhibit Finnochiaro Affidavit and Exhibit 1)(Bhatia, Kedar) (Entered: 04/23/2021) |
| 04/23/2021 | 216 | MOTION for Extension of Time to File . Document filed by Ari Teman. (Attachments: # 1 Exhibit Curriculum Vitae of Richard M. Fraher)(Frisch, Andrew) (Entered: 04/23/2021) |
| 04/26/2021 | 217 | ORDER 216 Motion for Extension of Time to File as to Ari Teman. The Court accordingly orders as follows: The defense's letter, if any, in support of bail pending appeal is due Wednesday, April 28, 2021. This deadline will not be extended. The Court, however, will make this exception. To the extent the defense believes there are "substantial questions of law or fact" for appeal, 18 U.S.C.§ 3143(B)(l)(b), that directly arise out of Professor Fraher's expert report, the defense may submit a supplemental bail-pending-appeal letter addressing these discrete issues only. That supplemental letter is due Friday, May 14, 2021, and should attach Professor Fraher's report. For avoidance of doubt, the Court does not authorize the defense to address, in its May 14 letter, any issues other than those arising directly out of Professor Fraher's report. The defense is directed to provide Professor Fraher' s expert report to the Government as soon as it has been received. The defense's letter in response to the Government's submission on restitution and forfeiture is also due Friday, May 14, 2021. The Government's letter in response to the defense's submissions on bail pending appeal is due Wednesday, May 26, 2021. The |

|            |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                    |
|------------|-----|----------------|
|            |     | Court authorizes the Government to submit a reply in support of its application for restitution and forfeiture. That is to give the Government an opportunity to respond to the expert opinion upon which the defense has stated it intends to rely in opposing this application, but which has not yet been disclosed. The Government's reply is also due Wednesday, May 26, 2021. The Court's deputy will be in touch with the parties today to schedule a sentencing date during the second half of June. The parties remain at liberty to discuss a resolution of this case. However, barring a joint application for an extension of time that has been granted by the Court, those discussions cannot be assumed to displace the above schedule. (Signed by Judge Paul A. Engelmayer on 4/26/21) (jw) (Entered: 04/26/2021) |
| 04/26/2021 |     | Set/Reset Deadlines/Hearings as to Ari Teman:Bail Appeal is due by 4/28/2021. Defense Letter Replies due by 5/14/2021. Government Responses due by 5/26/2021. (jw) (Entered: 04/26/2021) |
| 04/28/2021 | 218 | MOTION to Dismiss ., MOTION for Bond . Document filed by Ari Teman. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Frisch, Andrew) (Entered: 04/28/2021) |
| 04/28/2021 | 219 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Andrew J. Frisch dated April 28, 2021 re: Vacatur of conviction and bail pending appeal . Document filed by Ari Teman. (Attachments: # 1 A, # 2 B, # 3 C, # 4 D, # 5 E, # 6 F)(Frisch, Andrew) (Entered: 04/28/2021) |
| 05/05/2021 | 220 | ORDER as to Ari Teman: In light of new defense counsel's recent filing putting at issue, inter alia, whether Bank of America will be entitled to restitution, Dkt. 218, the Court, in an excess of caution, notifies counsel of the following. The Court does not have a financial holding in Bank of America. However, as reflected in the Court's annual financial disclosure reports, the Court's family owns stock in Berkshire Hathaway, Inc., which is a beneficial owner of more than 10% of Bank of America's outstanding common stock. The Court's considered judgment is that this circumstance in which the Court may be called upon to resolve Bank of America's entitlement to restitution is not one in which this judge's "impartiality might reasonably be questioned," so as to require recusal. See 28 U.S.C. § 455(a); United States v. Ravitch, 421 F.2d 1196, 1205 (2d Cir. 1970). However, to the extent that any party takes a different view, counsel are at liberty to so advocate. (Signed by Judge Paul A. Engelmayer on 5/5/2021)(ap) Modified on 5/6/2021 (ap). (Entered: 05/05/2021) |
| 05/12/2021 | 221 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Andrew J. Frisch dated May 12, 2021 re: Declaration of Richard M. Fraher (Attachments: # 1 Exhibit Declaration of Richard M. Fraher)(Frisch, Andrew) (Entered: 05/12/2021) |
| 05/14/2021 | 222 | RESPONSE in Support of Motion by Ari Teman re: 219 LETTER MOTION addressed to Judge Paul A. Engelmayer from Andrew J. Frisch dated April 28, 2021 re: Vacatur of conviction and bail pending appeal .. (Frisch, Andrew) (Entered: 05/14/2021) |
| 05/20/2021 | 223 | LETTER MOTION addressed to Judge Paul A. Engelmayer from the Government dated May 20, 2021 re: Extension of Time to File Response & Reply . Document filed by USA as to Ari Teman. (Bhatia, Kedar) (Entered: 05/20/2021) |
| 05/21/2021 | 224 | MEMO ENDORSEMENT 223 LETTER MOTION addressed to Judge Paul A. Engelmayer from the Government dated May 20, 2021 re: Extension of Time to File Response & Reply...ENDORSEMENT...Granted. The Governments submissions are now due June 9, 2021. The Clerk of Court is requested to terminate the motion at Dkt. No. 223. (Signed by Judge Paul A. Engelmayer on 5/21/21) (jw) (Entered: 05/21/2021) |
| 05/21/2021 |     | Set/Reset Deadlines/Hearings as to Ari Teman: Government Responses due by 6/9/2021. |

| | | |
|---|---|---|
| | | (jw) (Entered: 05/21/2021) |
| 06/09/2021 | 225 | LETTER RESPONSE in Opposition by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from USA dated June 9, 2021 re: 219 LETTER MOTION addressed to Judge Paul A. Engelmayer from Andrew J. Frisch dated April 28, 2021 re: Vacatur of conviction and bail pending appeal .. (Gutwillig, Jacob) (Entered: 06/09/2021) |
| 06/10/2021 | 226 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 6/10/2021 re: Request for Time to File a Reply . Document filed by Ari Teman. (Kellman, Susan) (Entered: 06/10/2021) |
| 06/10/2021 | 227 | MEMO ENDORSEMENT re: 226 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 6/10/2021 re: Request for Time to File a Reply...ENDORSEMENT...The Court gives the defense until May 17, 2021 to file a reply. The proposed due date of May 21, 2021 is too close to the scheduled sentencing date. The Clerk of Court is requested to terminate the motion at Dkt. No. 226. (Signed by Judge Paul A. Engelmayer on 6/10/21) (jw) (Entered: 06/10/2021) |
| 06/10/2021 | 228 | SCHEDULING ORDER as to Ari Teman. The Court schedules sentencing in this case for June 24, 2021 at 10:30 a.m. in Coutroom 1305 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY. The parties are to consult the Court's Emergency Individual Rules and Practices in Light of COVID- 19, available at https://www.nysd.uscourts.gov/hon-paul-engelmayer. For the safety of all involved, the Court requests that members of the public who wish to attend this conference use the following dial in information to access the conference; call 888-363-4749 and use access code 468-4906 (Sentencing set for 6/24/2021 at 10:30 AM in Courtroom 1305, 40 Centre Street, New York, NY 10007 before Judge Paul A. Engelmayer.) (Signed by Judge Paul A. Engelmayer on 6/10/21)(jw) (Entered: 06/10/2021) |
| 06/11/2021 | 229 | ORDER as to Ari Teman. The Court VACATES the order at Dkt. No. 227 and DENIES the request at Dkt. No. 226. (Signed by Judge Paul A. Engelmayer on 6/11/21)(jw) (Entered: 06/11/2021) |
| 06/14/2021 | 230 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Andrew J. Frisch and Susan G. Kellman dated June 14, 2021 re: (1) Recusal; and (2) Reconsideration of denial of permission to reply . Document filed by Ari Teman. (Frisch, Andrew) (Entered: 06/14/2021) |
| 06/15/2021 | 231 | ORDER as to Ari Teman: The Courts order at docket 229 was issued in error, due to a miscommunication within the Courts chambers. The Courts intention was to authorize the filing of a reply brief, as reflected in the memo endorsement at docket 227. The Court apologizes for this error. In light of the mixed signals created by the Courts errant order at docket 229, the Court gives the defense until Friday, June 18, 2021, to submit this reply. No further submissions on this point are authorized. The Court notes that in the defenses letter of today, Dkt. 230, the defense has indicated for the first time an intention to move for the Courts recusal. To assure that any such application is fully considered, the Court authorizes the defense, in its letter due Friday, June 18, 2021, to set out in full its arguments for recusal. Should a recusal motion be made, the Court will give the Government until Monday, June 28, 2021, to respond, and will adjourn the sentencing hearing scheduled for June 24, 2021. In the event the defense elects not to make a recusal motion, sentencing will proceed as scheduled. (Replies due by 6/18/2021. Recusal Motions due by 6/18/2021. Responses due by 6/28/2021) (Signed by Judge Paul A. Engelmayer on 6/15/2021) (ap) (Entered: 06/15/2021) |
| 06/18/2021 | 232 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Andrew J. Frisch and Susan G. Kellman dated June 18, 2021 re: Submission Due June 21, 2021 (Frisch, Andrew) (Entered: 06/18/2021) |

A-33

| 06/18/2021 | 234 | ORDER as to Ari Teman: The Court has received an informal request by defense counsel for extension of their deadline to file a reply until Monday, June 21, 2021. The Court grants this motion, to enable counsel to submit a polished reply and in recognition of the federal holiday being observed today. However, no further extensions will be granted, and no further submissions from the defense are authorized. The Court separately directs defense counsel, by email to the Court's chambers due at noon today, June 18, 2021, to notify the Court (and the Government) whether defense counsel intends, in their submission on Monday, to ask the Court to recuse itself, as counsel have indicated they are contemplating. This information is necessary to enable the Court to manage its schedule for next week, as a recusal motion will require the Court to adjourn the conference scheduled for June 24 in order to give the Government sufficient time to respond. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 6/18/2021) (lnl) (Entered: 06/21/2021) |
| --- | --- | --- |
| 06/21/2021 | 233 | LETTER REPLY TO RESPONSE to Motion by Ari Teman addressed to Judge Paul A. Engelmayer from Andrew J. Frisch and Susan G. Kellman dated June 21, 2021 re 230 LETTER MOTION addressed to Judge Paul A. Engelmayer from Andrew J. Frisch and Susan G. Kellman dated June 14, 2021 re: (1) Recusal; and (2) Reconsideration of denial of permission to reply ., 219 LETTER MOTION addressed to Judge Paul A. Engelmayer from Andrew J. Frisch dated April 28, 2021 re: Vacatur of conviction and bail pending appeal .. (Frisch, Andrew) (Entered: 06/21/2021) |
| 06/21/2021 | 235 | ORDER as to Ari Teman: The defense today filed a letter-brief that (1) replies to the Government's opposition to the defense's motion to vacate and (2) moves for the Court's recusal. Dkt. 233. The sole remaining submission to be made is the Government's response to the recusal motion. In light of the brief extension granted to the defense for its submission, the Court extends by similar length the deadline for the Government's response, which is now due Tuesday, June 29, 2021. For avoidance of doubt, no further submissions by either party on either subject are authorized. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 6/21/2021) (lnl) (Entered: 06/21/2021) |
| 06/21/2021 | 236 | ORDER as to Ari Teman: In light of the defense's pending motion for recusal, the Court adjourns the sentencing hearing scheduled for June 24, 2021. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 6/21/2021) (lnl) (Entered: 06/21/2021) |
| 06/29/2021 | 237 | RESPONSE by USA as to Ari Teman re: 233 Reply to Response to Motion,, filed by Ari Teman . (Gutwillig, Jacob) (Entered: 06/29/2021) |
| 06/30/2021 | 238 | SCHEDULING ORDER as to Ari Teman. The Court hereby schedules a conference for Wednesday, July 7, 2021, at 10:30 a.m. The conference will be held in person, in Courtroom 1305 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY. Members of the public who wish to attend this conference remotely may use the following dial in information to access the conference; call 888-363-4749 and use access code 468-4906 (Status Conference set for 7/7/2021 at 10:30 AM in Courtroom 1305, 40 Centre Street, New York, NY 10007 before Judge Paul A. Engelmayer.) (Signed by Judge Paul A. Engelmayer on 6/30/21)(jw) (Entered: 06/30/2021) |
| 07/01/2021 | 239 | AMENDED SCHEDULING ORDER as to Ari Teman. Yesterday, the Court issued an order (Dkt. No. 238) scheduling a conference for July 7, 2021 at 10:30 a.m. To accommodate counsel and the defendant, the Court hereby reschedules the conference to July 9, 2021 at 12:30 p.m. The conference will be held in Courtroom 1305 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY. Counsel for both sides, and the defendant, remain required to attend, in person. Members of the public who wish to attend this conference remotely may access it via the following dial in information: call 888-363-4749 and use access code 468-4906 (Status Conference set for 7/9/2021 at 12:30 |

| | | |
|---|---|---|
| | | PM before Judge Paul A. Engelmayer.) (Signed by Judge Paul A. Engelmayer on 7/1/21) (jw) (Entered: 07/01/2021) |
| 07/09/2021 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Status Conference as to Ari Teman held on 7/9/2021. Defendant present (on bond) with attorneys, Susan Kellman & Andrew Frisch. AUSA Jacob Gutwillig present. Court reporter present. See transcript. (ajs) (Entered: 07/09/2021) |
| 07/09/2021 | 240 | ORDER as to Ari Teman: At today's conference, the Court issued a lengthy bench decision denying the defense's motions for vacatur of the defendant's convictions, for a new trial, and for the Court's recusal. The Court's basis for these rulings are reflected in the transcript of the conference. The Court requests that the Clerk of Court terminate the motions at Dkt. Nos. 218, 219 and 230. The Court also set the following schedule: Sentencing is scheduled for July 28, 2021 at 1:00 p.m. in Courtroom 1305 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY. The Court authorizes the defense to file a supplemental sentencing submission, limited to the discrete areas identified on the record of todays conference. This submission is due July 16, 2021. The Court authorizes the Government to file a response, due July 21, 2021. By Tuesday, July 13, 2021, defense counsel is to file an affidavit identifying with specificity any concrete respects in which the defendants legal interests in this case have been injured by the fact that, for a brief period after trial, he was represented by, among others, an attorney married to an Assistant United States Attorney. (Sentencing set for 7/28/2021 at 01:00 PM in Courtroom 1305, 40 Centre Street, New York, NY 10007 before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 7/9/2021) (ap) (Entered: 07/09/2021) |
| 07/14/2021 | 241 | ORDER as to Ari Teman. The Court has received an email from defense counsel Susan G. Kellman, Esq., notifying the Court that, in response to the Court's directive, see Dkt. 240, that defense counsel file by July 13, 2021 a declaration identifying any concrete legal interest(s) of the defendant that were injured as the result of his brief post-conviction representation by Sher Tremonte LLP, the defense will not be submitting such a declaration (Signed by Judge Paul A. Engelmayer on 7/14/21)(jw) (Entered: 07/14/2021) |
| 07/16/2021 | 242 | SENTENCING SUBMISSION by Ari Teman. (Kellman, Susan) (Entered: 07/16/2021) |
| 07/17/2021 | 243 | SENTENCING SUBMISSION by Ari Teman. (Kellman, Susan) (Entered: 07/17/2021) |
| 07/25/2021 | 244 | TRANSCRIPT of Proceedings as to Ari Teman re: Conference held on 7/9/21 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Sadie Herbert, (212) 805-0310, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/16/2021. Redacted Transcript Deadline set for 8/25/2021. Release of Transcript Restriction set for 10/25/2021. (McGuirk, Kelly) (Entered: 07/25/2021) |
| 07/25/2021 | 245 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Conference proceeding held on 7/9/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 07/25/2021) |
| 07/26/2021 | 246 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan Kellman dated 7/26/2021 re: Request that Sentencing Be Done Remotely . Document filed by Ari Teman. (Kellman, Susan) (Entered: 07/26/2021) |

| | | |
|---|---|---|
| 07/26/2021 | 247 | MEMO ENDORSEMENT as to Ari Teman (1) denying 246 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan Kellman dated 7/26/2021 re: Request that Sentencing Be Done Remotely. ENDORSEMENT: DENIED. The July 28, 2021 sentencing hearing will be conducted in person. The Clerk or Court is requested to terminate the motion Dkt. No. 246. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 7/26/2021) (lnl) (Entered: 07/26/2021) |
| 07/26/2021 | 248 | ORDER as to Ari Teman: This order addresses several housekeeping issues in advance of sentencing in this case, which is scheduled for Wednesday, July 28, 2021, at 1:00 p.m. With respect to restitution, the Court will inquire at sentencing as to the sum, if any, which has to date been paid towards the restitution due of $259,340.32. The Court directs counsel to confer in advance of sentencing as to this factual point. To the extent that restitution has not been paid, the Comi notes a difference between the Government's proposed restitution order (Dkt. No. 215-1) and the terms of restitution proposed in the Presentence Report (Dkt. No. 123), in that the Government would require that the defendant pay the outstanding balance immediately whereas the PSR, consistent with the defendant's reported negative net worth, envisions a schedule of payments. The Court asks counsel to confer in advance of sentencing on this point, which the Court will inquire into at sentencing. With respect to forfeiture, the Government's proposed forfeiture order (Dkt. No. 215-2) envisions the forfeiture of$333,000, representing the amount of proceeds traceable to the defendant's commission of the bank and wire fraud offenses of which he was found guilty. That figure appears to be incorrect, as the Court understands the sum total of the 29 checks deposited by the defendant to be $330,000. The Court will inquire into this at sentencing. The Court will also inquire whether the Government continues, in its discretion, to pursue mandatory forfeiture as a component of punishment in this case. If so, the Government should be prepared to explain the bases on which it elects to pursue such forfeiture in cases of bank and wire fraud, as the Court is aware of cases involving such charges, including defendants who did not proceed to trial, in which forfeiture has not been sought at sentencing. The Court will also ask the Government at sentencing to confirm that an opportunity to be heard in connection with sentencing has been afforded to the three customers on whose accounts the defendant drew the 29 checks at issue, as well as to Bank of America, to which restitution would be paid. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 7/26/2021) (lnl) (Entered: 07/26/2021) |
| 07/26/2021 | 249 | ORDER as to Ari Teman: Sentencing in this case is scheduled for Wednesday, July 28, 2021 at 1:00 p.m. By order today, the Court confirmed that the defendant is required to appear in person for sentencing, as he did at the most recent conference, on Friday, July 9, 2021 (Dkt. No. 246). Counsel are also directed to appear in person. The conference will, however, be accessible by telephone to members of the public. Those wishing to access the conference via telephone should call 888-363-4749 and use access code 468-4906. SO ORDERED. (Sentencing set for 7/28/2021 at 01:00 PM before Judge Paul A. Engelmayer) (Signed by Judge Paul A. Engelmayer on 7/26/2021) (lnl) (Entered: 07/26/2021) |
| 07/27/2021 | 250 | SENTENCING SUBMISSION by Ari Teman. (Attachments: # 1 Exhibit Letter in Support of Ari Teman)(Kellman, Susan) (Entered: 07/27/2021) |
| 07/28/2021 | 251 | SENTENCING SUBMISSION by Ari Teman. (Frisch, Andrew) (Entered: 07/28/2021) |
| 07/28/2021 | 252 | PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Ari Teman. (Signed by Judge Paul A. Engelmayer on 7/28/2021) (See ORDER set forth. Forwarded three certified copies of this Order to AUSA Alexander Wilson via interoffice mail) (ap) (Entered: 07/28/2021) |
| 07/28/2021 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Sentencing held on |

| | | |
|---|---|---|
| | | 7/28/2021 for Ari Teman (1) Count 1ss-2ss,3ss-4ss. Defendant present (on bond) with attorneys, Susan Kellman & Andrew Frisch. AUSAs Kedar Bhatia & Jacob Gutwillig present w/ NYPD Det. Daniel Alessandrino. Court reporter present. Bond continued. See judgment. (ajs) (Entered: 07/29/2021) |
| 07/29/2021 | | DISMISSAL OF COUNTS on Government Motion as to Ari Teman (1) Count 1,1s-2s,3s-4s,5ss-6ss. (lnl) (Entered: 07/29/2021) |
| 07/29/2021 | 253 | JUDGMENT IN A CRIMINAL CASE as to Ari Teman (1). The Defendant was found guilty on counts 1ss, 2ss, 3ss & 4ss of the S2 Indictment after a plea of not guilty. All open counts are dismissed on the motion of the United States. IMPRISONMENT: One (1) year and one (1) day on each count, the terms to run concurrently. The Court granted bail pending appeal, pursuant to 18 U.S.C. § 3143(B)(1)(b), with the defendant released on the same bail conditions as have applied to date. The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the defendant be placed in any mental health and anger management programs for whichhe is eligible. SUPERVISED RELEASE: Three (3) years on each count, the terms to run concurrently. ASSESSMENT: $400.00 due immediately. (Signed by Judge Paul A. Engelmayer on 7/29/2021) (lnl) (Entered: 07/29/2021) |
| 08/03/2021 | 254 | NOTICE OF APPEAL by Ari Teman from 253 Judgment. (tp) (Entered: 08/03/2021) |
| 08/03/2021 | | USCA Appeal Fees received $ 505.00, receipt number 465401283749 as to Ari Teman on 8/3/2021 re: 254 Notice of Appeal - Final Judgment filed by Ari Teman. (tp) (Entered: 08/03/2021) |
| 08/03/2021 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Ari Teman to US Court of Appeals re: 254 Notice of Appeal - Final Judgment. (tp) (Entered: 08/03/2021) |
| 08/03/2021 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Ari Teman re: 254 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 08/03/2021) |
| 08/06/2021 | 255 | SECOND LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 8/6/2021 re: Modification of Conditions of Release . Document filed by Ari Teman. (Kellman, Susan) (Entered: 08/06/2021) |
| 08/06/2021 | 256 | ENDORSED LETTER as to Ari Teman addressed to Judge Paul A. Engelmayer from Attorney Susan G. Kellman dated August 6, 2021 re: Mr. Teman has raised concerns over his continued home detention with counsel.... Accordingly, we write to respectfully request that your Honor consider extending the hours that Mr. Teman is permitted to be out of his apartment until midnight, so that he can return to his work as a stand-up comedian at nearby clubs. ENDORSEMENT: The Court requests that the Government file its response to this request by Tuesday, August 10, 2021. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 8/6/2021)(bw) (Entered: 08/06/2021) |
| 08/10/2021 | 258 | LETTER RESPONSE to Motion by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated August 10, 2021 re: 255 SECOND LETTER MOTION addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 8/6/2021 re: Modification of Conditions of Release .. (Bhatia, Kedar) (Entered: 08/10/2021) |
| 08/11/2021 | 259 | ORDER as to Ari Teman: The Court has reviewed the defense's letter asking that the terms of the defendant's bail pending appeal be modified to extend his curfew until midnight in order to facilitate his employment as a stand-up comedian, Dkt. 255, and the Government's letter stating that it does not object to such a modification. Dkt. 258. In recognition of the defendant's history of doing stand-up comedy work and the fact that-by |

|  |  | common consent-he does not present a danger to the community, the Court grants the defense's request and extends his curfew until midnight to enable him to secure such work. (Signed by Judge Paul A. Engelmayer on 8/11/2021) (ap) (Entered: 08/11/2021) |
| --- | --- | --- |
| 08/11/2021 | 260 | Sentencing Letter by Ari Teman addressed to Judge Paul A. Engelmayer from Andrew J. Frisch dated August 11, 2021 re: Funds for Restitution. (Attachments: # 1 Text of Proposed Order)(Frisch, Andrew) (Entered: 08/11/2021) |
| 08/13/2021 | 261 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Andrew J. Frisch dated August 13, 2021 re: Funds for Restitution (Frisch, Andrew) (Entered: 08/13/2021) |
| 08/13/2021 | 262 | LETTER MOTION addressed to Judge Paul A. Engelmayer from the Government dated August 13, 2021 re: Restitution . Document filed by USA as to Ari Teman. (Attachments: # 1 Text of Proposed Order Restitution Order)(Bhatia, Kedar) (Entered: 08/13/2021) |
| 08/18/2021 | 263 | ORDER as to Ari Teman. The Court has reviewed the parties' competing submissions as to restitution (Dkt. Nos. 260-262); in the interest of having a durable restitution order in place, the Court will sign and docket today the Government's proposed restitution order (Dkt. No. 262-1), which provides, inter alia, that 10% of the defendant's gross income, beginning September 1, 2021, is to be paid towards restitution. In the event that restitution payments equivalent to the $259,340.32 that the Court has held must be paid in restitution have been fully paid to the Clerk of Court of this District before September 1, 2021, the Court will entertain an application to revoke this Order. The Court notes that defense counsel had explicitly promised that full restitution would be paid by the time of sentencing. The Court is disappointed by the defense's failure to keep this straightforward promise. The Court further agrees with the Government that the defense's proposed approach - in which the Court would direct counsel for third-party payers on the defendant's behalf to remit escrowed funds to the Clerk of Court, subject to understandings that might vary by payer - is problematic, needlessly complex, and apt to result in conflict. Both the defendant and any payer on his behalf can have confidence that - as the restitution order provides - the Clerk of Court will not release the funds entrusted to it for restitution without an order of this Court, and that the Court will not order the release of such funds unless and until Mr. Teman's appellate rights with respect to his conviction and sentence have been exhausted. The Court expects defense counsel to bring this Order to the attention of these payers forthwith and that such payers, to enable the defense's pledge as to restitution to be belatedly kept, will choose to behave honorably and promptly make such payments to the Clerk of Court. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 8/18/2021)(bw) (Entered: 08/18/2021) |
| 08/18/2021 | 264 | ORDER OF RESTITUTION as to (S2 19 Cr. 696) Ari Teman. Upon the application of the United States of America, by its attorney, Audrey Strauss, United States Attorney for the Southern District of New York, Kedar S. Bhatia, Assistant United States Attorney, of counsel; the presentence report; the Defendant's conviction on Counts One through Four of the above Superseding Indictment; and all other proceedings in this case, it is hereby ORDERED that: 1. Amount of Restitution. Ari Teman, the Defendant, shall pay restitution in the total amount of $259,340.32, pursuant to 18 U.S.C. § 3663A (MVRA), to the victim of the offenses charged in Counts One through Four. The name, address, and specific amount owed to the victim are set forth in the Schedule of Victims, attached hereto as Schedule A. Once the Clerk of Court begins making restitution payments, as set forth in Section 2 herein, upon advice by the United States Attorney's Office of a change of address of the victim, the Clerk of the Court is authorized to send payments to the new address without further order of this Court....[*** See this Order of Restitution ***]... 6. Sealing. Consistent with 18 U.S.C. §§ 3771(a)(8) & 3664(d)(4) and Federal Rule of Criminal Procedure 49.1, to protect the privacy interests of the victim, the Schedule of Victims, attached hereto as Schedule A, shall be filed under seal, except that copies may be retained and used or disclosed by the Government, the Clerk's Office, and the |

A-38

|  |  |  |
|---|---|---|
|  |  | Probation Department, as need be to effect and enforce this Order, without further order of this Court. -- The Clerk of Court is requested to terminate the motion at Dkt. No. 262. SO ORDERED: (Signed by Judge Paul A. Engelmayer on 8/18/2021)(bw) (Entered: 08/18/2021) |
| 08/19/2021 | 265 | ORDER as to Ari Teman: The Court has today received by email the attached letter from defendant Ari Teman. The email indicates that it was copied to, inter alia, Government counsel and current defense counsel. To the extent Mr. Teman opposes a motion to withdraw by his counsel, Susan G. Kellman, Esq., and Andrew J. Frisch, Esq., the Court has not received such a motion. In the event such a motion is received, the Court will give Mr. Teman an opportunity to respond. To the extent Mr. Teman seeks other relief, including an order authorizing the issuance of subpoenas to persons associated with former customers of his and an order extending appellate deadlines, the Court denies that motion, for two independent reasons. First, Mr. Teman is represented by counsel. Any application on his behalf should be made by counsel, who will assess, consistent with standards of professional responsibility, whether there is a good-faith basis for seeking particular relief. Second, Mr. Teman has filed a notice of appeal in this case. See Dkt. 254. As a general rule, subject to limited exceptions, the filing of a notice of appeal divests the district court of jurisdiction to modify its judgment or to take action affecting the case. See Berman v. United States, 302 U.S. 211,214 (1937) (holding because that the district court's sentence was a final judgment and it was appealed, the district court lacked jurisdiction during the pendency of the appeal to modify its judgment); United States v. Ransom, 866 F.2d 574,575 (2d Cir. 1989) ("A notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)). To the extent, if any, that defense counsel determine that colorable motions for relief may be made on Mr. Teman's behalf, the Court expects that counsel will determine whether such relief may lawfully be granted by this Court while Mr. Teman's appeal is pending. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 8/19/2021) (lnl) (Entered: 08/19/2021) |
| 08/20/2021 | 266 | MOTION for Andrew J. Frisch and Susan G. Kellman to Withdraw as Attorney . Document filed by Ari Teman. (Frisch, Andrew) (Entered: 08/20/2021) |
| 08/23/2021 | 267 | ORDER as to Ari Teman. Sentencing in this case of bank and wire fraud was held on Wednesday, July 28, 2021; the Court's judgment issued on July 29, 2021, Dkt. 253; and defendant Ari Teman filed a notice of appeal on August 3, 2021, Dkt. 254. The latter divested the Court, with limited exceptions, of jurisdiction over the case, including to modify its judgment. The Court, accordingly, before taking any other action in the case, intends to assure that defense counsel and Teman forthwith arrange for the payment of the full restitution figure to the Clerk of Court, on the understanding, which the Court has clearly set out, that the Court will not order the release of such funds unless and until Teman's appellate rights with respect to his conviction and sentence have been exhausted. To assure that this promise is kept, the Court directs that, if the $333,000 restitutionpayment has not been made in full to the Clerk of Court by Friday, August 27, 2021, at noon,sworn declarations are be filed on the docket of this case by 5:00 p.m. that day by each of Teman, his two counsel, and each party whose funds are presently held in escrow and earmarked for restitution, each explaining in detail the failure to transmit these funds to the Clerk of Court. The Court further schedules an in-person hearing for Tuesday, August 31, 2021, at 1:00 p.m., in courtroom 1305 of the Thurgood Marshall United States Courthouse. This hearing will go forward if restitution has not been paid in full by 5:00 p.m. on Monday, August 30, 2021. ( Status Conference set for 8/31/2021 at 01:00 PM in Courtroom 1305, 40 Centre Street, New York, NY 10007 before Judge Paul A. Engelmayer.). (Signed by Judge Paul A. Engelmayer on 8/23/21)(jw) (Entered: 08/23/2021) |

A-39

| 08/23/2021 | 268 | ORDER as to Ari Teman. The Court's order at Docket 267 erroneously reported, on page 2, the amount of restitution owed by defendant Ari Teman. The amount due is $259,340.32, as reflected in the Courts restitution order, see Dkt. 264. The $333,000 sum, which the order at Docket 267 erroneously cited, instead refers to the total loss caused by the offense (Signed by Judge Paul A. Engelmayer on 8/23/21)(jw) (Entered: 08/23/2021) |
|---|---|---|
| 08/27/2021 | 269 | ORDER as to Ari Teman. The Court's chambers have received an email from defense counsel Andrew J. Frisch, Esq., and Susan G. Kellman, Esq., representing that, with defendant Teman's permission, the full amount of restitution in this case has been sent by wire transfer to the Clerk of this Court. Although defense counsel has not yet received confirmation from the Clerk of Court that these funds have been received, counsel has furnished the Court with the two attached wire confirmations, which reflect that a total of $259,341 has been wired to the Clerk of Court and earmarked for this case. Upon defense counsel's filing on the docket of this case of written confirmation from the Clerk of Court that these funds have been received in full, the Court intends to issue an order adjourning the hearing on this subject scheduled for Tuesday, August 31, 2021, and addressing other issues raised by the recent submissions by defense counsel and Mr. Teman (Dkt. No. 267 at 3-4). (Signed by Judge Paul A. Engelmayer on 8/27/21)(jw) (Entered: 08/27/2021) |
| 08/27/2021 | 270 | FIRST LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 8/27/2021 re: Confirmation of Receipt of Restitution Funds by the Clerk of Court (Attachments: # 1 Exhibit Clerk of Court's Receipts for Restitution Funds) (Kellman, Susan) (Entered: 08/27/2021) |
| 08/30/2021 | 271 | ORDER as to Ari Teman: The Court has received an email from a person identifying himself as a journalist who states that he was contacted by defendant Ari Teman. The journalist states that Teman furnished him with certain materials that Teman had submitted, pro se, to the Court. The journalist's email inquired whether the Court intends to docket these materials and whether they will affect Teman's sentence. The Court directs defense counsel to remind Teman that (1) he is represented by counsel, who are responsible for making submissions to the Court on his behalf; (2) while Teman is represented, the Court will not docket submissions from Teman other than relating to counsel's pending application to withdraw; (3) sentencing occurred on July 28, 2021, and, with Teman having filed a notice of appeal, the Second Circuit now has jurisdiction over the case and over any challenge that may be made to the sentence imposed; and (4) instigating emails to the Court from journalists whether real or fictitious, see, e.g., Dkt. 137 (addressing email to Court from fictitious journalist "Jake Green") that advocate, explicitly or implicitly, on a defendant's behalf is a bad idea that will not prove efficacious. The Court further directs defense counsel to notify the journalist in question that inquiries from reporters are not to be directed to individual judges, but to the office of the District Executive. (Signed by Judge Paul A. Engelmayer on 8/30/2021) (ap) (Entered: 08/30/2021) |
| 08/30/2021 | 272 | ORDER as to Ari Teman. The Courts cashier has received the restitution ordered by the Court. See Dkt. 270. The Court accordingly adjourns the hearing on this subject that had been scheduled for tomorrow, Tuesday, August 31, 2021. See Dkt. 267. The Court, as earlier indicated, see Dkt. 263, will entertain an application to revoke or modify the restitution order issued on August 18, 2021. See Dkt. 264. The Court will next turn attention to the application by Andrew J. Frisch, Esq., and Susan G. Kellman, Esq., to be relieved as Mr. Temans counsel in this case. See Dkt. 266. The Court directs defense counsel to submit any declaration in support of their application to be relieved by Friday, September 3, 2021; any response by Mr. Teman is due Friday, September 10, 2021. The Court directs defense counsel to serve its order at Dkt. 271 on Mr. Teman forthwith, and thereafter to file an affirmation of such service on the docket of this case. (See Order) (Signed by Judge Paul A. Engelmayer on 8/30/2021)(ajs) (Entered: 08/30/2021) |

| 08/30/2021 | 273 | Certificate of Service of 271 Order, Terminate Motions,,,,,,,,,,,, 272 Order,,,, by Ari Teman. Document was served on Ari Teman on 8/30/2021. Service was made by Email. (Kellman, Susan) (Entered: 08/30/2021) |
| 09/02/2021 | 274 | LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Andrew J. Frisch and Susan G. Kellman dated September 2, 2021 re: Defense Counsels' Withdrawal (Attachments: # 1 Exhibit)(Frisch, Andrew) (Entered: 09/02/2021) |
| 09/08/2021 | 275 | ORDER as to Ari Teman: The Court has received an email, dated September 2, 2021, from defendant Ari Teman, stating that he has fired his attorneys, Andrew J. Frisch, Esq., and Susan G. Kellman, Esq., and withdrawing his objection to Mr. Frisch's and Ms. Kellman's application to withdraw from representing Mr. Teman in this Court. Mr. Teman's email further states that his intention is to proceed pro se in this Court until his appellate attorneys file notices of appearance in this Court, that he does not intend to file any motions in this Court in the short period before such counsel appear in this Court, and that he will leave any such motions for his future counsel.1 The Court has received a letter (Dkt. No. 274) from Mr. Frisch and Ms. Kellman reporting, consistent with Mr. Teman's email, that he has fired them as his counsel. In light of these filings, Mr. Teman no longer opposes his counsels' application for leave to withdraw. As a result, there is no longer a need for the Court to receive and review ex parte submissions from counsel and Mr. Teman as to counsel's bases for seeking to withdraw and Mr. Teman's bases for opposing withdrawal. The Court accordingly withdraws its order at Dkt. No. 272, to the extent that this order set deadlines for such submissions, and grants counsels' application to withdraw, effective immediately. (Signed by Judge Paul A. Engelmayer on 9/8/2021) (See ORDER as further set forth) (lnl) (Entered: 09/08/2021) |
| 09/12/2021 | 276 | TRANSCRIPT of Proceedings as to Ari Teman re: Sentence held on 7/28/2021 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Lisa Picciano Franko, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/13/2021. Release of Transcript Restriction set for 12/13/2021. (Moya, Goretti) (Entered: 09/12/2021) |
| 09/12/2021 | 277 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ari Teman. Notice is hereby given that an official transcript of a Sentence proceeding held on 7/28/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 09/12/2021) |
| 09/17/2021 | 278 | ORDER as to Ari Teman. The Court has received a letter from defendant Ari Teman, seeking authorization to remove an electronic monitoring device due to the need for Mr. Teman to undergo certain medical procedures, and a letter in support from a physician. The Court is filing these letters under seal, because they discuss a medical diagnosis. The Court directs the Government, in consultation with Pretrial Services and/or the Probation Department, to respond. The Government's response is due Wednesday, September 22, 2021. Separately, insofar as Mr. Teman reports that he has not yet signed up for electronic access to ECF, the Comi directs Mr. Teman's recently withdrawn counsel to assist him fo1thwith with completing this process (Government Responses due by 9/22/2021) (Signed by Judge Paul A. Engelmayer on 9/17/21)(jw) (Entered: 09/17/2021) |
| 09/22/2021 | 279 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated September 22, 2021 re: Reponse To Proposed Bail Modification Document filed by USA. (Bhatia, Kedar) (Entered: 09/22/2021) |

A-41

| 09/22/2021 | 280 | MEMO ENDORSEMENT as to Ari Teman on re: 279 LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated September 22, 2021 re: Response To Proposed Bail Modification. ENDORSEMENT: The Court is persuaded to remove the location monitoring and curfew conditions, to facilitate Mr. Teman's medical treatment, while raising the personal recognizance bond to $50,000. The Court directs the Government, in coordination with Pretrial Services, forthwith to submit a proposed order to this effect, which should also arrange for the prompt removal of the location monitoring equipment. The Court expects this equipment to be removed by the close of business Friday, September 24. The Court wishes Mr. Teman a full and speedy recovery. (Signed by Judge Paul A. Engelmayer on 9/22/2021) (ap) Modified on 9/24/2021 (ap). (Entered: 09/22/2021) |
|---|---|---|
| 09/24/2021 | 281 | FIRST LETTER by Ari Teman addressed to Judge Paul A. Engelmayer from Susan G. Kellman dated 9/24/2021 re: Response to Inquiry from the Court (Kellman, Susan) (Entered: 09/24/2021) |
| 09/24/2021 | 282 | ORDER as to Ari Teman: The Court has received a proposed order from the Government setting out the terms that will henceforth govern defendant Ari Teman's release on bail pending appeal. The order, consistent with the Court's earlier order, eliminates the conditions of (1) a curfew supported by (2) electronic monitoring, while increasing, from $25,000 to $50,000, the amount of the personal recognizance bond to be signed by Mr. Teman and two financial responsible co-signers. Mr. Teman, in an email to the Court's chambers, responded caustically, by attacking the Government for including in the proposed order the requirements, in substance, that he immediately suspend or terminate all credit auto-pay arrangements with himself and with any company which he is affiliated, and that he not invoice or bill any person without the written approval of his pretrial services officer. Mr. Teman's email states that this language is "way outside the scope." Mr. Teman faults Government counsel for including such terms in the proposed order, and calls Government counsel a "jackass." Mr. Teman's objection is not well taken. As reflected at Dkt. No. 91, at which is posted an order issued on January 29, 2020, setting post-trial conditions of release, the bail conditions in the Government's draft order to which Mr. Teman objects have been in place for the past nearly 20 months. The Court expects that Mr. Teman has fully and consistently complied with these conditions. The basis for the Court's recent decision to modify the bail conditions to eliminate electronic monitoring - so as to avoid interfering with medical procedures - has no bearing on the conditions relating to credit-card auto-pay arrangements and pre-approval of invoices. The Court accordingly will issue, in substance, the order as prepared by the Government, as it faithfully implements the discrete modifications the Court has approved to the existing terms of Mr. Teman's release, and does not otherwise alter those terms. The Court expects Mr. Teman to scrupulously comply with those terms. Separately, the Court has become aware today, see Diet. No. 281, that Mr. Teman has not yet signed up for electronic access to ECF, as the Court on September 8, 2021, had ordered him to do forthwith, see Dkt. No. 275. The Court again directs Mr. Teman to do so forthwith. If Mr. Teman has not done so by Wednesday, September 29, 2021, the Court will invite a motion from the Government for appropriate relief for this violation of a clear court order. (Signed by Judge Paul A. Engelmayer on 9/24/2021) (ap) Modified on 9/27/2021 (ap). (Entered: 09/24/2021) |
| 09/24/2021 | 283 | ORDER as to Ari Teman: IT IS HEREBY ORDERED that defendant Ari Teman's bail conditions be modified and set as follows: a. The defendant will sign a $50,000 personal recognizance bond secured by two financially responsible persons; b. The defendant's travel will be restricted to the Southern District of New York, the Eastern District of New York, and the Southern District of Florida; c. The defendant will surrender all travel documents, to the extent he has not done so already, and make no new applications for such documents; d. The defendant will be subject to strict Pretrial Services supervision; e. |

A-42

| | | |
|---|---|---|
| | | The defendant will be subject to mental health evaluation and treatment as directed by Pretrial Services; f. The defendant has leave to attend medical and mental health appointments; g. The defendant is not to create or deposit any remotely created check; h. The defendant is to immediately suspend or terminate all credit card auto-pay arrangements with him or with any company which he is affiliated; and 1. The defendant may not invoice or bill any person or business without the written approval of his Pretrial Services Officer.IT IS FURTHER ORDERED that the defendant's previously imposed curfew condition will be terminated upon entry of this Order. The defendant's location monitoring equipment may be removed from his person upon entry of this Order, in consultation with the defendant's Pretrial Services officer. The defendant will have two weeks to obtain sureties for his modified personal recognizance bond and satisfy any other conditions set forth herein. (Signed by Judge Paul A. Engelmayer on 9/24/2021) (ap) Modified on 9/27/2021 (ap). (Entered: 09/24/2021) |
| 10/01/2021 | 284 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-01 re: MODIFY ORDER *S2 19-CR-696*. Document filed by Ari Teman. Return Date set for 10/4/2021 at 05:00 PM. (Teman, Ari) (Entered: 10/01/2021) |
| 10/01/2021 | 285 | ORDER as to Ari Teman: The Court accordingly directs Mr. Teman to file a supplemental letter explaining how compliance with the conditions at issue has, in practice, interfered with the operation of his businesses since these conditions were first put in place on January 29, 2020. Concrete examples of this, if any, would be of assistance to the Court in evaluating Mr. Teman's application. Mr. Teman's supplemental letter is due Friday, October 8, 2021. Mr. Teman is encouraged to consult with his appellate counsel, or other counsel, in the preparation of this letter. The Court directs the Government to respond to Mr. Teman's application to modify his conditions of release, by Friday, October 15, 2021. The Government's letter should specifically address, inter alia, whether, as Mr. Teman's letter indicates, these conditions are problematic for Pretrial Services to enforce. The Court expects that the Government will consult with Pretrial Services in formulating this response. For avoidance of doubt, all conditions of release as set out in Dkt. No. 283 remain in place and Mr. Teman must continue to adhere to them, unless and until a court order modifying them has been entered. SO ORDERED. (Responses due by 10/15/2021) (Signed by Judge Paul A. Engelmayer on 10/1/2021) (lnl) (Entered: 10/01/2021) |
| 10/06/2021 | 286 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-06 re: 285 Order, Set Deadlines/Hearings,,,,,,,,, 284 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-01 re: MODIFY ORDER *S2 19-CR-696*. re: Adjournment for medical care . Document filed by Ari Teman. (Teman, Ari) (Entered: 10/06/2021) |
| 10/06/2021 | 287 | ORDER re: 286 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-06 re: 285 Order, Set Deadlines/Hearings,,,,,,,,, 284 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN. The Comt orders as follows: The Court extends the deadline for Mr. Teman to submit his supplemental letter in support of the modifications of release until October 28, 2021. The Court extends the deadline for the Government's response, which is presently October 15, 2021, to November 4, 2021. The Court directs that Mr. Teman, in his supplemental letter, set out, with specificity, the means by which he has undertaken to fully comply with conditions (h) and (i), from the date when they were first put into effect following Mr. Teman's conviction, i.e., on January 29, 2020, through the due date (October 28, 2021) of Mr. Teman's supplemental letter. The Court denies Mr. Teman's request for an extension of the October 8, 2021 deadline for his co-signers to sign the personal recognizance bond, which the Court has increased to $50,000. The co-signers' signatures remain due on October 8, 2021, as the Court ordered on September 24, 2021. The Court directs Mr. |

| | | |
|---|---|---|
| | | Teman, by October 15, 2021, to file on the docket of this case a letter by a physician attesting to the fact that the ENT surgery in fact took place on October 7, 2021. (Signed by Judge Paul A. Engelmayer on 10/6/21) (jw) (Entered: 10/06/2021) |
| 10/06/2021 | | Set/Reset Deadlines/Hearings as to Ari Teman: Government Responses due by 11/4/2021. (jw) (Entered: 10/06/2021) |
| 10/07/2021 | 288 | ORDER as to Ari Teman. The Court's chambers has received an email from defendant Ari Teman concerning the mechanics by which his co-signers are to execute the bond as required. The Court reminds Mr. Teman that, insofar as he has ECF access, he, like all other prose litigants, is to communicate with the Court solely by means of filings on the docket of this case (Signed by Judge Paul A. Engelmayer on 10/7/2021)(jw) (Entered: 10/07/2021) |
| 10/07/2021 | 292 | Appearance Bond Entered as to Ari Teman: $50,000 Personal recognizance bond; To be cosigned by two financially responsible persons; Additional conditions..... (jbo) (Entered: 10/29/2021) |
| 10/14/2021 | 289 | REPLY TO RESPONSE to Motion by Ari Teman re 286 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-06 re: 285 Order, Set Deadlines/Hearings,,,,,,,,, 284 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-01 re:. (Teman, Ari) (Entered: 10/14/2021) |
| 10/15/2021 | 290 | MEMO ENDORSEMENT as to Ari Teman on re: 289 The Court has requested proof in the form of a letter by a physician before October 15th documenting the surgery which took place on October 7th. Attached are the signed notes of the doctor, as I have been unable to get the letter in-time and am in pain and unwell much of the day following surgery...ENDORSEMENT..The Court appreciates this notification which is a satisfactory alternative to the letter that the Court directed be filed today. The Court wishes Mr. Teman a speedy and full recovery (Signed by Judge Paul A. Engelmayer on 10/15/21)(jw) (Entered: 10/15/2021) |
| 10/28/2021 | 291 | RESPONSE in Support of Motion by Ari Teman re: 286 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-06 re: 285 Order, Set Deadlines/Hearings,,,,,,,,, 284 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-01 re:. (Teman, Ari) (Entered: 10/28/2021) |
| 11/04/2021 | 293 | LETTER RESPONSE to Motion by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated November 4, 2021 re: 284 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2021-10-01 re: MODIFY ORDER *S2 19-CR-696*.. (Bhatia, Kedar) (Entered: 11/04/2021) |
| 11/10/2021 | 294 | ORDER ON MOTION as to Ari Teman. Defendant Ari Teman, who is presently released on conditions of bail pending appeal, has moved to modify the conditions of his release, which are currently set out in the order at Dkt. 283. See Dkt. 284 (Teman letter seeking modification); see also Dkt. 285 (court order summarizing history of bail conditions in this case, and directing supplemental submission from Teman and response from Government). Substantially for the reasons set out by the Government in its response, see Dkt. 293, the Court removes Bail Condition I. All other bail conditions, including Bail Condition H, remain in place. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 284. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 11/10/2021)(bw) (Entered: 11/10/2021) |
| 01/06/2022 | 295 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari B. Teman dated 2022-01-06 re: Sanctions, Independent Hearing, Recusal . Document filed by Ari |

**A-44**

| | | |
|---|---|---|
| | | Teman. Return Date set for 1/13/2022 at 01:00 PM. (Attachments: # 1 As of Jan 5, 2022, Simcha Schonfeld, his firm, Goldenberg continue to violate discovery obligations, obstruct justice (See Judge Gorenstein's order at end of document))(Teman, Ari) (Entered: 01/06/2022) |
| 01/28/2022 | 296 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari Teman dated 01/28/2022 re: Motion to allow for travel to Comedy Festival . Document filed by Ari Teman. Return Date set for 2/2/2022 at 05:00 PM. (Teman, Ari) (Entered: 01/28/2022) |
| 01/28/2022 | 297 | ENDORSED LETTER as to Ari Teman addressed to Judge Paul A. Engelmayer from Ari Teman, Defendant, pro se, dated January 28, 2022 re: Letter Motion to allow for travel to Melbourne Comedy Festival. ENDORSEMENT: The Court directs the Government to submit a letter response by Friday, February 4, 2022, which sets out its views on Mr. Teman's application and the views of Pretrial Services (and, if participating in Mr. Teman's supervision during his release on bail pending appeal, the Probation Department). SO ORDERED. ( Responses due by 2/4/2022 )(Signed by Judge Paul A. Engelmayer on 1/28/2022)(bw) (Entered: 01/28/2022) |
| 02/04/2022 | 298 | LETTER RESPONSE to Motion by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated February 4, 2022 re: 296 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari Teman dated 01/28/2022 re: Motion to allow for travel to Comedy Festival .. (Bhatia, Kedar) (Entered: 02/04/2022) |
| 02/10/2022 | 299 | ORDER as to Ari Teman: The Court has reviewed the request by defendant Ari Teman for a temporary modification of his bail conditions, to enable him to travel to Australia to perform at a music festival, Dkt. 296, and the Government's response on its behalf and that of the Pretrial Services Department, Dkt. 298. The Court authorizes this travel, subject to Teman's complying with each of the conditions set out in the final paragraph of the Government's letter. In the event that Teman does not strictly comply with these conditions, Pretrial Services is to promptly notify the Court, which would then determine whether to revoke, inter alia, this authorization. The Clerk of Court is requested to terminate the motions at Dkt. No. 295. (Signed by Judge Paul A. Engelmayer on 2/10/2022) (lnl) (Entered: 02/10/2022) |
| 02/15/2022 | 300 | ORDER as to Ari Teman. It is hereby ORDERED that the defendant's bail be modified to include the following conditions of release: 1. The defendant is permitted to temporarily obtain his travel documents for purposes of renewal and traveling to his comedy festival in Australia, Dkt. No.299; Passport to be surrendered to Pretrial Services within 48hrs upon his return to the United States, or as directed by Pretrial Services. 2.The defendant is to have temporary permission to make new travel applications for the purpose of renewing his passport; from the timeframe of February 15, 2022 - March 25, 2022. SO ORDERED: (Signed by Judge Paul A. Engelmayer on 2/15/2022)(bw) (Entered: 02/15/2022) |
| 02/18/2022 | 301 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari Teman dated 2022-02-18 re: 295 FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari B. Teman dated 2022-01-06 re: Sanctions, Independent Hearing, Recusal . re: REINSTATE DKT NO 295 and INSTRUCT GOVT TO ANSWER IT . Document filed by Ari Teman. Return Date set for 2/18/2022 at 05:00 PM. (Teman, Ari) (Entered: 02/18/2022) |
| 02/18/2022 | 302 | ORDER as to Ari Teman. The Court has reviewed the request by defendant Ari Teman for a temporary modification of his bail conditions, to enable him to travel to Australia to perform at a music festival, Dkt. 296, and the Government's response on its behalf and that of the Pretrial Services Department, Dkt. 298. The Court authorizes this travel, subject to Teman's complying with each of the conditions set out in the final paragraph of |

A-45

| | | |
|---|---|---|
| | | the Government's letter. In the event that Teman does not strictly comply with these conditions, Pretrial Services is to promptly notify the Court, which would then determine whether to revoke, inter alia, this authorization. The Clerk of Court is requested to terminate the motions at Dkt. No. 296. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 2/10/2022)(bw) (Entered: 02/18/2022) |
| 02/18/2022 | 303 | FIRST LETTER addressed to Judge Paul A. Engelmayer from Ari Teman dated 2022-02-18 re: Re: Rule 33 Motion for a new trial and related Motions to stay any remand to custody and for recusal. . Document filed by Ari Teman. Return Date set for 3/4/2022 at 05:00 PM. (Teman, Ari) (Entered: 02/18/2022) |
| 02/18/2022 | 304 | ORDER as to Ari Teman. The Court's intention is to defer addressing Mr. Teman's pro se applications pending the disposition of his direct appeal. See Order. (Signed by Judge Paul A. Engelmayer on 2/18/2022)(ajs) (Entered: 02/18/2022) |
| 02/20/2022 | 305 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari Teman dated 02/20/2022 re: FILE LETTER TO SECOND CIRCUIT COURT OF APPEALS . Document filed by Ari Teman. Return Date set for 2/22/2022 at 12:00 PM. (Teman, Ari) (Entered: 02/20/2022) |
| 02/21/2022 | 306 | NOTICE of Appellate Motion Statement, Emergency Motion for Extension of Time, Stay as to Ari Teman (Attachments: # 1 Motion Statement, Emergency Motion for Extension of Time & Stay)(Teman, Ari) (Entered: 02/21/2022) |
| 02/22/2022 | 307 | ORDER as to Ari Teman. On February 20, 2022, the Court received a letter from pro se defendant Ari Teman asking this Court to file a letter with the United States Court of Appeals for the Second Circuit seeking an extension of the appellate briefing schedule. Dkt. 305. The Court notifies Mr. Teman that it cannot making filings on his behalf in the Court of Appeals. Any such filing must be directly with the Court of Appeals, where Mr. Teman is represented by counsel. A later filing by Mr. Teman on the docket of this case, on February 21, 2022, states that Mr. Teman has now successfully filed such an application with the Court of Appeals. Dkt. 306. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 2/22/2022)(bw) (Entered: 02/22/2022) |
| 02/22/2022 | 308 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Edward A. Imperatore dated February 22, 2022 re: Withdrawal as Counsel of Record . Document filed by USA as to Ari Teman. (Imperatore, Edward) (Entered: 02/22/2022) |
| 02/24/2022 | 309 | MEMO ENDORSEMENT granting 308 LETTER MOTION filed by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from Edward A. Imperatore dated February 22, 2022 re: Withdrawal as Counsel of Record. ENDORSEMENT: GRANTED. The Clerk of Court is requested to terminate the motion at Dkt. No. 308. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 2/24/2022) (bw) (Entered: 02/24/2022) |
| 02/24/2022 | | Attorney update in case as to Ari Teman. (AUSA) Attorney Edward Arthur Imperatore terminated. (bw) (Entered: 02/24/2022) |
| 03/03/2022 | 310 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari Teman dated 2002-03-03 re: PROVIDE SEALED TRANSCRIPT PERMISSION, IDENTITIES OF EX PARTE CONTACTS . Document filed by Ari Teman. Return Date set for 3/10/2022 at 05:00 PM. (Teman, Ari) (Entered: 03/03/2022) |
| 04/13/2022 | 311 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 4/13/22 re: REPLY BEFORE APRIL 19 . Document filed by Ari Teman. Return Date set for 4/18/2022 at 12:00 PM. (Teman, Ari) (Entered: 04/13/2022) |
| 04/13/2022 | 312 | ORDER as to Ari Teman: The Court has received letters dated March 3 and April 12, 2022 from pro se defendant Ari Teman, seeking certain information or documents that he |

A-46

| | | |
|---|---|---|
| | | suggests are relevant to his pending appeal before the United States Court of Appeals for the Second Circuit. See Dkts. 310-11. In each letter, Mr. Teman states that an attorney, whom he does not identify, will soon appear on his behalf in the Second Circuit, and implies that the materials that he seeks are germane to that attorney's preparation of the appeal. In the event that a request is made to this Court by an attorney who has appeared on Mr. Teman's behalf in the Second Circuit, the Court will promptly address such a request. In light, however, of Mr. Teman's filing history in this case-in which he has made repeated vexatious claims of conspiratorial misconduct by his trial, sentencing, and appellate, counsel; the Government; trial witnesses, and the Court, see Dkt. 304-the Court declines to respond to his request. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 4/13/2022) (lnl) (Entered: 04/13/2022) |
| 04/13/2022 | 313 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Ari Teman dated 04/13/2022 re: 312 Order,,,, re: TRANSCRIPTS, ANSWERS, RECUSAL . Document filed by Ari Teman. Return Date set for 4/15/2022 at 12:00 PM. (Attachments: # 1 Counsel letter per Your Honor's request, # 2 Notice of Appearance in CA2)(Teman, Ari) (Entered: 04/13/2022) |
| 04/14/2022 | 314 | FIRST LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 04/14/2022 re: Motion to be resentenced to one (1) dead baby and time served . Document filed by Ari Teman. Return Date set for 4/18/2022 at 05:00 PM. (Teman, Ari) (Entered: 04/14/2022) |
| 04/18/2022 | 315 | ORDER as to Ari Teman. The Court has received a letter from appellate counsel for defendant Ari Teman, dated April 13, 2022, requesting two categories of material. See Dkt. 313-1. The Court responds to those requests as follows. (*** See this Order for complete details. ***) SO ORDERED. (Signed by Judge Paul A. Engelmayer on 4/15/2022)(bw) (Entered: 04/18/2022) |
| 04/20/2022 | 316 | EMERGENCY LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2022-04-20 re: EMERGENCY MOTION TO UNSEAL . Document filed by Ari Teman. Return Date set for 4/21/2022 at 05:00 PM. (Teman, Ari) (Entered: 04/20/2022) |
| 04/20/2022 | 317 | ORDER as to Ari Teman. The Court has received a letter dated today from pro se defendant Ari Teman asking the Court to unseal portions of the trial transcript. The Court responds as follows: 1. Mr. Teman states that the Court "recently authorized the release to me of a sealed portion of the transcript from the January 10, 2020 proceedings." That date is incorrect. The Court's order of April 15, 2022, Dkt. 315, authorized the unsealing of the transcript of Mr. Teman's sentencing, held on July 28, 2021, Dkt. 276, and authorized the unsealing, for Mr. Teman and his appellate counsel only, of the transcript of an emergency telephonic conference held on December 12, 2019. The Court's April 15, 2022 order did not address the conference held on January 10, 2020, other than to note that, during that conference, the Court resolved a motion in limine with respect to the "anguished typewritten note" that had been the impetus for the emergency conference held on December 12, 2019. See Dkt. 315 at 2. 2. The Court has reviewed the transcript of the January 10, 2020 conference. See Dkt. 87. The 90-page transcript of that conference appears to be entirely unsealed. Mr. Teman and his appellate counsel should already have full access via ECF to that transcript; if they are not, the Court hereby orders that they be given access to it. The Court is unaware of any sealed portion of the January 10, 2020 conference and the transcript of that conference, and the ECF entries accessible to the Court do not reveal any sealed portion of the conference. However, the Court notes that Mr. Teman's letter of today states that AUSA Kedar Bhatia has "confirmed that the Government does not object to the unsealing of these (5) pages of sealed transcript from January 10, 2020." If so, and if the Court's memory and docket review on this point are mistaken, the Court would be happy promptly to review any such sealed pages to confirm |

| | | |
|---|---|---|
| | | whether they may be unsealed. The Court directs AUSA Bhatia to file a letter on the docket of this case indicating whether he is in fact aware of any sealed portion of the transcript from the January 10, 2020 conference. If so, AUSA Bhatia is to furnish the Court's chambers forthwith a copy of the sealed pages. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 4/20/2022)(bw) (Entered: 04/21/2022) |
| 04/21/2022 | 318 | EMERGENCY LETTER MOTION addressed to Judge Paul A. Engelmayer from ARI TEMAN dated 2022-04-21 re: EMERGENCY MOTION TO UNSEAL *JAN 10 SEALED 5 PAGES RE EX PARTE CALL BY JUDGE TO SDNY*. Document filed by Ari Teman. Return Date set for 4/21/2022 at 12:00 PM. (Teman, Ari) (Entered: 04/21/2022) |
| 04/21/2022 | 319 | LETTER by USA as to Ari Teman addressed to Judge Paul A. Engelmayer from the Government dated April 21, 2022 re: Sealed Transcript Document filed by USA. (Bhatia, Kedar) (Entered: 04/21/2022) |
| 04/21/2022 | 320 | ORDER as to Ari Teman. In response to the Court's recent order, Dkt. 317, the Court has been furnished with a five-page transcript of a sealed conference that took place in the Court's robing room immediately prior to the January 10, 2020 conference. This sealed conference has not been reflected on the docket. The Court has reviewed the transcript and does not believe it merits continued sealing. The Court accordingly orders unsealed these five pages. For avoidance of doubt, Mr. Teman is at liberty to include this transcript in the joint appendix for his upcoming appeal. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 4/21/2022)(bw) (Entered: 04/21/2022) |
| 04/21/2022 | | Transmission to Sealed Records Clerk: as to Ari Teman. Transmitted re: 320 Order, to the Sealed Records Clerk for the unsealing of document. (bw) (Entered: 04/21/2022) |
| 04/21/2022 | 321 | NOTICE of Placing Jan 10 robing room hearing onto the docket as to Ari Teman (Attachments: # 1 Exhibit JANUARY 10, 2020 previously sealed transcript)(Teman, Ari) (Entered: 04/21/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/26/2022 10:29:26 | | |
| **PACER Login:** | cpnycpara16 | **Client Code:** | 312474 |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cr-00696-PAE |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

A-46.2

ORIGINAL

Approved: _____
JACOB H. GUTWILLIG
Assistant United States Attorney

Before:    THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

19MAG 5858

- - - - - - - - - - - - - - - - - - X
                                     :
UNITED STATES OF AMERICA             :     SEALED COMPLAINT
                                     :
     - v. -                          :     Violations of
                                     :     18 U.S.C. §§
ARI TEMAN,                           :     1344, 1 and 2
                                     :
                    Defendant.       :     COUNTY OF OFFENSE:
                                     :     NEW YORK
                                     :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

DANIEL ALESSANDRINO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE
(Bank Fraud)

1.    From at least in or about April 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, knowingly and willfully would and did execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution insured by the Federal Deposit Insurance Corporation (the "FDIC"), by means of false and fraudulent pretenses, representations, and promises, to wit, TEMAN deposited counterfeit checks into a bank account held at a particular financial institution.

(Title 18, United States Code, Sections 1344, 1 and 2.)

## Overview

2.    I am a Detective with the NYPD.  I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials, and on my examination of various reports and records.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in.substance and in part, except where otherwise indicated.

3.    As set forth in greater detail below, I, and other law enforcement officers, have been investigating a fraud that has been undertaken in Manhattan, New York, and elsewhere, between in or about April 2019 and in or about June 2019 (the "Fraud").  Based on my involvement in this investigation, my review of law enforcement reports, and my review of surveillance videos and photographs, among other sources, I have learned that the Fraud was perpetrated by ARI TEMAN, the defendant.  In perpetrating this fraud, TEMAN deposited counterfeit checks into an account held at a particular financial institution ("Financial Institution-1") in the name of a third party, "GateGuard, Inc." (the "GateGuard Account").  GateGuard, Inc. is a home security business operated by TEMAN that offers, among other services, facial recognition software and remote access to unlock doors to residences.  GateGuard is based in New York, New York.

4.    From my review of publicly available materials, as well as my training and experience and involvement with this investigation, I know that Financial Institution-1 is insured by the FDIC.

5.    In or about April 2019, TEMAN deposited approximately 27 fraudulent checks (the "Counterfeit Checks") into the GateGuard Account, defrauding Financial Institution-1 with a total loss amount of approximately $260,000.

## THE FRAUD

6.    Based on my participation in this investigation, my conversations with other law enforcement officers and other individuals (including personnel employed at Financial

2

Institution-1), and my review of documents (including bank
records), I have learned the following, among other things:

        a.   On or about April 19, 2019, at approximately
2:37 p.m., ARI TEMAN, the defendant, entered a branch of
Financial Institution-1 located at the Lincoln Road Mall in
Miami Beach, Florida, and deposited a legitimate check, payable
to GateGuard Inc., valued at approximately $4,096.  TEMAN
deposited this check via Automated Teller Machine ("ATM").  A
contemporaneous surveillance photograph, depicting TEMAN
standing at the ATM, shows TEMAN holding numerous additional
checks that were not deposited at that time.

        b.   On or about April 19, 2019, at approximately
6:05 p.m., TEMAN reentered the same branch of Financial
Institution-1 and, at a bank teller window, deposited the
Counterfeit Checks into the GateGuard Account, totaling
approximately $297,000.

        c.   The Counterfeit checks were fraudulently
made to appear that they had been issued by three entities:
"Entity-1" and "Entity-2," two entities operated by the same
company; and "Entity-3".  Each of these is a legitimate company
that previously has engaged in business transactions with
GateGuard Inc.  Of the approximately 27 Counterfeit Checks:

        i.   Approximately 18 were fraudulently made to
           appear to have been issued by Entity-1,
           totaling approximately $198,000.

        ii.   Approximately 6 were fraudulently made to
           appear to have been issued by Entity-2,
           totaling approximately $66,000.

        iii.   Approximately 3 were fraudulently made to
           appear to have been issued by Entity-3,
           totaling approximately $33,000.

        d.   Each of the Counterfeit Checks included, on
the bottom right corner of the check, the following text:  "DRAW
PER CONTRACT, NO SIGNATURE REQUIRED NOTE TO BANK: This is a
valid check.  You are required by law to honor it.  Contract at
gateguard.xyz/legal/terms.php accepted by above client.  Contact
us at 212-203-3714 with questions."  Based on my review of
publicly-available GateGuard records as well as other publicly-
available records, and my involvement in the investigation, I

3

A-46.5

have learned that the 212-203-3714 phone number is used by TEMAN and GateGuard Inc.

e.    Based on my conversations with Entity-1, Entity-2, and Entity-3, and from my review of the Counterfeit Checks with them, I have learned that none of Entity-1, Entity-2, or Entity-3 issued any of the Counterfeit checks. Additionally, though my conversations with each of Entity-1, Entity-2, and Entity-3, I have learned that an authorized check must be signed by an official from the respective company, which was not completed for any of the Counterfeit Checks; rather, the Counterfeit checks included the text referenced in ¶ 6(d), *supra*, which each of Entity-1, Entity-2, and Entity-3 has confirmed does not appear on authorized checks issued by each, respectively.

f.    Based on my review of wire transfer records for the GateGuard Account and from speaking with personnel employed at Financial Institution-1, I have learned that, subsequently, certain wire transfers were made from the GateGuard Account to another account held by TEMAN at Financial Institution-1 ("Account-2").

g.    On or about April 26, 2019, approximately $225,000 was transferred from the GateGuard Account to Account-2.

h.    On or about May 8, 2019, at approximately 3:04 p.m., TEMAN entered a branch of Financial Institution-1 located in Manhattan, New York and, at a bank teller window, withdrew approximately $4,000 from Bank Account-2.

4

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of ARI TEMAN, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.


DANIEL ALESSANDRINO
Detective
New York City Police Department


Sworn to before me this
____ day of June, 2019


THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
UNITED STATES OF AMERICA,        :
    Plaintiff,               :       case no. 1:19-mj-05858-UA
                             :
v.                         :
                             :
ARI TEMAN,              :
    Defendant.          :
———————————————————————x

### NOTICE OF APPEARANCE

**PLEASE TAKE NOTICE,** that Defendant, ARI TEMAN, is now represented by the undersigned attorney in this matter.

The undersigned hereby gives notice of appearance as counsel of record in the instant case before this Court. All Orders, notices, pleadings and other papers in the above-captioned matter should be directed to the undersigned counsel.

Respectfully submitted,

/s/ Joseph A. DiRuzzo, III    Digitally signed by /s/ Joseph A. DiRuzzo, III
                            Date: 2019.08.27 18:24:09 -04'00'

Joseph A. DiRuzzo, III
DIRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
954.615.1676 (o)
954.827.0340 (f)
jd@diruzzolaw.com

Dated: Aug. 27, 2019

DIRUZZO & COMPANY
401 EAST LAS OLAS BLVD., SUITE 1400, FT. LAUDERDALE, FL 33301 • T: 954.615.1676 • F: 954.827.0340 • WWW.DIRUZZOLAW.COM

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on ECF on Aug. 27, 2019, and a NEF will be delivery upon counsel of record.

/s/ Joseph A. DiRuzzo, III    Digitally signed by /s/ Joseph A. DiRuzzo, III
                              Date: 2019.08.27 18:24:23 -04'00'

Joseph A. DiRuzzo, III

DiRuzzo & Company
401 East Las Olas Blvd., Suite 1400, Ft. Lauderdale, FL 33301 • T: 954.615.1676 • F: 954.827.0340 • WWW.DIRUZZOLAW.COM

A-49

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

19 CRIM 696

- - - - - - - - - - - - - - X
                                    :
UNITED STATES OF AMERICA            :    INDICTMENT
                                    :
           - v. -                   :    19 Cr.
                                    :
ARI TEMAN,                          :
                                    :
           Defendant.               :
                                    :
- - - - - - - - - - - - - - X

## COUNT ONE

### (Bank Fraud)

The Grand Jury charges:

1.    From at least in or about April 2019 up to and
including at least in or about June 2019, in the Southern
District of New York and elsewhere, ARI TEMAN, the defendant,
willfully and knowingly, did execute and attempt to execute a
scheme and artifice to defraud a financial institution, the
deposits of which were then insured by the Federal Deposit
Insurance Corporation, and to obtain moneys, funds, credits,
assets, securities, and other property owned by, and under the
custody and control of, such financial institution, by means of
false and fraudulent pretenses, representations, and promises,

to wit, TEMAN deposited counterfeit checks into an account held at a particular financial institution in the name of a third party.

(Title 18, United States Code, Section 1344.)

## FORFEITURE ALLEGATION

2.   As a result of committing the offense alleged in Count One of this Indictment, ARI TEMAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

## Substitute Asset Provision

3.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p) and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described above.

   (Title 18, United States Code, Section 982;
    Title 21, United States Code, Section 853; and
    Title 28, United States Code, Section 2461.)

FOREPERSON

Geoffrey S. Berman
GEOFFREY S. BERMAN
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

v.

**ARI TEMAN,**

                              **Defendant.**

---

**<u>INDICTMENT</u>**

19 Cr.

(18 U.S.C. § 1344.)

GEOFFREY S. BERMAN
United States Attorney

_____
                    Foreperson

---

— TRUE BILL & INDICTMENT
— MAG. ROBERT W. LEHRBURGER
    9-26-18

          DJ ENGELMAYER

A-53

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
_____x
UNITED STATES OF AMERICA,         :
          Plaintiff,              :        case no. 1:19-cr-696-PAE
                                  :
v.                                :
                                  :
ARI TEMAN,                        :
          Defendant.              :
_____x
```

## <u>WAIVER OF APPEARANCE FOR ARRAIGNMENT</u>

Defendant, ARI TEMAN, pursuant to Fed. R. Crim. P. 10(b) waives my appearance at my arraignment on the indictment (Doc. # 9) in the above-styled case. I, ARI TEMAN, am charged by indictment with one offense under the United States Code, to wit: bank fraud (18 U.S.C. § 1344).

I have received a copy of the indictment and plead NOT GUILTY to the charged offense.

I am aware that I have the right under Rule 10 of the Federal Rules of Criminal Procedure to be present in court for my arraignment. I waive my right to appear in court at my arraignment.

| | |
|---|---|
| 10/14/2019 | ARI TEMAN |
| Date | |
| 10-15-2019 | /s/ Joseph A. DiRuzzo, III  *Digitally signed by /s/ Joseph A. DiRuzzo, III  Date: 2019.10.15 12:24:22 -04'00'* |
| Date | Joseph A. DiRuzzo, III |

___ Waiver Approved
___ Waiver Denied

A-54

_____                    _____
Date                               Judicial Officer (Signature)

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                              19 CR 696 (PAE)

 5   ARI TEMAN,

 6                 Defendant.
                                             Arraignment
 7   ------------------------------x

 8                                           New York, N.Y.
                                             October 21, 2019
 9                                           10:05 a.m.

10   Before:

11
                       HON. PAUL A. ENGELMAYER,
12
                                             District Judge
13
                             APPEARANCES
14
     GEOFFREY S. BERMAN
15        United States Attorney for the
          Southern District of New York
16   BY:  JACOB GUTWILLIG
          Assistant United States Attorney
17
     DiRUZZO & COMPANY
18        Attorneys for Defendant
     BY:  JOSEPH A. DiRUZZO, III
19

20

21

22

23

24

25
```

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Counsel, please state your

 3     appearances for the record, starting with the government.

 4              MR. GUTWILLIG:  Good morning, your Honor.  Jacob

 5     Gutwillig.

 6              THE COURT:  Good morning, Mr. Gutwillig.

 7              For the defense?

 8              MR. DiRUZZO:  Good morning, your Honor.  Joseph

 9     DiRuzzo on behalf of Mr. Ari Teman who is seated to my right.

10              THE COURT:  Very good.  Good morning to, Mr. DiRuzzo.

11              Good morning to you, Mr. Teman.  You may be seated.

12              This is our initial conference in the case.  My

13     understanding is that the defendant has been presented but not

14     arraigned and, therefore, we need to begin with an arraignment.

15              Is that correct?

16              MR. GUTWILLIG:  Yes, your Honor.

17              MR. DiRUZZO:  Your Honor, we are in possession of the

18     indictment.  We waive formal reading, enter a not guilty plea

19     to Count One, dispute the forfeiture allegation, and request a

20     public jury trial.

21              THE COURT:  Very good.  I now need to arraign the

22     defendant.  I appreciate your putting that on the record, but I

23     need to, nevertheless, inquire of him.

24              Have you had an opportunity to review with your client

25     the questions I'm apt to put to him by way of arraignment?
```

1              MR. DiRUZZO:  Yes, I have.

2              THE COURT:  Very good.  Mr. Smallman, would you kindly

3       administer the oath to the defendant.

4              (Defendant sworn)

5              THE COURT:  Very good.

6              You may be seated.  Mr. Teman, I'm going to ask you a

7       handful of questions ultimately leading up to the question how

8       you plead to the charges, and your counsel has indicated that

9       you intend to plead not guilty.

10             I nevertheless need to go through these questions just

11      to make sure essentially you're of sound mind, that you've

12      familiarized yourself with the charging instrument, the

13      indictment, before I ask you that question.

14             So I'm not asking these questions to pry, just to

15      enable myself to make sure that your answer is a knowing and

16      willing one.

17             What is your full name?

18             THE DEFENDANT:  Ari Teman.

19             THE COURT:  How old are you?

20             THE DEFENDANT:  Thirty-seven.

21             THE COURT:  How far did you go in school?

22             THE DEFENDANT:  Bachelor degree and then some

23      additional coursework.

24             THE COURT:  Are you able to understand and speak

25      English?

A-58

 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  Have you ever been treated or hospitalized

 3   for any mental illness?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  When was that?

 6              THE DEFENDANT:  From a period of about 2011 to 2013, I

 7   was seeing a group of physicians, the head of which has since

 8   been arrested twice and had his own children taken away for

 9   medical abuse.  When I accused them of fraud, they told my

10   parents to stick me in a mental hospital.

11              THE COURT:  Would you move the microphone a little

12   closer to you.

13              THE DEFENDANT:  Sure.

14              THE COURT:  The bottom line is, what was the condition

15   that you were rightly or wrongly being treated for at the time?

16              THE DEFENDANT:  The correct diagnosis was an

17   upper-airway respiratory syndrome which was causing a sleeping

18   disorder.  I was not getting sufficient rem sleep.

19              After I had accused him, they told my parents who live

20   in Israel that I had borderline personality disorder and needed

21   to be hospitalized.  That hospital has since paid a settlement

22   for unlawful detainment.

23              THE COURT:  A settlement to you?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  When did the course of treatment, such as

1  it was, end?

2          THE DEFENDANT:  It was eight months starting in

3  September of 2011.  So I guess the spring or summer of 2011.

4          THE COURT:  So since 2012, have you ever been treated

5  for any mental illness?

6          THE DEFENDANT:  Other than PTSD, no.

7          THE COURT:  When did the PTSD treatment stop, if it

8  did?

9          THE DEFENDANT:  I would say it's still somewhat

10 ongoing.  I sought a professional here in New York for about a

11 year, and that was very helpful.

12         THE COURT:  When did that end, seeing the person in

13 New York?

14         THE DEFENDANT:  I'm not exactly sure, but about two

15 years ago I would say.

16         THE COURT:  Here is the critical question, which is

17 whether you're symptomatic, whether you're experiencing at this

18 point any symptoms of PTSD or otherwise.  I'm asking just

19 because I need to be sure that you're of sound mind for this

20 whole matter, the arraignment and going forward.

21         So I'm just pushing you, just so I understand, whether

22 there's any ongoing condition.

23         THE DEFENDANT:  I appreciate that, your Honor.

24         I see a mental health provider, and I get somewhat

25 regular ketamine IVs.  I believe I'm of sound mind/body.  And

1  given this more than surprising and depressing situation, have

2  thankfully, with great struggle, with the depression which

3  would come from such a situation, been able to get out of the

4  house, at least before 2:00 in afternoon on most days, and

5  conduct my business enough to try to kind of try to break even

6  on legal fees.  So I think I am of sound mind and body.

7        THE COURT:  Let me ask you:  Are you currently under

8  the care of a doctor or psychiatrist for any condition?

9        THE DEFENDANT:  I see a psychologist on a regular

10  basis.  It's also a requirement of the bond.

11        THE COURT:  Right.

12        THE DEFENDANT:  So I see Dr. Scheidt in Miami Beach.

13  I guess the ketamine IVs are overseen about I a psychiatrist.

14        THE COURT:  Have you ever been hospitalized or treated

15  for addiction to any drugs or alcohol?

16        THE DEFENDANT:  No, your Honor.

17        THE COURT:  In the past 24 hours -- you've referenced

18  ketamine.

19        In the past 24 hours, have you taken any drugs,

20  medicine, or pills or drunk any alcoholic beverages?

21        THE DEFENDANT:  No, your Honor.

22        THE COURT:  First of all, I'm sorry that you've had

23  the medical road that you have been on.  It sounds like it's

24  been challenging.

25        The most important question for me, for the purposes

1   of this proceeding is:  Is your mind clear today?

2            THE DEFENDANT:  I believe so, your Honor.

3            THE COURT:  Is there any reason you're hesitating?

4            THE DEFENDANT:  I would just assume that somebody who

5   is crazy would be so crazy that they wouldn't know that they're

6   crazy.  Your Honor, yes.  I believe I'm of sound mind and body,

7   and I look forward to defending this case and prevailing.

8            THE COURT:  Do you understand what's happening in this

9   proceeding?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Have you had any difficulty understanding

12  any of the questions that I've put to you today?

13           THE DEFENDANT:  No, your Honor.

14           THE COURT:  Mr. DiRuzzo, how much time have you spent

15  with your client?

16           MR. DiRUZZO:  Judge, would you like me to stand or be

17  seated?

18           THE COURT:  I would stand, but just make sure you

19  speak into the mike.  The acoustics are not great.

20           MR. DiRUZZO:  I understand.  I pretty much spent the

21  entire day when we had the appearance before the magistrate

22  last month.  I've had a couple of phone calls with him.

23           I'm also co-counsel, and co-counsel has spent a

24  substantial amount of time very similarly with my client.  So I

25  have no reason to doubt his mental capacity to understand and

1    proceed today.

2              THE COURT:  That's fine.  I just want to make sure

3    that you have spent enough time to put yourself in a position

4    to express that.

5              You're confident your client is of clear mind?

6              MR. DiRUZZO:  I am.

7              THE COURT:  Mr. Teman, have you received a copy of the

8    indictment?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Have you read it?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Have you had time to consult with your

13   attorney about it?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you want me to read it out loud, or do

16   you waive its public reading?

17             THE DEFENDANT:  I waive it, your Honor.

18             THE COURT:  Thank you.

19             Now, formally, how do you plead to the charges?

20             THE DEFENDANT:  Not guilty, your Honor.

21             THE COURT:  Thank you.

22             Government, I take it you have no doubt about the

23   defendant's clarity of mind?

24             MR. GUTWILLIG:  No, your Honor.

25             THE COURT:  Having taken care of the arraignment, I

1    now need to learn more about the case and set us on a good

2    schedule.

3              Government, tell me briefly about the case.

4              MR. GUTWILLIG:  Yes, your Honor.

5              This is a case involving a single count of bank fraud.

6    The allegations set forth in the case before the case was

7    indicted detail the deposit of what the government believes are

8    fraudulent checks in the amount of approximately $260,000.

9    Subsequently, those funds were moved around, and certain of

10   them were wired in transactions.

11             The government has produced discovery in its

12   possession.

13             THE COURT:  Sorry.  I'll get to discovery in a moment.

14   I'm just eager to learn about the allegations.

15             What happened here?

16             MR. GUTWILLIG:  Yes, your Honor.  So between

17   approximately April 2019 and June 2019 was the period of the

18   alleged fraud.  During that time, there are surveillance photos

19   showing approximately 27 fraudulent checks being deposited in I

20   believe it was a Bank of America branch in Miami, in all of

21   Miami.  The checks totaled approximately $260,000.

22             THE COURT:  What makes them fraudulent?

23             MR. GUTWILLIG:  It's the government's understanding

24   that if you look at the checks, the checks themselves do not

25   appear to be issued by -- they were issued to a company called

1    GateGuard, which is a company we understand was operated by
2    Mr. Teman.
3          The checks themselves -- I don't have an image in
4    front of me.  But we understand, from speaking with the
5    companies on behalf of the checks, that these were not
6    authorized or issued by those companies.
7          THE COURT:  I'm sorry.  Whose account were the checks
8    drawn on?
9          MR. GUTWILLIG:  I believe there were three separate
10   companies.
11         THE COURT:  None of which were the defendant's
12   company?
13         MR. GUTWILLIG:  None of which is the defendant's
14   companies.
15         From speaking with those companies -- entity one,
16   entity two, and entity three in the complaint -- two entities
17   were operated by the same company.  Then there is another
18   entity.  None of those entities -- rather, each of those
19   entities said that they did not issue these checks or permit
20   them to be drawn from their account.
21         Looking at the checks themselves, there were
22   approximately 18 fraudulent checks that appear to have been
23   issued by entity one totaling approximately $198,000;
24   approximately six fraudulent checks issued by entity two
25   totaling approximately $66,000; and approximately three

1    fraudulent checks made to have appeared to have been issued by

2    the third entity totaling approximately $33,000.

3          And each of the counterfeit checks include -- the

4    checks have been produced in discovery.  But each of the

5    counterfeit checks included on the bottom right corner of the

6    check the following text:  "Draw per contract.  No signature

7    required.  Note to bank.  This is a valid check.  You are

8    required by law to honor it.  Contact at" a website for

9    GateGuard.  And then "Contact us at 212.203.3714."

10         Based on our review and understanding, we understand

11   that GateGuard is a company operated by Mr. Teman, and the

12   phone number on the check is associated with GateGuard and

13   Mr. Teman.

14         THE COURT:  But what makes the checks fraudulent, in

15   the government's view, ultimately is that these are not

16   authorized instruments of the account holder so the

17   representation on the check that the account holder is

18   directing the withdrawal to the payee of that amount of money

19   is a false representation and the notation you just described

20   is, I take it, false insofar as it purports to be a directive

21   of the account holder?

22         MR. GUTWILLIG:  That's correct, your Honor.

23         THE COURT:  May I ask, just as a formal matter, why

24   the three victim accounts, if you will, are clustered into the

25   same count.

1          Are you not walking into a potential multiplicity
2    issue here?
3          MR. GUTWILLIG:  With three victim accounts.  The three
4    victim accounts -- I suppose they could theoretically be a
5    single count for each of the --
6          THE COURT:  That's the question.  I have no idea what
7    a trial would look like, if we're headed to one, but just
8    trying to think through issues here.  One has the scenario of
9    the split outcome here where some subset of victims are
10   determined to have not authorized a check and some subset have.
11   What do we then so and so forth.
12         Again, I'm not telling you how to do your work.  As
13   you described it, it sounded as if there is an issue here about
14   whether or not these belong in the same count.
15         MR. GUTWILLIG:  Yes.  Understood.  Two of the entities
16   my understanding are operated by the same company.  So
17   theoretically, were the counts to be split, those could be in
18   one count, and there could be a second count for the third
19   entity.
20         THE COURT:  I don't weigh in on this, but I would urge
21   you to give thought to that issue because there is no value
22   here in bumping into a curable legal problem down the road.  So
23   please give thought to that.
24         MR. GUTWILLIG:  Yes, your Honor.
25         THE COURT:  Now turn to discovery.

1          Sorry.  Before we do that, let me just get the

2   schedule here.

3          When was the defendant arrested on the complaint?  He

4   was arrested originally on a complaint?  That's how the case

5   began?

6          MR. GUTWILLIG:  That's correct.

7          THE COURT:  When was that?

8          MR. GUTWILLIG:  He was arrested on July 3 in Miami.

9          THE COURT:  What is the New York connection to the

10  case?

11         MR. GUTWILLIG:  He was spotted later transferring some

12  of the funds at a bank branch in New York City which I believe

13  was a Capital One branch.

14         THE COURT:  So the money was actually in New York

15  City?

16         MR. GUTWILLIG:  Yes.

17         THE COURT:  And the defendant was in New York City in

18  the service, you say, of the scheme?

19         MR. GUTWILLIG:  Yes.

20         THE COURT:  So he's arrested in Miami.

21         What happens next?

22         MR. GUTWILLIG:  He was arrested in Miami.  He was

23  presented here I believe approximately a month ago.  I don't

24  have the exact date, but he was presented here in magistrate

25  court thereafter.

1              THE COURT:  And was bailed at the time?

2              MR. GUTWILLIG:  Yes.  He was bailed.

3              THE COURT:  The same day?

4              MR. GUTWILLIG:  He was not bailed the same day in

5     Miami.  The same day in Miami, because it was over the 4th of

6     July holiday, as I imagine defense counsel will note, he was

7     not able to be bailed and released, although the government was

8     in support of bail, until the following Monday in Miami because

9     it was over the 4th of July holiday.  He was bailed on that day

10    and then was bailed since that and then again after the

11    presentment here in the Southern District.

12             THE COURT:  When was he indicted?

13             MR. GUTWILLIG:  He was indicted I believe

14    approximately three weeks ago.

15             THE COURT:  Was he presented after the indictment?

16             MR. GUTWILLIG:  He was not presented after the

17    indictment.  Approximately I would say seven to ten days

18    elapsed before we submitted a letter to your Honor asking to

19    exclude time since the indictment to this morning's conference.

20             THE COURT:  In the future, just to avoid any needless

21    reduction of time on the speedy trial clock, for future matters

22    like this, as soon as the clock is beginning to run, you ought

23    to get a letter in, after consulting with defense counsel,

24    seeking, if justified, which it almost always will be, an

25    exclusion of time so we don't have that situation.

1            What you're saying is that the indictment issued on

2      the 26th, according to Mr. Smallman; the letter seeking an

3      exclusion of time issue was requested on October 3; and the

4      Court signed it on October 4.  So it sounds as if approximately

5      seven or eight days have run off the speedy trial clock.

6            MR. GUTWILLIG:  Yes, your Honor.

7            THE COURT:  Tell me about discovery.

8            MR. GUTWILLIG:  Discovery has been produced.  It

9      consists primarily of video and surveillance photos from the

10     branch in Miami and also from the branch in New York where the

11     check were initially deposited and then also where the wire

12     transfer was made.  As your Honor said, the defendant was in

13     New York transferring the money that was deposited in Miami.

14            THE COURT:  Why was the bank fraud not complete in

15     Miami?

16            MR. GUTWILLIG:  I'm sorry?

17            THE COURT:  Is the bank fraud arguably complete in

18     Miami?

19            MR. GUTWILLIG:  With the deposit of the checks?

20            THE COURT:  Yes.

21            MR. GUTWILLIG:  So the bank fraud, I suppose, directly

22     could be complete in Miami with the deposit of the checks.  The

23     government's view is that it continued in New York when the

24     defendant went and wired the money that he had deposited in

25     Miami to other of his accounts and then also internationally

1   from New York.

2          THE COURT:  You should look into that as well because

3   before we go farther down the road here, you should make sure

4   that legally you're on sound footing contending that the

5   New York activity, after the deposit of the fraudulent checks,

6   is a necessary component or a component of the bank fraud here.

7          You may be right; you may be wrong.  Just run that to

8   ground.  I don't want to have a situation where late in the day

9   it becomes apparent that essentially this was a completed crime

10  as of Miami and that there isn't a legal basis for venue in

11  New York -- maybe there is; maybe there isn't -- or, for that

12  matter, jurisdiction in New York.

13         You just need to give thought to both of those issues.

14  I'd like to ask you to do so, please, promptly, both the issue

15  of the consolidation of the victims in one count but the issue

16  of the Southern District nexus to the case.

17         Again, I don't weigh in on that, but I want to make

18  sure that you cross your Ts and dot your Is so that we don't

19  have an issue later in the case.  So I'd ask you kindly, with

20  some dispatch, to run those issues to ground and submit a

21  letter obviously on the docket of the case letting me know what

22  you come up with.

23         MR. GUTWILLIG:  Yes, your Honor.

24         THE COURT:  Go ahead.  You were about to tell me about

25  discovery.

1    MR. GUTWILLIG: Discovery is not voluminous. It's the

2    images of the checks, the depositing of the checks, the video

3    surveillance from the branch in New York wiring the money,

4    additional bank records showing the transfers, and some

5    post-arrest pictures and materials that were seized upon

6    arrest.

7        THE COURT: May I ask you: Is there discovery in the

8    form of communications with the victim companies?

9        MR. GUTWILLIG: No, your Honor. That communication

10   thus far has been between the agents and the company. When we

11   receive those, we will --

12       THE COURT: That's testimonial, if you will.

13       MR. GUTWILLIG: That's testimonial, potentially as

14   3500.

15       THE COURT: Do you know if the companies had any

16   pre-existing connection with Mr. Teman?

17       MR. GUTWILLIG: My understanding is that -- and I

18   don't want to speak off the cuff. I understand that at least

19   one of and I think all of the companies had some sort of

20   pre-existing relationship with Mr. Teman and had previously --

21       Again, I don't want to say specifically, but my

22   understanding is that they had previously conducted business

23   with Mr. Teman and that this business was not an authorized

24   transaction.

25       THE COURT: That may well be. It seems to me almost

1   inevitable in one way or the other that the writings reflecting

2   the pre-existing business relationship between Mr. Teman and

3   the victim companies are going to be brought into play.  If you

4   don't seek them from the victim companies, the defense surely

5   will.

6           So may I suggest that because -- this does not

7   preclude the defense from any proper subpoena that it wants to

8   pursue, but we will move faster here if the government takes

9   ownership of this.

10          It's hard for me to imagine that some exploration of

11  the defendant and those companies isn't going to be right at

12  the center of this case.  You should be taking steps to make

13  sure that this is produced.

14          Has that been sought by subpoena?

15          MR. GUTWILLIG:  No.  It has not been sought.

16          THE COURT:  Presumably it may well be voluntarily

17  produced.  It seems to me under the circumstances here that we

18  need to come to grips with that.  Otherwise, to the extent that

19  there is a defense of authorization or something, I don't want

20  to have a trial delay because the government never sought that

21  material.

22          MR. GUTWILLIG:  Yes, your Honor.

23          THE COURT:  May I ask you, just coming back to the

24  issue of the series of transactions, if one were to conclude

25  that the bank fraud were complete in Miami, hypothetically,

1   which is to say the money was deposited based on the false

2   pretense then and there and it was already converted to the

3   defendant's control, the wires to New York then become a

4   separate potential offense with the specified unlawful activity

5   offense being bank fraud and presumably the wire transfer

6   thereafter being money laundering.

7           Correct?

8           MR. GUTWILLIG:  Yes, your Honor.

9           THE COURT:  I'm going to ask the government again to

10  make sure you cross Ts and dot Is about how this is being

11  charged to make sure that we are careful.

12          MR. GUTWILLIG:  Yes, your Honor.

13          THE COURT:  Has the discovery you've described been

14  produced to the defense?

15          MR. GUTWILLIG:  Yes, your Honor.

16          THE COURT:  Has there been any additional discussion

17  with the defense about next steps, a timetable, likelihood of

18  trial, that sort of thing?

19          MR. GUTWILLIG:  There have been preliminary

20  discussions regarding a potential motion schedule.  I'll let

21  defense counsel address that.  But my understanding is that at

22  this point, defense counsel is not sure of exactly which

23  motions would be made.

24          THE COURT:  Very good.  Thank you.  Very helpful.

25          Okay.  Mr. DiRuzzo, the floor is yours.

```
 1              MR. DiRUZZO:  Thank you, your Honor.

 2              Briefly, without prejudice to the exact nature of the

 3     motion practice that we anticipate, I think that, as the Court

 4     has just teed in on, there are some legal issues, both

 5     constitutional and statutory, that are going to have to be

 6     vetted between the parties, at least initially, and potentially

 7     with the Court's consideration.

 8              The one thing I would say -- and I think it should

 9     come as no surprise -- the language that is in the memo section

10     of the checks -- that language is not fraudulent because it is

11     not untrue.  That is going to be a substantial portion of this

12     case.  That being said, Judge, we don't have to get into the

13     nuts and bolts of that today.

14              But as far as a schedule goes, personally, in December

15     I have four trials.  So my December is just pretty much off the

16     board.  My November is pretty clear.  But given that we're

17     already at the very end of October and I don't know, because

18     I've never appeared before you, how much time you give for the

19     defense to produce the reciprocal discovery, experts, etc.,

20     Daubert hearings.

21              I just don't know at this point whether -- if the

22     Court wants to issue any motions hearing, right now I wouldn't

23     be opposed to it.  But I'd just ask the Court for flexibility.

24              THE COURT:  I'd be glad to accommodate you.  Let's

25     work through the life cycle of the case though first before we
```

1    talk about a schedule.

2              Without going into gory detail, can you tell me at

3    present what motions you anticipate.  I take it there are no

4    suppression motions.  It's not that type of case.

5              MR. DiRUZZO:  No.  I don't believe there are going to

6    be any type of suppression motions.

7              THE COURT:  There are no searches or seizures or

8    lineups or show-ups or post-arrest statements?

9              Government?

10             MR. GUTWILLIG:  No.

11             MR. DiRUZZO:  I don't anticipate any motion to

12   suppress under either the Fourth or Fifth Amendment.  So I

13   don't anticipate that being the case.

14             The Court has focused in on multiplicity and venue

15   issues.  As for the venue, we'll have to discuss -- obviously

16   venue is waivable.  I'm not sure all of these issues would be

17   waivable.

18             THE COURT:  As to motions, one thing you're

19   contemplating, depending on how the indictment ultimately

20   reads, because there may be a superseder, is there may be a

21   multiplicity challenge based on the multiple victims in the one

22   count?

23             MR. DiRUZZO:  Correct.

24             THE COURT:  And there may not be a venue challenge

25   with the theory that it's charged as bank fraud.  The question

1    is whether it was complete before the conduct reached New York

2    City.

3            MR. DiRUZZO:  Correct.

4            THE COURT:  Are there other challenges, without

5    binding you, that you presently anticipate?

6            MR. DiRUZZO:  Your Honor, at this point, we're looking

7    into whether there is a Speedy Trial Act violation.

8            THE COURT:  How would that work?

9            MR. DiRUZZO:  It's my understanding -- you'll have to

10   excuse me because the research on our end is not complete.

11           My client was arrested in Miami, held over the 4th of

12   July weekend, spent, I believe, five days in custody.  And then

13   the indictment came down on the 26th.  Off the top of my head,

14   I want to say it's 30 days on the Speedy Trial Act between when

15   he was initially taken into custody and when the indictment was

16   handed down.

17           THE COURT:  Were you representing your client at the

18   time of the complaint?  In other words, were you the initial

19   lawyer on the case?

20           MR. DiRUZZO:  Let me be specific, Judge.  I was not

21   engaged when my client was presented to the magistrate in the

22   Southern District of Florida.  I was engaged subsequently, and

23   I was here for the presentment to the magistrate in the

24   Southern District of New York last month.

25           Does that make sense?

```
 1                THE COURT:  That was on the complaint, not on the
 2      indictment.  Right?
 3                MR. DiRUZZO:  That is correct.  The indictment came
 4      out I want to say give or take a week later.
 5                THE COURT:  Let me ask Mr. Gutwillig.
 6                Usually when we have a gap of a couple months between
 7      an arrest on the one hand and an indictment, usually it's that
 8      the defendant has waived any challenge to the government's not
 9      indicting within 30 days.
10                Is that what happened here?
11                MR. GUTWILLIG:  No, your Honor.  There was not a
12      rollover here.  There was no kind of waiver of the indictment.
13      The government's position is that the speedy trial clock, for
14      purposes of this, began when the defendant was presented in
15      this district.  I would also note that --
16                THE COURT:  So he was arrested July 3?
17                MR. GUTWILLIG:  Correct.
18                THE COURT:  What led the defendant first to be
19      presented in this district on what I gather was September 6?
20                MR. GUTWILLIG:  So what led in terms of the timeline
21      between the arrest and the presentment?
22                THE COURT:  Yes.
23                MR. GUTWILLIG:  My understanding is that the defendant
24      was in the process of having initial counsel and then having
25      other counsel, and the government was in active communications
```

JACKSON

1    with prior and current counsel about finding a date to come up

2    here.

3                THE COURT:  The issue is whether it has any

4    consequence, given the subsequent indictment.  I don't know.

5    The subsequent indictment may clear away any issue presented

6    by -- let me back up.

7                It may well be that somebody could have moved before

8    the indictment for the dismissal of the complaint on the

9    grounds that an indictment by then should have issued absent

10   consent to a continuance.

11               It's another story entirely, once the indictment

12   in fact issues, whether any misstep with respect to the

13   complaint matters.  I'm asking you to put aside that issue and

14   just focus on the period of time between July 3 and early

15   September.

16               What was the legal justification in effect for not

17   indicting within 30 days of the arrest on the complaint?

18               MR. GUTWILLIG:  I think I'm probably not addressing

19   your Honor's question correctly.  The legal reason is that the

20   government's view is that the speedy trial clock did not begin

21   until he was presented in this district.

22               THE COURT:  This is a problem that I think I bumped

23   into.  May I suggest, before any motion is made along those

24   lines, that counsel confer.  I'm happy to hear any motion that

25   counsel makes.

1          On the other hand, it strikes me that there are at

2     least two issues that my colloquy with Mr. Gutwillig identifies

3     that could make such a motion dead on arrival.

4          One is whether the subsequent indictment cures any

5     problem from before.  And the second issue is whether it's

6     correct that the speedy trial clock from the point of view of

7     the obligation to indict 30 days after a complaint is triggered

8     by the arrest on the complaint or the presentment in the

9     district from which the complaint arises.

10          So may I urge you on that one to aim before you fire,

11     defense counsel, and let me know what you intend to do.

12          What Mr. Smallman, who is always on top of things, has

13     given me this as follows:  He's given me a post-it with the

14     following schedule which may be helpful.

15          On July 3, the defendant was arrested in Florida.  On

16     July 8, he was presented in Florida.  On July 8, the defendant

17     signed a waiver of a removal order, and an order issued.  On

18     July 10, the case was transferred to us.

19          That I think doesn't answer the legal question of when

20     the clock began to run.  And it's factually unclear to me why

21     it is that the defendant doesn't wind up reaching New York

22     until shortly after around Labor Day, but we'll see.

23          Let me throw out the following:  Mr. Gutwillig,

24     insofar as the defense is telling you that they are considering

25     challenges to multiplicity and venue, all the more reason for

1    you to jump on that right away because if it's your intention

2    to indict in a way that as much as you can, cures those

3    problems, I'd rather, if you're going to do that, you do it

4    before we get into a bunch of motions practice.

5          Mr. DiRuzzo, I think what that says to me is it would

6    be a waste of your time and all our time for me to set a

7    schedule that obliges you to move on those grounds right away

8    if in fact the government is going to be taking a fresh look at

9    the proper way to indict this case.  Better for you to be

10   taking aim at a superseder than taking aim at this indictment

11   and having your motions superseded away.

12         MR. DiRUZZO:  Understood.

13         THE COURT:  With that, what I'd like to do, thinking

14   out loud, is set a next conference date.

15         Let me back up:  Mr. DiRuzzo, assuming unsuccessful

16   motions, is this a case that you expect to go to trial?

17         I'm trying to figure out whether to set a trial

18   schedule now just so everyone can preserve the date.

19         Is this a viable trial?

20         MR. DiRUZZO:  I think so, Judge.

21         THE COURT:  Then why don't we do this.  Why don't we

22   work backwards.  I'm mindful that you have a busy schedule, and

23   I'm certainly not scheduling anything that's going to make a

24   mess of your other commitments, but I also want to be

25   respectful of the defendant's interest in a speedy trial and

1    the system's interest in that.

2            Could we have this trial in early March?  It sounds

3    like it can't be more than about a week-long trial.

4            Right, Mr. Gutwillig?

5            MR. GUTWILLIG:  That's correct.

6            MR. DiRUZZO:  Your Honor, that would not be a problem.

7    I actually was anticipating we could have the trial before

8    March.  I don't know what the Court's schedule is.

9            As of right now, I do have a week-long trial at the

10   end of February.  My January and the beginning of February are

11   pretty clear.

12           THE COURT:  That's fine.  Right now, my druthers would

13   be, if you're talking about motions, to put this over a bit so

14   we can let the motions process run its course and you know

15   exactly what you're facing.

16           A month from now, you may find that your client is

17   facing an indictment that is reconfigured to have counts

18   specific to particular victims, and it may be that you're

19   facing a money laundering as opposed to a bank fraud indictment

20   or both or one or the other or exactly the same.

21           It strikes me that only once we have an indictment can

22   you then move against it.  At that point, I'll need a little

23   bit of time to sort things out.  Once I've ruled on any of the

24   challenges you have to any of the counts, at that point,

25   everyone's got to begin to mobilize for pretrial motions.

 1          There may or may not be motions in limine.  There may

 2    or may not be 404(b) disclosures that have implications.  I

 3    would rather schedule this on a date when we're getting it

 4    right the first time and building in enough time for anything

 5    that could conceivably happen.

 6          Can you try the case in March?

 7          MR. DiRUZZO:  Yes, your Honor.  Although to be clear,

 8    my client would prefer -- and I would be amenable -- at least

 9    for the purposes of motion practices, to resolve it sooner

10    rather than later.

11          THE COURT:  And I'm all for that.  We'll work

12    backwards in a moment and set a deadline in a moment for the

13    government to supersede, if that's its intention.

14          I'm trying to work backwards and put a trial date in

15    the schedule, and then we'll set up a rational schedule given

16    that.  So I'm trying to work with your schedule here.

17          Mr. Smallman tells me we could have this trial on --

18    suppose we did this trial Monday, March 9.  It sounds like

19    you've got something in late February.

20          Would that work?

21          MR. DiRUZZO:  The direct answer to your question is as

22    of right now, I believe so.  My one qualification, Judge, is I

23    don't have my co-counsel's calendar with me.  So I have no idea

24    what his schedule is like.

25          THE COURT:  In the future, my rules require

1    lead counsel to be at a hearing for just this reason.

2          MR. DiRUZZO:  Okay.

3          THE COURT:  I'm going to assume that your availability

4    means that your co-counsel is available too.  It's unhelpful to

5    me to have a counsel not be familiar with their schedule at a

6    scheduling conference.

7          MR. DiRUZZO:  Understood, your Honor.  So for that,

8    you have my apology.

9          As far as between me and my co-counsel, we'll work it

10   out.  Although in an ideal world -- I understand that nothing

11   in this world is ideal -- we'd prefer a trial sooner rather

12   than later.

13         Given that I have a trial in the end of February,

14   which there is a distinct possibility -- that's a civil tax

15   case that's going forward in Miami -- that judge's criminal

16   docket and the possibility that it could settle which is very

17   likely, I'm thinking that, if this Court has the time free,

18   either in late January or February.

19         THE COURT:  I have a three-week trial beginning

20   January 27.  So from my docket perspective, that's a problem.

21         MR. DiRUZZO:  Understood.

22         THE COURT:  The broader point is -- I could transfer

23   this to a colleague.  The broader point is that it seems to me

24   that the schedule that I'm floating for you now, which

25   anticipates trial in 4 1/2 months, is relatively brisk.  And I

1   think it allows for I think working through what are not

2   insubstantial issues here.

3         My concern is that if I were to set this right at the

4   beginning of January or something like that, we'd have a

5   situation where I'm a little concerned that there won't have

6   been enough time for you to adapt to any ruling that I make on

7   any motion directed to any superseding indictment.

8         That's the concern, which is I may or may not be

9   dealing with an indictment that looks rather different than the

10  one here.  I'm trying to build in enough time so that there is

11  no presently foreseeable basis for seeking an adjournment.

12        I want a firm date, rather than setting an early date

13  and then your coming to me and saying, Judge, I just got your

14  decision on the challenge to the indictment.  And given what is

15  surviving, we need the following discovery directed at third

16  parties.  I'm trying to set a schedule that is impregnable.

17        MR. DiRUZZO:  Understood, Judge.  Let me pose this

18  question to the Court, if the Court would be amenable to it.

19  I'm just thinking out loud.

20        We're at October 21 right now.  Two months for

21  discovery would be November 21, December 21.

22        THE COURT:  Do you see the problem?

23        MR. DiRUZZO:  Yes.  December 21, and then two to three

24  weeks later would basically be mid January.

25        And you said you were starting a three-week long

1   trial.

2         THE COURT:  I'm starting a three-week long trial on

3   January 27.  So giving you March 9 trial would seem to be a

4   rational schedule.  Let's focus on your client's interest.

5         The government may not supersede for a month.  I'm

6   hoping that they will come to terms with this, but I'm

7   certainly going to give them that amount of time to supersede.

8   The case is new.  Given that, until they've superseded, you

9   don't have something to shoot at in your motions.  That's the

10  problem.

11        MR. DiRUZZO:  That's a fair point.  I'll be in

12  discussions with counsel for the government, to the extent the

13  government is going to be seeking a superseding indictment.

14  For example, we may just waive on venue.

15        THE COURT:  That would help.  That would certainly get

16  rid of the venue challenge.

17        Let's focus on the trial date, and then we'll work out

18  the constituent dates.  The purpose of the trial date is

19  fundamentally to permit the various things that would need to

20  happen in this case to happen on a schedule that allows you to

21  prepare for and meet a trial on consequential charges like

22  these?

23        Does March 9 work for you?  Does it give you the time

24  you need to ably defend your client's interests?

25        MR. DiRUZZO:  Yes, Judge.  I'm just trying to be

1   considerate of my client's desire to get this done sooner

2   rather than later, which is why I was kicking the idea of

3   considering whether or not this would be more than a two- or

4   three-day trial.

5          THE COURT:  It's a criminal jury trial.  Jury

6   selection takes time.

7          MR. DiRUZZO:  Yes, Judge.  I've had plenty of criminal

8   jury trials and criminal jury trials.  But I've never tried a

9   criminal jury trial in this district, and I've never done it

10  with your Honor.

11         In your experience, are we looking at a half day for

12  jury selection or a day or day and a half?

13         THE COURT:  On a single-case defendant that doesn't

14  involve an inflammatory subject matter like deaths or drugs or

15  child porn or something like that, usually you would be opening

16  in the afternoon of the day the jury selection began.  So it

17  would be, in the ordinary, less than a day but more than the

18  morning, something like that.  Usually 2:00 or 3:00 you'd be

19  opening.

20         You've got three different victims.  Each of them has

21  a narrative here.  With each of them, you would be perhaps

22  exploring issues of authorization and the like.  There may well

23  be agent witnesses or summary witnesses summarizing the flow of

24  money.  I don't know.  If seems like a very straightforward

25  case.

1           MR. DiRUZZO:  Yes.

2           THE COURT:  It's rare to get a criminal trial done in

3    two days.  It looks like a three- or four-day trial to me.

4           Government, you tell me if that's a wrong estimate.

5           MR. GUTWILLIG:  That's what the government would

6    estimate as well.

7           THE COURT:  Under the circumstances, I could, if you

8    needed to, perhaps do this on January 20.  I have a trial

9    beginning on the 27th.  I'm willing to do that.

10          (Pause)

11          THE COURT:  My druthers as between the two would be

12   March 9.  I'm willing to do it on January 20.  My strong advice

13   to you would be to do it on March 9 because if you choose --

14   I'll offer you the menu option.

15          But if you choose the 20th, I may well hold you to

16   that.  I expect I would.  And you may find yourself cramped for

17   time to the extent that, for example, there is defense

18   investigative work or subpoenas you want to get out.

19          I strongly urge you, understanding your client's

20   eagerness to get closure, to do the 9th of March.  It will give

21   you more time for important things.

22          MR. DiRUZZO:  How about this, Judge:  Could you give

23   me 24 hours to file a letter setting forth our preference

24   between January 20 and March 9?

25          (Pause)

```
 1              THE COURT:  I'm going to ask counsel to keep open both
 2    days.
 3              MR. DiRUZZO:  Okay.
 4              THE COURT:  I'm willing to receive a letter from each
 5    of you by the end of the day tomorrow with your views about the
 6    advisability of those days.
 7              However, for the avoidance of any doubt, I'm going to
 8    make the decision based on what I think is in the overall
 9    interests of all parties to the case, the defense, as well as
10    the Court, and the government as well.
11              I'll certainly give weight to your views, and I will
12    be eager to see how you explain them.  But just to be clear,
13    you need to be prepared for either date.
14              MR. DiRUZZO:  Understood.  I appreciate that
15    accommodation, Judge.
16              THE COURT:  That's fine.  Then let's do this.  It
17    seems to me that rather than setting a broader schedule, that's
18    going to turn on which trial date we choose.  I do want to set
19    an immediate schedule.  Discovery has already been produced.
20              Government, how quickly, if you're going to supersede,
21    can you supersede?
22              MR. GUTWILLIG:  Your Honor suggested I believe earlier
23    a month.  The government would expect to do it sooner than that
24    but would appreciate the month, if your Honor is willing to
25    grant that.
```

1          THE COURT:  Why don't I set a next date in the case in
2  a month or approximately or a little bit more than that for
3  now.  And that way, at least --
4          Mr. Teman, it's really unhelpful when you roll your
5  eyes at the Court.
6          THE DEFENDANT:  That wasn't at all my intention,
7  your Honor.
8          THE COURT:  I know, but it is what you did.
9          THE DEFENDANT:  No.
10          THE COURT:  If it isn't obvious already, I'm trying to
11  be solicitous of your interests here.
12          THE DEFENDANT:  I appreciate that, your Honor.
13          THE COURT:  I appreciate that it's frustrating and no
14  fun to be charged with bank fraud.  But in the end, the
15  government has brought charges against you.
16          In the end, I need to have conferences in order to
17  engage in the way I'm engaging with counsel to make sure we
18  have a fair, thoughtful process that's attendant to all the
19  issues.
20          So I appreciate your frustration at being here.  If
21  there is a future conference and your counsel and you want to
22  seek to waive your appearance here, I'll entertain an
23  application for that, if it's too much of an inconvenience or
24  bother.
25          But ultimately, your interests are at stake here.  And

1    you should be happy that I want to meet with counsel multiple

2    times to make sure that I've got my arms around all the issues

3    in this case and I'm trying to be fair.

4            THE DEFENDANT:  Your Honor, just to clarify.  I was

5    not expressing disappointment in your Honor who has been very

6    fair and thorough.  This case has, by my understanding, already

7    taken two months longer than it should have based on the Speedy

8    Trial Act.

9            Your Honor, my frustration is that I run a business.

10   The business has my name on it.  I have to pay my employees.  I

11   have to obviously pay rent and buy food.  I have to go out into

12   the world and date.

13           Right now, there is a very public and very false

14   accusation against me, no pun intended, indicting my

15   credibility and trustworthiness that is costing my ability to

16   pay those who work for me.

17           And it is in -- this is destroying my life.  This is

18   destroying my company.  This is destroying a half decade of

19   work.  Without going into details --

20           THE COURT:  May I suggest you not go into details.

21           THE DEFENDANT:  I'm not.

22           THE COURT:  You should be speaking to me through

23   counsel on a matter like this.  It's not in your interests to

24   keep talking because something you may say could ultimately

25   present an issue for you.

1           May I suggest, if you have something like this to
2    communicate about the scheduling of the case, that belongs in
3    your counsel's letter to me due tomorrow.
4           THE DEFENDANT:  Yes, your Honor.
5           THE COURT:  I was commenting on the facial expression
6    when I suggested we have a conference in a month from now.
7    That's all that I was focusing on.
8           THE DEFENDANT:  Yes, your Honor.  It was not
9    frustration at the Court, just the speedy thing.
10          MR. DiRUZZO:  Just so we're clear, Judge, I think it's
11   just a very frustrating thing.  Like most of my defendants,
12   they don't want to be here.  This is his first experience.  On
13   behalf of my client, I'll make sure that he's more cognizant of
14   his body language.
15          THE COURT:  That's fine.  I appreciate the
16   frustration.  I just want him to understand I'm trying to cross
17   the Ts and dot the Is here substantially in his interest.
18          (Pause)
19          THE COURT:  Counsel, here is what I'm going to
20   propose:  That we have a next conference on Wednesday,
21   December 4, and that I give the government a month to return a
22   superseding indictment.
23          And that way, assuming those dates work, I can receive
24   letters from you beforehand letting me know what your
25   intentions are as to motions practice.  By then we'll have a

1   trial date.

2           And when I meet with you in early December, we can

3   take stock of a schedule for litigating motions, setting a due

4   date for requests to charge, voir dire, and the like.

5           MR. DiRUZZO:  Judge, unfortunately, I've got a civil

6   tax case that is set.  To be perfectly blunt, I'm going to be

7   moving to continue that.  Of course, I have no idea if the

8   judge will grant it.  That involves the week of December 2.

9   And I have a criminal 666 case and tax evasion case where I'm

10  an expert witness.  That case I do believe is probably going to

11  go.

12          THE COURT:  When is that?

13          MR. DiRUZZO:  That's set for Saint Thomas the week of

14  December 2 as well.

15          THE COURT:  You're going to be potentially in two

16  places at once.

17          MR. DiRUZZO:  Right.  I'm going to move on the civil

18  tax case.  But on the criminal case where I'm an expert, I

19  anticipate that that's probably going to go to trial.

20          If the Court is amenable, would it be too much to ask

21  for November 22.

22          THE COURT:  One moment.

23          (Pause)

24          THE COURT:  How about November 22 at 2:30 p.m.?

25          MR. DiRUZZO:  That's great, Judge.

```
 1              THE COURT:  So why don't we do this:  Government, if
 2    you're going to supersede, supersede by Monday, November 18,
 3    please.
 4              MR. GUTWILLIG:  Yes, your Honor.
 5              THE COURT:  And please give defense counsel notice as
 6    to what a superseder would look like.
 7              Defense counsel, you can't move against a superseder
 8    that hasn't happened, but I'd like you to have some idea of
 9    what's coming --
10              By the end of the day on November 20, I'd like a
11    letter from each counsel letting me know, after you have
12    conferred, what their intentions are as to motions practice and
13    proposals for a schedule.  When I see you on November 22, I'll
14    therefore start off in an organized way.
15              MR. DiRUZZO:  Yes, your Honor.
16              THE COURT:  I think this works.  Government, you can
17    certainly decide, what, if any, changes you would be making to
18    the superseder by November 18.  I certainly encourage you to
19    get the superseder done earlier.  That would be helpful.  If
20    you don't, I'm giving you until the 18th.
21              MR. GUTWILLIG:  Yes, your Honor.
22              MR. DiRUZZO:  That works.
23              THE COURT:  Very good. is there a motion for an
24    exclusion of time until November 22?
25              MR. GUTWILLIG:  Yes, your Honor.  The government would
```

1    move to exclude time on the Speedy Trial Act until November 22

2    to continue to obtain and produce discovery and also to

3    consider superseding charges in this matter.

4             THE COURT:  Mr. DiRuzzo?

5             MR. DiRUZZO:  No objection, your Honor, with the

6    caveat that this waiver will not affect the time between -- the

7    pre-indictment time.

8             THE COURT:  Right.  The speedy trial exclusion purely

9    would obtain in between today, which is October 21, and our

10   next conference, which is November 22.

11            MR. DiRUZZO:  Agreed then.

12            THE COURT:  I will exclude that time under the Speedy

13   Trial Act, under Title 18, U.S. Code, Section 3161(h)(7)(A).  I

14   find that the interests of justice are outweighed by the

15   interests of the defense and the public in a speedy trial.

16            In particular, the excluded time will serve several

17   purposes.  All parties are now aware of the three victims that

18   the government contends who were the victims of the bank fraud.

19   The excluded time will permit the defense, in particular, to

20   prepare for trial and do discovery of its own with respect to

21   those matters.

22            The excluded time will also permit the government to

23   get any additional discovery to the defense, including from the

24   victim companies.  It will also allow all parties to take stock

25   of what appear to be plausible legal issues presented by the

1    current charges.  And to the extent the government reformulates

2    charges, it will allow all parties to consider the legal

3    viability of those charges.

4           I take it implicit in all of this is that there is a

5    possibility of a disposition as well; that the parties will be

6    discussing that?

7           MR. GUTWILLIG:  The government intends to discuss

8    that, your Honor.

9           MR. DiRUZZO:  Yes, your Honor.  I believe there are

10   certain facts the government is not aware of that hopefully

11   will change their view of the world.

12          THE COURT:  An additional reason, of course, for the

13   exclusion of time is to facilitate thoughtful discussions among

14   government and defense counsel.

15          May I suggest, defense counsel, that you have those

16   conversations sooner rather than later.  There is not a small

17   amount of inconvenience that I sense on behalf of the defense

18   table in being here.

19          To the extent that the case has the capacity to be

20   resolved pretrial, which can have advantages, including credit

21   under the guidelines and otherwise for acceptance of

22   responsibility, I encourage you to have those discussions.

23          I don't put my thumb on the scale as to the right

24   outcome here, but it's always a good idea for counsel to be

25   talking openly about what the terms of any disposition might

1    be.

2                    I encourage you to do that soon so that you all can

3    avoid any potential use of resources that ultimately would

4    prove unnecessary, if in fact the same disposition were to be

5    reached later.

6                    Anything further from the government?

7                    MR. GUTWILLIG:  Nothing further.  Thank you.

8                    THE COURT:  Anything further from the defense?

9                    MR. DiRUZZO:  No, your Honor.

10                   THE COURT:  I look forward to seeing you on

11   November 22.

12                   Just to be clear, I'd like letters from each of you by

13   the end of day today about the trial dates, and I will promptly

14   choose among them and set a trial date so that you can at least

15   protect that part and free up the other part of your schedule.

16   The menu options for all of us to consider are January 20 and

17   March 9.  Thank you.  We stand adjourned.

18                   MR. DiRUZZO:  Thank you.

19                   (Adjourned)

20

21

22

23

24

25

A-96.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -   X
                                   :
UNITED STATES OF AMERICA           :    UNSEALED
                                   :    SUPERSEDING
           - v. -                  :    INDICTMENT
                                   :
ARI TEMAN,                         :    S1 19 Cr. 696 (PAE)
                                   :
           Defendant.              :
                                   :
- - - - - - - - - - - - - - - -    X


## COUNT ONE

### (Bank Fraud)

The Grand Jury charges:

1.    From at least in or about April 2019 up to and
including at least in or about June 2019, in the Southern
District of New York and elsewhere, ARI TEMAN, the defendant,
willfully and knowingly, did execute and attempt to execute a
scheme and artifice to defraud a financial institution, the
deposits of which were then insured by the Federal Deposit
Insurance Corporation, and to obtain moneys, funds, credits,
assets, securities, and other property owned by, and under the
custody and control of, such financial institution, by means of
false and fraudulent pretenses, representations, and promises,

A-96.2

to wit, TEMAN deposited counterfeit checks into an account held at a particular financial institution in the name of three third parties (respectively, "Victim-1," "Victim-2," and "Victim-3").

(Title 18, United States Code, Section 1344.)

## COUNT TWO

### (Bank Fraud)

The Grand Jury further charges:

2.    In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, TEMAN deposited counterfeit checks into an account held at a particular financial institution in the name of Victim-3 and another third party ("Victim-4").

(Title 18, United States Code, Section 1344.)

## COUNT THREE

### (Aggravated Identity Theft)

The Grand Jury further charges:

3.    In or about March 2019, in the Southern District of

2

New York and elsewhere, ARI TEMAN, the defendant, did knowingly

transfer, possess, and use, without lawful authority a means of

identification of another person, during and in relation to a

felony violation enumerated in Title 18, United States Code,

Section 1028A(c), to wit, during and in relation to the bank

fraud charged in Count Two of this Indictment, TEMAN deposited a

check using the personal identifying information of Victim-3.

   (Title 18, United States Code, Sections 1028A(a)(1), 1028A(b),
                           and 2.)

## COUNT FOUR

### (Aggravated Identity Theft)

   The Grand Jury further charges:

   4.   In or about March 2019, in the Southern District of

New York and elsewhere, ARI TEMAN, the defendant, did knowingly

transfer, possess, and use, without lawful authority a means of

identification of another person, during and in relation to a

felony violation enumerated in Title 18, United States Code,

Section 1028A(c), to wit, during and in relation to the bank

fraud charged in Count Two of this Indictment, TEMAN deposited a

check using the personal identifying information of Victim-4.

   (Title 18, United States Code, Sections 1028A(a)(1), 1028A(b),
                           and 2.)

A-96.4

## FORFEITURE ALLEGATION

5.   As a result of committing the offenses alleged in Counts One and Two of this Indictment, ARI TEMAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Asset Provision

6.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States

4

A-96.5

Code, Section 2461(c), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described above.

        (Title 18, United States Code, Section 982;
       Title 21, United States Code, Section 853; and
        Title 28, United States Code, Section 2461.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

5

A-96.6

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

v.

ARI TEMAN,

Defendant.

---

**SUPERSEDING**
**INDICTMENT**

S1 19 Cr. 696 (PAE)

(18 U.S.C. §§ 1344, 1028A and 2.)

GEOFFREY S. BERMAN
United States Attorney

_____
Foreperson

---

11/12/2019
(CA)

SUPERSEDING INDICTMENT FILED

KH MARKER
USAO

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          19 CR 696 (PAE)

5    ARI TEMAN,

6                   Defendant.
                                          Conference
7    ------------------------------x

8                                         New York, N.Y.
                                          November 21, 2019
9                                         2:40 p.m.

10   Before:

11
                         HON. PAUL A. ENGELMAYER,
12
                                          District Judge
13
                             APPEARANCES
14
     GEOFFREY S. BERMAN
15        United States Attorney for the
          Southern District of New York
16   BY:  JACOB GUTWILLIG
          Assistant United States Attorney
17
     MARGULIS GELFAND
18   BY:  JUSTIN K. GELFAND
             -AND-
19   DiRUZZO & COMPANY
     BY:  JOSEPH A. DiRUZZO, III
20        Attorneys for Defendant

21

22

23

24

25
```

A-96.8

JBNYCEMC                                                          2

```
 1            THE COURT:  Good afternoon, everyone.  Let me take the
 2    role.
 3            Who do I have for the government?
 4            MR. GUTWILLIG:  Good afternoon, your Honor.  Jacob
 5    Gutwillig for the government.
 6            THE COURT:  Very good.  Good afternoon, Mr. Gutwillig.
 7            For Mr. Teman?
 8            MR. GELFAND:  Good afternoon, your Honor.  Justin
 9    Gelfand and Joseph DiRuzzo for Mr. Teman.
10            THE COURT:  And you are?
11            MR. GELFAND:  Gelfand, your Honor.
12            THE COURT:  And Mr. DiRuzzo?
13            MR. DiRUZZO:  Right.
14            THE COURT:  Good afternoon, Mr. Gelfand.  Good
15    afternoon, Mr. DiRuzzo. and good afternoon to you, Mr. Teman.
16    All right.
17            I think our first order of business is to arraign the
18    defendant on the superseding indictment.
19            Just briefly, when was it returned, Mr. Gutwillig?
20            MR. GUTWILLIG:  The superseding indictment was
21    returned on November 12 of this year.
22            THE COURT:  All right.  I'm going to arraign the
23    defendant in a moment.  But when we're done with that, I'm
24    going to be asking you to explain, just to make sure I
25    understand, essentially what's being charged in each count
```

1    going beyond the recitation of the charging language

2    essentially.

3              I'm trying to get a better understanding of what

4    happened here or what the government's allegation is as to the

5    conduct that underlies each count.  So just be prepared to do

6    that.  I'll also then be taking stock with you as regards to

7    discovery.

8              With that, Mr. Gelfand, have you had an opportunity to

9    review with your client the arraignment questions?

10             MR. GELFAND:  Yes, your Honor.  I have.

11             THE COURT:  Then let me just ask Mr. Teman to rise.

12             (Defendant sworn)

13             THE COURT:  Very good.  Thank you.

14             I asked you a number of questions earlier.

15             Has there been any change with respect to any medical

16   treatment that you're having or anything like that?

17             THE DEFENDANT:  No, your Honor.

18             THE COURT:  In the past 24 hours, have you taken any

19   drugs, medicine, or pills or drunk any alcoholic beverages?

20             THE DEFENDANT:  No, your Honor.

21             THE COURT:  Is your mind clear today?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you understand what's happening in this

24   proceeding?

25             THE DEFENDANT:  Yes, your Honor.

A-96.10

 1              THE COURT:  Mr. Gelfand, do you have any doubt about

 2     your client's clarity of mind today?

 3              MR. GELFAND:  No, your Honor.

 4              THE COURT:  Mr. Teman, have you received a copy of the

 5     superseding indictment, the S1 indictment?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  Have you read it?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  Have you consulted with your counsel about

10     it?

11              THE DEFENDANT:  Yes, your Honor.

12              THE COURT:  Do you want me to read it out loud, or do

13     you waive its public reading?

14              THE DEFENDANT:  I waive it, your Honor.

15              THE COURT:  Thank you very much.

16              How do you plead to the charges?

17              THE DEFENDANT:  Not guilty.

18              THE COURT:  Thank you.  You may be seated.

19              All right.  Having taken care of the arraignment, let

20     me ask government counsel to, in as much detail as you can --

21     there are four charges here.  Tell me about them and the

22     conduct on which they are based.

23              MR. GUTWILLIG:  Yes, your Honor.  So the first count

24     in the superseding indictment is the same as the first count in

25     the original indictment.  The conduct underlying that briefly

1    is what the government alleges is that Mr. Teman in

2    approximately April of this year went into a branch of a

3    financial institution and deposited approximately 27 fraudulent

4    checks.

5            The checks were written on behalf of three entities,

6    and they were deposited into an account, the GateGuard account,

7    which the government believes is owned and operated by

8    Mr. Teman.

9            Subsequently, certain of those funds were transferred

10   to a second account the government believes is owned or

11   operated by Mr. Teman.  The Friend or Fraud account.

12           THE COURT:  The Friend or Fraud?

13           MR. GUTWILLIG:  That's correct.

14           THE COURT:  Is it really called "Fraud"?

15           MR. GUTWILLIG:  I believe the account is for the

16   Friend or Fraud which my understanding is a business startup by

17   Mr. Teman.

18           THE COURT:  Okay.

19           MR. GUTWILLIG:  At any rate, certain of those funds

20   initially deposited into the GateGuard account were

21   subsequently transferred into the Friend or Fraud account and

22   into another account associated with Mr. Teman.

23           Later -- I think it was in approximately late May, or

24   it could have been early June.  I think it's late May --

25   Mr. Teman went to a branch of a financial institution located

A-96.12

1  here in Manhattan and made a withdrawal from one of those

2  accounts certain of the funds.

3          So in the government's view, this is, for lack of a

4  better term, the first scheme -- the bank fraud on the

5  financial institution, depositing these checks which the

6  government's position is Mr. Teman did not have authorization

7  from those entities to deposit which were deposited into one of

8  his accounts, moved around, some of them were withdrawn.

9          THE COURT:  Let's pause on that.

10         Does that capture essentially the conduct underlying

11 Count One?

12         MR. GUTWILLIG:  That's correct.

13         THE COURT:  Just so I understand what the allegation

14 is as to what makes this fraudulent, are the checks themselves

15 the checks, if you will, of the account holder, or are the

16 checks themselves, putting aside any writing on them,

17 fabricated?

18         MR. GUTWILLIG:  My understanding is that the checks

19 are themselves fabricated.

20         THE COURT:  Okay.

21         MR. GUTWILLIG:  In the checks, typically, as I

22 understand it, a check would have in the bottom right-hand

23 corner the signature of the individual depositing it or

24 something like that.

25         These checks say -- I'm paraphrasing here -- this is a

1    legal check.  It must be deposited to GateGuard, and then the

2    phone number.

3            And the checks are issued on behalf of these three

4    entities who maintain that although I believe at least two, and

5    I think perhaps all three of them had -- and we've produced

6    statements from these entities from the individuals who worked

7    there early to the defense -- ceased there business operations

8    with Mr. Teman at that point and not given permission for him

9    to draw on their accounts which he did through these checks.

10           THE COURT:  What is the name of the entity or entities

11   on whose account the original wave of checks, the 27, are

12   drawn?

13           MR. GUTWILLIG:  So there are three entities.  One

14   is -- let me just make sure I get them correct.  I believe one

15   is called -- if your Honor will just bear with me for a moment.

16           THE COURT:  Take your time.

17           MR. GUTWILLIG:  One is called ABJ Lenox LLC.  One is

18   called ABJ Milano, LLC.  And one is called -- I believe it's

19   405 West Realty or Coney Realty.

20           THE COURT:  You began to describe this at the last

21   conference, and forgive me for not remembering.

22           Does he have some affiliation, employment, contract,

23   or does he have some association with one or all of those

24   entities?

25           MR. GUTWILLIG:  So this is, as I understand it, the

1   crux of the dispute between the parties which is, as I

2   understand it, Mr. Teman believes that he had a contract with

3   each of these entities or a contract or some sort of terms of

4   service that was agreed to at some point that authorized him to

5   draw on their accounts in the event that he believed that they

6   owed him money, not artfully phrased.  But as I understand it,

7   terms of service.

8            THE COURT:  He has some contractual relationship that

9   somehow -- the allegation or the defense is that he had some

10  permission to do something that under some circumstances

11  results in the withdrawal of money.

12           MR. GUTWILLIG:  And the government's position is that,

13  first off, I'm not even sure if there is a contract.  If there

14  is, if its enforceable.  Even if it were enforceable, I don't

15  think you can authorize -- the government's position would be

16  that one cannot authorize you to essentially draw on their

17  account, unless you're an authorized signatory or something

18  else on the account.

19           THE COURT:  Speak into the mike a little more.

20           I think it would be well worth your running to ground

21  what the account holder says because there are important

22  distinctions to be mindful here between the civil and the

23  criminal law.

24           MR. GUTWILLIG:  And the account holders say that he

25  was not authorized to do this.  I understand that there is also

1  not necessarily -- not the same conduct here, but I understand

2  that there is a pending civil suit against Mr. Teman here in

3  Manhattan Supreme Court that is different conduct but related

4  to the same contracts.

5          The government's position is that this is not a

6  business dispute.  This is a bank fraud.

7          THE COURT:  Right.  But in other words, from your

8  perspective, he literally himself or somebody at his direction

9  or somebody who he's affiliated with manufacturers the actual

10  thing we're calling a check.  It was not a pre-existing check

11  belonging to the account holder, number one.

12          Number two, the directive or statement on the check,

13  to wit, that the account holder authorizes the withdrawal to a

14  payee of a designated sum, is also a false representation that

15  the account holder gave that direction.

16          MR. GUTWILLIG:  Yes.

17          THE COURT:  Okay.  When we spoke before, there was an

18  issue that I had raised that I had a curiosity about involving

19  venue.  If memory serves, that first transaction with the

20  deposit of the 27 fraudulent checks I think occurred in a

21  different state.

22          MR. GUTWILLIG:  That's correct.

23          THE COURT:  Walk me through the venue issue, the

24  locations here.

25          MR. GUTWILLIG:  So the deposit occurred in the

JBCASE.19                                                                      10

1    Southern District of Florida, the physical deposit I should

2    say.  In the government's view, in the first instance, the

3    account, the GateGuard business, is based in New York.

4              THE COURT:  Sorry.  The account?

5              MR. GUTWILLIG:  The GateGuard account and the Friend

6    or Fraud account.

7              THE COURT:  That's the account into which the 27

8    checks are in the first instance deposited.

9              MR. GUTWILLIG:  Into the GateGuard account.

10             THE COURT:  So Mr. Teman's account, if you will --

11   it's presumably a nationwide bank.  But his account is in

12   New York.

13             MR. GUTWILLIG:  My understanding is that the business

14   account is in New York.  Second, with respect to the completion

15   of the first scheme or the bank fraud, as it were, Mr. Teman

16   then goes to New York and, here in the Southern District of New

17   York, withdraws funds from one of these accounts.

18             And even if your Honor were not inclined -- the venue

19   argument on the first piece, that the accounts and business are

20   based in New York, the second that he then comes to New York

21   and then withdrawals from one of these accounts certain of the

22   proceeds of one of these checks.

23             THE COURT:  May I ask you.  I raised this last time,

24   but I remain concerned about it.

25             I assume that there will be at some point an argument

1    to me that the bank fraud is completed when, on false

2    pretenses, the money is removed from the victim account and put

3    into the GateGuard account.

4           And whatever else happens to it afterwards may be

5    money laundering.  It may be three other federal offenses, but

6    it's not bank fraud.  That is just a transfer of money.  It's a

7    transaction using the fruits of a completed bank fraud.

8           Have you consulted with appeals to make sure that your

9    theory about why this is an ongoing act of bank fraud as

10   opposed to a financial transaction involving a specified

11   unlawful activity but a completed bank fraud is incorrect?

12          MR. GUTWILLIG:  I consulted with appeals regarding

13   both the multiplicity issue your Honor had raised and also with

14   respect to money laundering or potential other charges.  The

15   view is that the bank fraud is of a piece all together going

16   first to the transfer and then the withdrawing.

17          Even in the first instance, that the depositing into

18   those accounts that are based in New York would serve as venue

19   here.  I'm happy to go back to appeals on that specific point.

20          THE COURT:  That point -- I thought I had been clear

21   in raising it.  The multiplicity is a separate issue.

22          But on the venue issue, I have no interest in

23   presiding over a trial where there is a spottable and

24   presumably curable legal deficiency which can be spotted at the

25   first and second conferences.

1          But my worry here is that -- and I haven't researched

2     this, but I have some familiarity with bank fraud -- there is a

3     nonfrivolous argument that the bank fraud itself is complete

4     when the financial institution that was the custodian of the

5     money parts with it and the money plops down in the defendant's

6     account.

7          Whatever else happens to the money thereafter could be

8     charged in other ways presumably but that it's no longer a bank

9     fraud.  It's simply a transaction with the fruits of a

10    completed bank fraud.

11         Has that precise question been vetted by the

12    government?

13         MR. GUTWILLIG:  I of course consulted with my

14    supervisor before charging and the superseding indictment on

15    venue and other points.  As to that specific question, whether

16    it was completed, I will go back.

17         THE COURT:  You need to because I think it's a

18    substantial question.  And the thrust of what you're trying to

19    allege here I understand, but I think you need to be absolutely

20    sure that that actually squares with bank fraud.

21         Presumably, the financial institution that you're

22    claiming was defrauded is the financial institution that housed

23    the victims' money, not the financial institution into which

24    the defendant held his money.

25         Correct?

JBGSEM19

1     MR. GUTWILLIG:  I think the allegation is as to --
2  yes.  I suppose that would be it.  The way that it's currently
3  conceived though is that the financial institution that he
4  deposited these checks into is the one upon which the fraud is
5  being perpetrated.
6     THE COURT:  I see.
7     Why is that?  Why is the depositing institution as
8  opposed to the surrendering institution the victim of the bank
9  fraud?
10     MR. GUTWILLIG:  I suppose it could be done either way,
11  but the checks are being deposited, and he's getting credit
12  into his account for funds that are not his.
13     I take your Honor's point that perhaps the fraud is on
14  the institution as to which the money is coming rather than the
15  institution which accepts the money into his account.
16     THE COURT:  He goes into a branch of his bank in
17  Florida and presents a check drawn on an account in Florida of
18  the victim.
19     MR. GUTWILLIG:  Drawn on an account in Florida of the
20  victim.  In terms of -- the three entities are based here from
21  which the funds were drawn.  The three entities -- ABJ Milano,
22  ABJ Lenox and Coney Realty -- are all New York based, not
23  Florida based.
24     THE COURT:  And their bank is where?
25     MR. GUTWILLIG:  Their bank is I believe it's either

1    JPMorgan Chase or in one of the cases Signature Bank.

2              THE COURT:  The issue I'm having is I'm having a

3    little difficulty pinning down, and it may be that you're

4    saying it clearly, and I'm not getting it.  But it may be

5    otherwise.

6              Which bank is the victim here?  Usually, but not

7    always, in a bad check case the victim is usually conceived as

8    that as the institution that parts with the money for obvious

9    reasons.

10             And the premise is that you're representing to that

11   bank that the directive being given to it, the check which

12   conveys an implicit or explicit message of authorization by the

13   account holder, is in fact an actual message on behalf of the

14   account holder.  It's a direction from the account holder.

15             So if the check is forged, it's usually conceived of

16   as a false representation to the custodial bank that the

17   account holder has directed the withdrawal of those funds.

18             You're offering a different theory which is that the

19   bank into which the money will flow from -- ultimately the

20   victim bank is also itself, in some sense, a victim.

21             Having thought about that one, I want to make sure

22   that you've got legal authority for the particular way you

23   framed this and that you're in a position to articulate clearly

24   to me and to the other table the theory here as to what bank or

25   banks are being charged as the victim here.

1          This is tricky stuff.  I bumped into tricky bank fraud

2    issues along not the same lines but similar ones when I was in

3    general crimes 30 springs ago.  I remember what a mess this can

4    be.

5          I want to make sure that -- we're still early in the

6    case -- we have clarity in the formulation of the indictment so

7    we don't wind up with some hiccup later on.

8          MR. GUTWILLIG:  Yes, your Honor.

9          THE COURT:  But right now, as you understand it, the

10   scheme which says to obtain monies, funds, credits, etc., is

11   not actually directed -- as you understand Count One, it's not

12   alleging that the custodial bank, the victims' bank, is the

13   bank that is defrauded.

14         But, rather, it's the defendant's own bank that stands

15   to take in money based on a false statement made to the other

16   bank, please release the money.  Its release has been

17   authorized by the account holder.

18         MR. GUTWILLIG:  So that is the conception under which

19   Count One is charged.  That said, the way that the indictment

20   is framed, if the victims are conceived of as the custodial

21   banks in the first instance, I'm not sure if that changes the

22   actual charge with respect to Count One.

23         THE COURT:  The problem is though that you can't

24   reformulate the charge after the indictment.  In other words,

25   the defense will surely ask for particularization, if you

1   haven't given it already.

2           While there are very strong limits to what is a proper

3   subject of particulars, I'd be surprised if they weren't

4   entitled to the identification of the bank, that is, the

5   victim.

6           MR. GUTWILLIG:  So to that point, all of the images of

7   the checks have been produced.

8           THE COURT:  Right.

9           MR. GUTWILLIG:  So with respect to that, certainly the

10  government has no problem identifying which banks those

11  accounts were held at and, indeed, has subpoenaed additional

12  records from those banks in order to be able to produce them to

13  the defense.

14          THE COURT:  That's all fine.  The issue is really what

15  the charge connotes.  I'm a little uncertain as to what you're

16  saying the charge is.  I think that you're saying that the bank

17  here that is the subject of the bank fraud is Mr. Teman's bank,

18  not ABJ's bank.

19          MR. GUTWILLIG:  That is how I have conceived it.

20  However, I take your Honor's point and will run to ground

21  whether the victim formulation of which institution, depositor

22  institution, is correct.

23          THE COURT:  We have a trial in two months.  The

24  underlying facts are not likely to change if you wind up

25  superseding to correct any misstep here, if there is one.  I'm

1    not saying there is or isn't.

2           But there is a related sequence of issues here that

3    needs closer attention.  One is who is the bank being

4    victimized.  More to the point is the theory of prosecution one

5    that is captured by bank fraud.

6           And then there's a related issue involving venue which

7    is essentially if the money leaves -- if the bank that is

8    victimized is ultimately the ABJ bank, how is that bank fraud

9    not completed once the money lands in the next bank over which

10   appears not to be in New York.

11          If the victim is the defendant's bank, what's the

12   extra victimization between -- and if that theory is even

13   viable, what's the extra victimization that occurs that's

14   covered by the bank fraud statute when Mr. Teman takes money

15   that by that point is in his account and switches it to another

16   account.

17          That sounds like a financial transaction involving

18   specified unlawful activity, 1957.  It doesn't sound like 1344

19   to me.  You'll need to run that to ground, but I'm officially

20   concerned about it.  So let's nail that down.

21          MR. GUTWILLIG:  Sure.

22          THE COURT:  So that's the theory of bank fraud.  And

23   it picks up all 27 checks.

24          MR. GUTWILLIG:  It picks up the first 27 checks.

25          THE COURT:  And the 27 checks there I take it are

1    properly, from the government's perspective, compressed into

2    one count because essentially they're birds of a feather -- the

3    same defendant, the same scheme, the same victim, and the three

4    companies are essentially corporate affiliates.

5             So there is no need to break those out into separate

6    counts?

7             MR. GUTWILLIG:  That is correct, except as to the last

8    point, my understanding is that two of the companies are

9    affiliates and one is a separate company.

10            So ABJ Lenox and ABJ Milano it is my understanding are

11   operated by the same company.  Coney Realty, to my

12   understanding, is separate.  However, as your Honor said, the

13   scheme or all together happened at the same time at the same

14   place with the group of checks.

15            THE COURT:  So what would the instruction to the jury

16   be if hypothetically they found that, for whatever reason,

17   there was no liability as to the ABJ entities but there was as

18   to the third entity, Realty?

19            MR. GUTWILLIG:  Coney Realty I think.

20            THE COURT:  Coney, C-o-n-e-y?

21            MR. GUTWILLIG:  C-o-n-e-y.

22            THE COURT:  What happens then?

23            MR. GUTWILLIG:  This is the issue I raised with

24   appeals.  My understanding -- and I spoke briefly with defense

25   counsel about whether there was multiplicity or duplicity,

1    whichever one it would be.

2              I suppose, taking a step back, it relates to

3    your Honor's first question with respect to who are the actual

4    victim banks.  And to your Honor's point, if it were conceived

5    of that way, then there could potentially be an issue as to

6    finding liability as to two but not the third.

7              So the government will have to go back and look at

8    that with respect to multiplicity.  The multiplicity issue has

9    been flagged for appeals and has been talked through.  I'm

10   happy to go back.

11             THE COURT:  We'll get to this a little later.  I

12   understand there will be motion practice here.  It may be to

13   the extent I have been unclear about the concerns I have about

14   various charging infirmities that are possibly present.  It may

15   be that the defense will conceive of this in a different way or

16   whatnot.

17             I'm just eager to not slow us up by a completely

18   foreseeable issue.  But if that were the case, presumably you

19   would then seek to supersede to avoid these problems.

20             In a situation where you've got multiple victims

21   covered by parallel schemes, there may be wisdom in the

22   government's considering what value there is in pressing them

23   into the same count.  I'm just saying.

24             So what's Count Two?

25             MR. GUTWILLIG:  Count Two is -- so earlier in

1  approximately March of 2019, the government alleges that

2  Mr. Teman deposited two additional checks via mobile deposit

3  into the same financial institution, also into the GateGuard

4  account.

5            Those two checks were issued -- this is one on behalf

6  of the first entity -- I'm sorry.  The third entity I mentioned

7  earlier, Coney Realty, and a second check on behalf of a fourth

8  entity which is a new victim as it were.

9            THE COURT:  A new what?

10           MR. GUTWILLIG:  A new entity.  So the first three

11  entities, the earlier fraud, which is captured by Count Two, is

12  on the basis of two checks that were deposited mobily, one from

13  entity three and one from entity four which has not been

14  mentioned earlier.

15           THE COURT:  Sorry.  These are independent of the 27

16  checks?

17           MR. GUTWILLIG:  They're independent of the 27, but one

18  of the two was ostensibly issued by one of the entities from

19  the first.

20           THE COURT:  One of the same victims.

21           MR. GUTWILLIG:  Correct.

22           THE COURT:  This is a separate bank fraud.  These are

23  also, you contend, counterfeit checks.  The checks themselves

24  are not what was received, if you will, by the account holder.

25           MR. GUTWILLIG:  Correct.  These checks differ from the

JB0214J2

1    27 later checks in that in the bottom right-hand corner of

2    these two checks, there is a signature; whereas, in the 27

3    later checks, there is kind of a printed boilerplate of

4    something.

5              THE COURT:  Right.

6              MR. GUTWILLIG:  So the individuals behind these

7    accounts, the ultimate owners of these accounts it's the

8    government's contention did not sign these checks which is what

9    the basis of Counts Three and Four for aggravated identity

10   theft are based on the conduct in Count Two.

11             THE COURT:  This is bank fraud.  This is not

12   aggravated identity theft.

13             MR. GUTWILLIG:  Count Two is bank fraud.

14             THE COURT:  I'm focusing on Count Two.

15             MR. GUTWILLIG:  Sure.

16             THE COURT:  These are two checks in addition to the

17   27, but the manner of the alleged bank fraud is different

18   because it involves affixing an unauthorized wet signature, if

19   you will.

20             MR. GUTWILLIG:  Yes.  And also because these checks,

21   like the other checks, were not authorized, it's the

22   government's understanding, by the entities that issued them.

23             THE COURT:  And this is a fourth victim, not one of

24   the three that you mentioned earlier.

25             MR. GUTWILLIG:  The two checks have two separate

1   victims.  One is one of the three I mentioned earlier, and the

2   second set was from a fourth victim.

3          THE COURT:  I see.

4          Who is the fourth victim?

5          MR. GUTWILLIG:  The name -- I would need to look.  In

6   the superseding indictment, it's identified as victim 4.  I

7   would need to find the name of the company which I don't recall

8   offhand.

9          THE COURT:  By the way, what's the aggregate amount of

10  the Count One checks approximately?

11         MR. GUTWILLIG:  I believe it's approximately $260,000,

12  but I would just like to check.

13         THE COURT:  I'm just trying to get a ballpark.

14         What about the Count Two checks?

15         MR. GUTWILLIG:  Each of them I believe was

16  approximately $16,000 or $18,000.

17         THE COURT:  Great.  Thank you.

18         So tell me about Count Three.  Forgive me.  My bad.

19         Count Two, just come back to venue on this.  Again,

20  it's charged as a Southern District of New York offense.

21         Where does this occur?

22         MR. GUTWILLIG:  So, again, based on where the mobile

23  deposit, the IP address of the mobile deposit, we believe that

24  the device that accessed and did the mobile depositing was

25  within the Southern District of New York.

1          THE COURT:  So there the defendant, the actor here, is

2     actually in the SDNY electronically directing traffic.

3          MR. GUTWILLIG:  I can't say.  Presumably based on the

4     IP address if he's accessing his own account, yes.

5          THE COURT:  It's either he or circumstantially

6     somebody at his direction exercising his control.

7          MR. GUTWILLIG:  Correct.  In addition to that, again,

8     it's in the same GateGuard account in the first instance and

9     then transferred to the Friend or Fraud account.

10         Just to kind of tie this together a little bit, this

11    happened first.  The government learned of this in further

12    investigation.  This happened in about March of 2019.

13         So these to funds -- I believe they're each $16,000.

14    So call it $32,000 -- are deposited into the GateGuard account.

15         THE COURT:  Which is?  That's the defendant's account?

16         MR. GUTWILLIG:  The defendant's account, correct.

17         THE COURT:  When the defendant opened it, he opened it

18    in New York, but it's a national account like a Citibank

19    account?

20         MR. GUTWILLIG:  So I have not confirmed that when he

21    opened it, he opened it in New York.  That is my understanding,

22    but I don't want to represent that as a certain fact in the

23    record.  The business, the GateGuard business, to which this

24    account flowed, is based in New York.

25         THE COURT:  The theory of venue on Count Two is

1    essentially -- the frontline theory is the person who was

2    actually giving the electronic directive, the act of

3    presentment of the check, is doing that from an IP address in

4    this district.

5              MR. GUTWILLIG:  Into a business account based in this

6    district.

7              THE COURT:  It's a bank account for a business whose

8    brick-and-mortar operations may be in this district.  But the

9    bank account -- you're not in a position right now to say where

10   it is.

11             MR. GUTWILLIG:  Correct, although I believe it is in

12   New York, but I will confirm it.

13             THE COURT:  To the extent you're relying on a separate

14   theory that the company has business operations in New York,

15   whether or not that might supply venue in civil law or

16   something else, the requirements for bank fraud are different.

17             If I run a Thai restaurant in China Town over here but

18   have a bank account in Florida, it isn't clear to me that the

19   fact -- and somebody defrauds the bank in Florida of the money

20   of the Thai restaurant, it's not obvious to me that because

21   they serve food here in New York you've got a bank fraud in

22   New York.  I'd be wary about that theory, word to the wise.

23             MR. GUTWILLIG:  Yes.

24             THE COURT:  Tell me about Count Three.

25             MR. GUTWILLIG:  So Count Three is based on one of the

1    two checks in Count Two.  The signature on the check we believe

2    is not the individual who was associated with the account,

3    associated with the account holder and the ultimate owner, and

4    the same thing for Count Four.

5              THE COURT:  In each of those cases, again, the venue

6    you say is clear because it's literally physically occurring

7    electronically in New York.  That's where the communication

8    embedded the misappropriated identity is taking place.

9              MR. GUTWILLIG:  That is my understanding, and also

10   that these companies, as I understand it, are based in New York

11   which I take your Honor's point about China Town, but yes.

12             THE COURT:  An interesting question about how that

13   affects venue on aggravated identity theft.  It's a different

14   offense than bank fraud.  But usually the venue involves

15   something about the actus reus of the crime, not some

16   background of the victim.

17             That's the distinction between personal jurisdiction

18   in the civil sense and venue in the criminal sense.  I don't

19   want to keep putting you on the spot about this, but the

20   theories of venue relating to this count I take it have been

21   vetted up the chain?

22             MR. GUTWILLIG:  I have discussed the charging

23   decisions with my supervisor up the chain.  I will go back and

24   address all of this.

25             THE COURT:  Please do.  I'm not trying to give you a

1  hard time.  I'm just trying to make sure we litigate this case

2  on the merits and don't have some late-stage hiccup.

3          MR. GUTWILLIG:  Yes.

4          THE COURT:  Tell me, since we met at the initial

5  conference, first of all, as to the discovery identified back

6  then, was it all produced and on the time table projected?

7          MR. GUTWILLIG:  Yes.  I believe so.  I laid out in the

8  government's status letter that we produced an initial wave of

9  discovery prior to the first status conference and then

10  followed up on November 6 with additional discovery and then

11  Wednesday with additional discovery.

12          Certain of that discovery has included -- for example,

13  we reached out to these entities -- I don't want to use the

14  word "victim" loosely but the entities from which the checks

15  were allegedly fraudulently issued.

16          And certain of the communications with Mr. Teman from

17  the people or person who runs those entities were produced

18  which is, of course, 3500 material which is not Rule 16 but has

19  been produced early.

20          And also reports, agent reports, to provide a fuller

21  picture of what's gone on here and certain of the statements

22  from those who run the entities that these checks were not

23  authorized.

24          THE COURT:  All right.  To what degree have you

25  obtained further discovery since the initial conference?

 1              MR. GUTWILLIG:  It's not been voluminous.  It has been

 2    some emails, some additional bank records, some agent reports.

 3    There are some outstanding subpoenas.  We also will of course

 4    continue to reach out to these entities for any additional

 5    information they may have and produce that as quickly as we

 6    receive it.

 7              THE COURT:  Has everything that you presently have in

 8    hand been produced?

 9              MR. GUTWILLIG:  Yes.

10              THE COURT:  And I take it the representation is this

11    is not voluminous.  There may be the fruits of a bank account

12    that take up a little bit of space because they're canceled

13    checks.  But in the main, this is a rather limited amount of

14    discovery?

15              MR. GUTWILLIG:  That's correct.

16              THE COURT:  I take it, at least for now, this is not a

17    heavy email case or anything like that?

18              MR. GUTWILLIG:  No.  To the extent that there is

19    voluminous email traffic, I don't know.  But it's not the case

20    that we've gone out and executed a search warrant on an email

21    address which will take months and months to review.

22              THE COURT:  Very good.

23              Any additional searches or seizures that you have

24    become aware of or executed since the first conference?

25              MR. GUTWILLIG:  No, your Honor.

A-96.34

JBCASE.1                                                                    28

1              THE COURT:  Thank you.  Very helpful.

2              Mr. Gelfand or Mr. DiRuzzo, who will be speaking for

3      the defense?

4              MR. GELFAND:  I will be speaking, your Honor.

5      Mr. Gelfand.

6              THE COURT:  Mr. Gelfand, before we start talking about

7      the details of the schedule you propose, is there anything you

8      want to raise or put on the table?

9              MR. GELFAND:  No, your Honor.  We appreciate the

10     discovery that's been disclosed to date.  Mr. Gutwillig has

11     informed us that there are some outstanding subpoenas.  That's

12     par for the course obviously.

13             THE COURT:  Yes.

14             MR. GELFAND:  But obviously neither he nor I know

15     right now what that's going to entail in terms of what the

16     government is going to get.

17             THE COURT:  Right.  As to discovery, every indication

18     is that this is a very manageable case in terms of the volume

19     of discovery.

20             MR. GELFAND:  Yes, your Honor.  Having prosecuted and

21     defended white-collar cases throughout my career, I will tell

22     you that it's the least amount of discovery I've ever seen in a

23     white-collar case.

24             THE COURT:  May I ask you this question.  I don't

25     purport to understand the business or other relationship that

1    Mr. Teman and the people who are alleged to have been his

2    business victims.  Put aside the bank victims but the folks

3    associated with let's say the 27 checks.

4             I don't purport to understand what that is.  But is

5    that going to be part of the narrative of this case,

6    essentially the relationship or dealings between Mr. Teman and

7    the people whose accounts the money comes from?

8             MR. GELFAND:  Yes, your Honor.

9             THE COURT:  Do you have the documentation that you

10   ultimately will want or need to adequately vet whatever

11   theories you have about how that relationship bears on issues

12   like authorization here?

13            MR. GELFAND:  Yes, your Honor, with one brief caveat,

14   and that's that we do intend to issue a handful of defense

15   subpoenas to supplement our theory, depending on what's

16   returned.  However, we do have sufficient documentation to

17   support what we anticipate will be one of our theories of

18   defense.

19            THE COURT:  Have you made Rule 16 discovery then to

20   the government?

21            MR. GELFAND:  We have not yet, your Honor, in part,

22   because the government's discovery has been kind of an ongoing

23   disclosure.

24            THE COURT:  Has the government made a Rule 16 demand

25   on you?

1          MR. GELFAND:  The government has not made a formal

2     Rule 16 demand.  We have maintained the discovery.  We will

3     make a Rule 16 demand.

4          THE COURT:  I expect you to.  Just because their

5     discovery is rolling -- and it sounds like Mr. Gutwillig is

6     caught up.  He likely has the caveat that there are outstanding

7     issues, but it sounds like he's caught up in his obligations.

8          Regardless of whether there's anything outstanding on

9     the government's to-do list, that's not a justification for

10    your not providing your discovery, and I will look unkindly on

11    warehousing Rule 16 discovery that the defense has that the

12    government is entitled to.

13         MR. GELFAND:  And that is consistent with our

14    understanding, and we'll get on that immediately.

15         THE COURT:  Please do.

16         How voluminous is the discovery presently now that

17    goes beyond what you're getting from the government?

18    For example, discovery relating to the relationship between

19    Mr. Teman and the victim entities.

20         MR. GELFAND:  Less than 100 pages.

21         THE COURT:  All the easier to get it provided.

22         Do you have a sense of what additional volume you

23    anticipate?

24         MR. GELFAND:  We don't, your Honor.  The reason why is

25    because we anticipate subpoenaing discovery.  My understanding,

1    by way of background, just for the Court's benefit, is that the

2    government through law enforcement obtained certain records

3    from the "victims" who are not the financial institutions.

4              THE COURT:  Right.

5              MR. GELFAND:  But did not do so via a subpoena.  We

6    intend to subpoena documents to more comprehensibly get a

7    better grasp on what they had.

8              THE COURT:  Your perception is that not everything

9    that was potentially germane was produced in response to

10   whatever directive, informal or not, the government gave to the

11   "victims."

12             MR. GELFAND:  Yes, your Honor.  We take the government

13   at face value that they have.

14             THE COURT:  Right.

15             MR. GELFAND:  We don't believe that the "victims"

16   disclosed everything relevant.

17             THE COURT:  I guess the followup is:  What are we

18   talking about about volume?  I have no understanding of what

19   the relationship was between Mr. Teman and the victims.  But if

20   they have a long email relationship, that could be

21   transformative in terms of the quantity of paper going back and

22   forth.

23             Is that what we're looking at?

24             MR. GELFAND:  We're looking at what I anticipate to be

25   email and other correspondence.  And some of these

1    relationships do go back approximately one year.

2             THE COURT:  How voluminous would you expect that's

3    going to be?

4             MR. GELFAND:  In terms of paper volume, I would not

5    anticipate it's going to be particularly voluminous because

6    this is basically a vendor/customer relationship as opposed to,

7    for example, a professional services relationship.

8             THE COURT:  I don't mean to put you on the spot.  The

9    government brings the charges.  You don't have to showcase your

10   defense.

11            MR. GELFAND:  Sure.

12            THE COURT:  With that important caveat, to the extent

13   you're able to share, I am interested in understanding, putting

14   aside the formalities of the motions which we'll get to in a

15   moment here, but on the merits here, is the theory that

16   Mr. Teman was entitled to the money and entitled to the means

17   he allegedly used to go and get it?  Or that he was entitled to

18   the money and the ends justify the means?  I'm trying to

19   understand what the theory is.

20            MR. GELFAND:  The former, not the latter, your Honor.

21   The theory is that Mr. Teman had the authority to do what he is

22   alleged to have done.  I would add on top of that that he did

23   not act with any requisite mens rea.

24            THE COURT:  Right.  The government alleges that the 27

25   checks, for example, were created, if you will, by Mr. Teman.

1    They were not created by the "victim" companies.

2            Stopping at that point, again, not requiring you to

3    answer, but if you're at liberty to do so, it helps me get an

4    early grasp on the case.

5            Is it the defense's view that this is an incorrect

6    factual allegation?

7            MR. GELFAND:  May I just confer with my client?

8            THE COURT:  Of course.  Again, I'm not requiring you

9    to answer.

10           MR. GELFAND:  Thank you, your Honor.

11           What I can represent to the Court is that we

12   anticipate that the evidence will show at trial that each of

13   the so-called "victim entities" -- and I put that in quotes

14   obviously -- have authorized Mr. Teman, to be more precise,

15   GateGuard, the corporate entity, through various written

16   agreements and payment terms that were, by the way, not

17   accessed by the government or recently disclosed by the

18   government until after the last status conference.

19           In other words, these are the payment terms where the

20   URL is actually listed on the alleged checks themselves.  These

21   payment terms authorized the conduct that is alleged to be

22   criminal in this case.

23           THE COURT:  So to be more precise, the government is

24   alleging that certain checks -- and I'm talking here about the

25   physical document -- were created by Mr. Teman.

1          If the evidence shows that that happened, the defense

2     would be that Mr. Teman was authorized to do that.

3          MR. GELFAND:  Yes, your Honor.

4          THE COURT:  All right.  Okay.  What else did you want

5     to put on the table before I start talking about scheduling

6     motions?

7          MR. GELFAND:  I just wanted to highlight something.

8     Perhaps as a practical matter -- this is putting the cart

9     before the horse with respect to motions.

10         I'm not trying to pre litigate anything.  But we do

11    believe, just to highlight for the Court's attention, that

12    there are significant Speedy Trial Act implications with

13    respect to when this case was initially indicted but more

14    specifically that are underscored with the government's kind of

15    evolution of the theory of the bank fraud.

16         THE COURT:  Pause on this.

17         The conduct itself occurred in 2019.

18         MR. GELFAND:  Yes, your Honor.

19         THE COURT:  So we're not talking about a

20    constitutional speedy trial issue.

21         MR. GELFAND:  Correct, your Honor.

22         THE COURT:  When was the indictment returned in this

23    case?

24         MR. GELFAND:  I don't have the exact dates in front of

25    me.  What I can represent to your Honor with specificity --

JBCQA

1          THE COURT:  The original indictment --

2          MR. GELFAND:  It was in June.

3          THE COURT:  -- that I have looks like -- the complaint

4    is dated June 20.  The indictment bearing the number 696 -- the

5    indictment, September 26.  I got the case soon thereafter.

6    When I had the initial conference, I certainly excluded time

7    right away.

8          How do we have a Speedy Trial Act issue?

9          MR. GELFAND:  Mr. Teman was arrested on the criminal

10   complaint 98 days before the initial indictment was returned.

11   We anticipate supporting a motion to dismiss on Speedy Trial

12   Act grounds with authority that dictates that the indictment

13   has to be returned within 30 days of the arrest, which is a

14   consideration separate and apart from this Court --

15         THE COURT:  Where was he arrested?  Which district?

16         MR. GELFAND:  He was arrested in the Southern District

17   of Florida, your Honor.

18         THE COURT:  Was he then held in custody?

19         MR. GELFAND:  He was, your Honor.  He was arrested on

20   the afternoon of July 3 knowing that there was a federal court

21   holiday -- that was a Wednesday -- the following Thursday and

22   Friday.

23         THE COURT:  Right.

24         MR. GELFAND:  He was held in custody for approximately

25   five days.  He appeared on Monday morning and was released

1    pursuant to I believe it was a combination of a personal

2    recognizance bond or an unsecured bond.

3              THE COURT:  Right.

4              MR. GELFAND:  And from the date of the arrest, there

5    were no motions pending.  There were no exceptions to the

6    Speedy Trial Act at that point.

7              Our Speedy Trial Act challenge, to be very clear, has

8    nothing to do with the moment that Mr. Teman appeared in this

9    district or anything that happened thereafter.  It has to do

10   with the fact that the government had 30 days to seek an

11   indictment.

12             THE COURT:  In this district of course, as you know,

13   routinely more time is taken.  But an order of continuance is

14   sought and obtained usually on consent from the magistrate, and

15   the time is rolled over.

16             Was anything like that sought in Florida?

17             MR. GELFAND:  I was not counsel at the time.

18             THE COURT:  That may be dispositive of your motion.

19             Have you looked into that?

20             MR. GELFAND:  Your Honor, I have obtained the relevant

21   documents from Florida.  We have obviously have not filed our

22   motion yet with the Court.  We will certainly do our due

23   diligence, but I just wanted to highlight the fact --

24             THE COURT:  I'm pushing you on this because I want to

25   make sure -- just as I'm pushing the government on the

 1    durability of its indictment, I'm pushing you on the viability

 2    of your theories.

 3          None of us have an interest in wasting time on

 4    something that might be a fatally flawed theory.  You need to

 5    run down whether there were orders of continuance because

 6    whatever issues there may be with your theory, that's a biggy.

 7          MR. GELFAND:  What I can represent to the Court is

 8    that I have reviewed the entire docket from the Southern

 9    District of Florida.  And there is no oral -- and there is not

10    an entry on the document or a written order of continuance.

11    What I can't represent to the Court is what was orally said in

12    court that day.

13          THE COURT:  Let me ask you this question.  It is

14    extremely rare, as I'm sure you know, for a Speedy Trial Act

15    violation to result in a dismissal with prejudice.  The fact

16    pattern here is a very, very, very far cry from anything I've

17    seen where any dismissal would be with prejudice.

18          Let's assume, for argument's sake, that the government

19    did not indict within 30 days net of orders of continuance.

20          First of all, is it clear to you then that the remedy

21    then is dismissal, putting aside the with prejudice, of the

22    ensuing indictment?

23          MR. GELFAND:  Yes, your Honor.

24          THE COURT:  What about a superseder that adds charges?

25    What about that?

1          MR. GELFAND:  Your Honor, I think, based on the

2     authority that I've reviewed, it turns on what the nature of

3     the additional charges are and whether they were encompassed or

4     at least arguably encompassed in the original charge in the

5     complaint.

6          THE COURT:  So what would that mean for charges 3 and

7     4?

8          MR. GELFAND:  Charges 3 and 4 are predicated on bank

9     fraud.  It's aggravated identity theft.

10          THE COURT:  Sorry.  Charges 3 and 4 are based on Count

11     Two.  Count Two involves two checks that were discovered later

12     on, checks 28 and 29.  My understanding is that the conduct on

13     which your client was arrested and indeed originally indicted

14     was limited to checks 1 through 27.

15          So even if your theory is right and even if it gets

16     your client the windfall of knocking out hypothetically the

17     count as to checks 1 through 27, how does it knock out any

18     counts based on 28 and 29?

19          MR. GELFAND:  Your Honor, we intend to brief the Court

20     based on the language that was specifically alleged in the

21     complaint, but I will represent to you that that's an issue

22     that we have considered.

23          Without conceding a position, I can see a universe

24     where the Court's analysis differs as to Counts One and Two

25     versus Counts Three and Four.

1          THE COURT:  Just to cut to the chase here -- in a

2    moment, I'll ask the government for its response on this.

3    Let's assume, for argument's sake, that there was a Speedy

4    Trial Act violation in the time it took to get an indictment --

5    and one of the relevant issues here also may be the

6    intradistrict quality about this, but we'll see.  Let's suppose

7    there was that issue.

8          What's the theory as to why this is a breach that is

9    with prejudice?

10          The circuit will deal with one of those every three

11    years.  It's usually out of the Northern District, to be honest

12    with you.  And it's usually just a hair-raising story that is

13    vastly different from anything that this looks like.

14          What's the theory as to why a dismissal would be with

15    prejudice?

16          MR. GELFAND:  There are numerous factors, as it seems

17    like the Court is aware, that are required to be considered

18    within this circuit.  Those factors are not limited to just the

19    amount of time that has passed.  Obviously there are cases that

20    we're all familiar with where the government would wait two

21    years to indict or something ridiculous.

22          THE COURT:  It's usually where the defendant has been

23    in custody for four years and nobody excludes time and everyone

24    forgets about the case.  That's usually the background.

25          MR. GELFAND:  Sure.  But what we would submit is that

1    the legal analysis requires and certainly permits, within the

2    Court's discretion, a broader interpretation of those four

3    factors, including prejudice to the defendant.  It's not

4    limited to prejudice.  We do anticipate setting that out.  I'm

5    certainly happy to answer any of the Court's questions.

6              THE COURT:  No.  Look.  It's helpful to flesh this

7    out.  It may result in my getting sharper papers when they come

8    in.

9              Let me turn to Mr. Gutwillig.  Maybe you can quickly

10   put this to rest.

11             What was the reason why it took the time it took

12   between the appearance on July 8 in Florida and the

13   indictment --

14             the first indictment you said, Mr. Gutwillig, was

15   when?  Late September?

16             MR. GUTWILLIG:  September 26.

17             THE COURT:  So a little under three months after the

18   date of the arrest.

19             What was the reason for that?  Wasn't time excluded in

20   Florida?

21             MR. GUTWILLIG:  Whether the Court down there did

22   something on the record, I don't know.  The government did not

23   seek a continuance in the Southern District of Florida.

24             The government's position is that the speedy trial

25   clock for these purposes did not start to run until the

1   defendant was presented here in the Southern District of New

2   York.

3          THE COURT:  Sorry.  Let me just pause you on that.

4          If the defendant had been arrested in New York, you

5   would have had the clerk's office of the Southern District

6   hounding you to get an order of continuance or to get to the

7   grand jury within the 30th day.  Otherwise, the case would have

8   been dismissed.  That's just basic procedure.

9          Is there something different when the defendant is

10  arrested in a different district than is the one that is doing

11  the prosecuting?  Or does that same requirement hold?

12         MR. GUTWILLIG:  My understanding is the former.  Now,

13  the government --

14         THE COURT:  Sorry.  The "former" meaning you can just

15  indict whenever you want after 30 days, 60 days, 90 days if

16  it's in a different district?

17         MR. GUTWILLIG:  So the government will have to go back

18  and review that.  I'm not going to represent that position to

19  the Court.  The government's position here is that the speedy

20  trial clock began for purposes here.

21         Mr. Teman was out on bail when he appeared in this

22  district on September 6.  I should note that the government

23  made repeated efforts to have him appear earlier than that and

24  that the indictment was obtained within the 30-day period after

25  September 6 here in this district.

JBCN1TEM4                                                                              42

1              THE COURT:  So, in other words, from your

2    perspective -- he gets into the district when?

3              MR. GUTWILLIG:  September 6 I believe.

4              THE COURT:  Do you have a paper trail of the various

5    communications with the defense and perhaps with the U.S.

6    Attorney's Office in Florida or the court in Florida as to all

7    these matters?

8              MR. GUTWILLIG:  With respect to?

9              THE COURT:  From your perspective, the only issue that

10   you're identifying appears to be whether he was timely indicted

11   after his arrival in New York.  That may well be one issue, but

12   it's not the issue that the defense is raising here.

13             The defense is saying, if he didn't get an order of

14   continuance in Florida, the case should have been dismissed

15   after the 30th day there.  And they're further saying the

16   failure essentially to indict as long as you did, in the

17   absence of an order of continuance, is its own Speedy Trial Act

18   violation, however compliant you may have been later on in the

19   case, and they're saying that requires dismissal.  Whether or

20   not it's with prejudice is a second-stage question.

21             Have you looked into whether there was a violation of

22   the Speedy Trial Act presented by the apparent lack of an order

23   of continuance after the 30th day after Mr. Teman's either

24   arrest or appearance in Florida?

25             MR. GUTWILLIG:  I have looked into it.  I need to look

1    into it more in order to represent a clear position to the

2    Court, which I expected to do after the defense flagged that

3    they would be raising this issue and making this motion.  I

4    intend to, of course, oppose it.

5                THE COURT:  You should oppose it only --

6                MR. GUTWILLIG:  If it's meritorious.

7                THE COURT:  If that position is meritorious.  I have

8    to tell you, with respect, I'm a little alarmed.  If it was the

9    case that the government didn't seek a continuance in Florida,

10   that would be a dramatic deviation from the procedure that

11   would be used if the case was at all times indigenous to this

12   district.

13               It may be that something fell between the cracks, and

14   it wouldn't be the first time that that happened.  An order of

15   continuance violations have been committed by AUSAs in the

16   general crimes unit for many decades.  I may be hypothetically

17   looking at one.

18               I'm just saying that that happens, but there's an

19   inquiry that one needs to go through in terms of what happens

20   if you don't get the OC and there is an indictment on the 30th

21   day.

22               Is it then obligatory on the defendant to move.  If

23   the defendant doesn't move and remains out on bail, is there

24   something that changes because the defendant appears in

25   New York.  Was he directed in Florida to appear in New York,

1    and is that part of the problem here.

2              In other words, if he was obliged to be in New York in

3    time, maybe that has some bearing.  Ultimately, there is an

4    issue to chew over here.

5              MR. GUTWILLIG:  Yes, your Honor.

6              THE COURT:  May I ask you to, please, with great

7    urgency, dig into that.  I'm concerned about that.  Again,

8    before everyone spends a lot of time on this, I want to get to

9    the bottom of this, and I'm expecting to schedule it faster

10   than the one you're proposing.  We'll see.

11             Go ahead.

12             MR. GELFAND:  Your Honor, I wanted to represent to the

13   Court, based on one of the Court's questions, I don't think

14   this changes any of the analyses that we are raising.

15             But I do want the Court to be aware that the

16   government did, at our request, make some accommodations as to

17   delaying the date that Mr. Teman needed to physically appear in

18   the Southern District of New York.  So I wanted the Court to be

19   clear.  There was no gamesmanship or anything.  That was a

20   practical matter.

21             THE COURT:  I appreciate that.  I will tell you, just

22   to be clear with you, that even if there was some technical

23   violation of the Speedy Trial Act, based on my knowledge of the

24   law, it would be startling to me, unless there are facts here

25   that are really not emerging, that the result would be a

1    windfall where Mr. Teman isn't ultimately able to face the

2    charges.

3         Let me put it a different way.  You're a country mile

4    from the cases under which a Speedy Trial Act violation is with

5    prejudice, reserving for you the right to bring to bear facts I

6    haven't seen.

7         That may mean that some separate indictment needs to

8    get brought.  It means maybe he's tried on the superseder, not

9    the original.  I don't know.  All of you need to run this to

10   ground soon.

11         MR. GELFAND:  Yes, your Honor.

12         THE COURT:  Let me just ask you, Mr. Gelfand.  Surely

13   Mr. Teman's defense had an interest, if the government failed

14   to get an order of continuance in Florida after 30 days had

15   passed, in moving to dismiss the case.

16         Did they do that?

17         MR. GELFAND:  Your Honor, we did not move to dismiss

18   the complaint.

19         THE COURT:  Right.

20         MR. GELFAND:  As a practical matter, procedurally I

21   believe that were we to file a Speedy Trial Act motion pursuant

22   to whatever deadline the Court sets, it would certainly be

23   timely.  Ultimately, the Court will have to rule on the merits.

24         THE COURT:  What was happening?  In other words, was

25   everyone expecting Mr. Teman to show up in New York and,

1   essentially, because he didn't show up in New York till

2   September 6, nobody really thought action in Florida was

3   needed?

4           In other words, everyone was waiting for him to get to

5   New York to start the action?  It sort of sounds that way.

6           MR. GELFAND:  I don't believe a motion in the Southern

7   District of Florida would have been procedurally proper because

8   there was no case pending there.

9           THE COURT:  That's a different question.  Let me try

10  it this way:  When Mr. Teman was presented on July 8, was

11  anything said about his making his way to New York?

12          MR. GELFAND:  With the caveat that I wasn't there, my

13  understanding is that in due course -- he presumably would have

14  been told that he had to go to New York.

15          THE COURT:  Was he given a date, or did he make a

16  commitment to get to New York?

17          MR. GELFAND:  No, your Honor.  Not that I'm aware of.

18          THE COURT:  What did the judge order as to a next day

19  in the case?

20          MR. GELFAND:  I don't believe there was an order,

21  your Honor.

22          THE COURT:  Somebody needs to order presumably the

23  transcript of the proceeding down there because I don't want to

24  have to rely on the memories or the secondhand accounts of

25  people who weren't there as to what happened.

1              Defense, if you're making a motion here, when you get

2    back to the office, please order the transcript on an expedited

3    basis because that's going to potentially be an important

4    source of material.

5              MR. GELFAND:  Yes, your Honor.

6              THE COURT:  Government, may I ask you just briefly,

7    while I realize there is research yet to be done, I appreciate

8    that your view is that all conduct in the Southern District has

9    been above board.

10             Is it your view that the Speedy Trial Act, insofar as

11   it sets deadlines involving an arrested but not indicted

12   defendant, was complied with?

13             MR. GUTWILLIG:  That would be my view with the caveat

14   that if that is incorrect, the government will not take that

15   position.

16             THE COURT:  So a little more research is needed.

17             MR. GUTWILLIG:  I should say also that during this

18   time period, there was thought given to this issue.  It's not

19   that the government just forgot to submit a request for

20   continuance.

21             Your Honor, I think the defense may be correct.  We'll

22   check.  If that's the case, the government's position is that

23   the remedy would still not be dismissal of the indictment here.

24             THE COURT:  The remedy for Speedy Trial Act violations

25   is often dismissal.  The issue is whether it's with prejudice.

1          MR. GUTWILLIG:  Yes.

2          THE COURT:  I'm going to ask you to get ahead of that

3    issue and take a look at what the cure would be.  If dismissal

4    were the remedy but your view is that the facts did not support

5    a with-prejudice dismissal, what happens then.  In other words,

6    does the superseder here cure things?

7          You just go to a new grand jury and wheel it out

8    differently and start again I'm eager to understand that, but

9    I'm eager to get our arms around this together promptly.

10          Defense, before we get to other motions, is there

11    anything else you wanted to raise?

12          MR. GELFAND:  Your Honor, the only other thing I would

13    raise is the government's theory as to venue today, without

14    holding them to whatever they represent in the pleadings, seems

15    to be as to Count Two and the aggravated identity theft counts,

16    Counts Three and Four, that there was some sort of IP address

17    evidence and/or cell site location evidence, whatever it may

18    be.

19          As a practical matter -- and I've certainly been

20    guilty of this -- unless I missed something in the discovery

21    which I have reviewed in the entirety, I don't believe that we

22    have any discovery related to that.  I would ask that we be

23    provided that immediately so that we can address that and

24    evaluate that with respect to our venue.

25          THE COURT:  Mr. Gutwillig, has that been produced in

1    discovery?

2            MR. GUTWILLIG:  The IP address is listed in the

3    spreadsheet that was produced in discovery.

4            THE COURT:  There you go.  Let's move on then.

5            So the proposed briefing schedule by the defense

6    anticipates motions due on the 27th of November which would be

7    Wednesday, the government's opposition due in two weeks, and

8    replies, if any, due in one week.  So with respect to speedy

9    trial, that's fine.  I'm happy to set that schedule.

10           Let's talk about suppression.  What, if anything, are

11   you moving to suppress?  Or is that just a placeholder?

12           MR. GELFAND:  Your Honor, it's not a placeholder, but

13   it's also not a decision that we've firmed up.  We obviously

14   don't have any intention of filing any motion with the Court

15   that we don't believe is appropriate and meritorious.  I'm

16   happy to flag the issue with the Court with the understanding

17   that we need to do additional digging.

18           THE COURT:  The reason why I'm asking is because

19   suppression motions may or may not entail factual hearings.

20   Therefore, the schedule may -- right now, depending on what

21   you're telling me, I may want to ask you to reserve a date for

22   a factual hearing.  Or maybe you're envisioning a suppression

23   motion that can be handled on the papers.  So tell me about it.

24           MR. GELFAND:  If I could flag the issue for the Court.

25   When Mr. Teman was arrested in the Southern District of Florida

1    on the complaint in this case.  Certain items were seized from

2    the place that he was arrested, in particular -- and this is

3    where the rub is -- the items were allegedly in plain view.

4             Putting that issue aside for a second, they were

5    seized by an NYPD police officer detective who was physically

6    present with deputy United States Marshals and, as I understand

7    it -- I'm calling them Miami police, whatever the law

8    enforcement entity is, the local law enforcement down in

9    Florida.

10            I believe that the theory is that they were seized

11   incident to the arrest in plain view by the NYPD officer

12   executing the arrest.  We believe that that raises, at a

13   minimum, a significant question about whether the NYPD

14   detective had the jurisdiction in the first place to execute

15   the arrest and, therefore, whether the exceptions to the

16   warrant requirement, because there's no dispute this was

17   without a warrant, whether the exceptions to the warrant

18   requirement would apply.  Based on the very narrow somewhat

19   legal issue, your Honor, it's quasi legal/quasi factual about

20   whether the NYPD was acting outside of his jurisdiction.

21            THE COURT:  He's accompanied though by other officers

22   who are within their jurisdiction?

23            MR. GELFAND:  Based on the discovery, yes, your Honor.

24            THE COURT:  Why would the remedy be suppression?  In

25   other words, if the other officers were also validly on the

1    premises, from a perspective of inevitable discovery, if it's

2    in plain view, if you assume away the invalidity, you've just

3    got some authorized person on the team.

4            Why does the Fourth Amendment give your client that

5    windfall?

6            MR. GELFAND:  Because the seizure itself was executed

7    by NYPD.  To the extent that the government would ultimately

8    argue some sort of inevitable discovery type exception --

9            THE COURT:  I think I just made that.

10           MR. GELFAND:  -- which the government, if they were

11   already, going to argue inevitable discovery as a practical

12   matter, I think that requires further analysis.

13           THE COURT:  Let me ask you a question:  Are you aware

14   of any case in which, from a Fourth Amendment perspective, the

15   inclusion on a team of a law enforcement officer from a

16   different district who didn't get whatever walking papers for

17   that district that may or may not have been required, that

18   results in a suppression remedy?

19           Whatever else it is, assuming that the seized items

20   were in plain view in a place in which arresting officers were

21   entitled to be, this is a new one on me.  It's a little bit

22   like if the officer hadn't taken his final exam or something

23   like that.  New on me that the defendant gets the benefit of

24   that.

25           Do you have a case for that?

```
1              MR. GELFAND:  Your Honor, I do not have a case for
2      that.  I want to be crystal clear.  When I said that we need to
3      do further digging, I'm not suggesting that is the remedy.
4              THE COURT:  You're looking into that.
5              MR. GELFAND:  Correct, your Honor.
6              THE COURT:  Are you assuming, or do you have reason to
7      believe that this NYPD officer had not been deputized in some
8      way to participate on the arrest team?
9              MR. GELFAND:  Two reasons, your Honor:  First, the
10     affidavit in support of the criminal complaint, as with any
11     affidavit that the Court is inevitably aware of, begins by
12     laying out this particular detective's credentials,
13     qualifications, so on and so forth.  There is no suggestion
14     that he was a task force officer or some other federal
15     designation.
16             THE COURT:  No.  Crime these days, more than in years
17     past, is cross-jurisdictional.  People from different districts
18     team up all the time.  Thinking back, if memory serves, the
19     hurdle to get somebody deputized to help out with an operation
20     like this is not constructing the Hoover Dam.  It's probably
21     about a one-minute task.
22             I'm asking you whether you have actually asked that
23     question, because it's not something that you necessarily
24     expect to be in a charging instrument or in a complaint.
25             Have you asked the government whether the officer was
```

1   permitted and authorized to be part of the arrest team?

2                MR. GELFAND:  Specifically, no, no, your Honor.  We

3   have requested, which resulted in some disclosure of additional

4   discovery two days ago -- we have requested all of the relevant

5   documents related to the seizure.  To be blunt, your Honor, if

6   the government were in a position to make that representation,

7   I think it would benefit everyone.

8                THE COURT:  It might moot the issue.

9                Before we get to the government's response, I think

10  you indicated at the first conference there may be more

11  conventional suppression issues.

12               Were you disputing that the things seized were in

13  plain view as opposed to in a drawer?  Or am I getting this

14  confused with another case?

15               MR. GELFAND:  I wasn't at the initial hearing.

16               THE COURT:  Fine.  Is there any other argument for

17  suppression?

18               MR. GELFAND:  No, your Honor.

19               THE COURT:  So the suppression issue entirely turns on

20  the officer's lawful participation on the arrest team?

21               MR. GELFAND:  Yes, your Honor.  We would be willing to

22  stipulate to the plain view fact as if the officer were here

23  and physically testifies.

24               THE COURT:  One thing I'm not going to be litigating

25  is whether or not the seized items were in plain view.  The

1    entirety of your suppression motion is about the officer's

2    station on the case.

3            MR. GELFAND:  Yes, your Honor.

4            THE COURT:  That's helpful.

5            Mr. Gutwillig, any insight into that?

6            MR. GUTWILLIG:  I don't, your Honor.  This is the

7    first I'm hearing of this.

8            THE COURT:  This is the first you've heard?

9            MR. GUTWILLIG:  Yes.  I have not asked the officer

10   whether he was appropriately deputized.

11           With respect to the additional request for discovery,

12   an additional request for discovery was made relating to the

13   arrest earlier this week.  The government had previously

14   produced the vouchers from the items seized, the photographs

15   from the seizure.

16           I believe what was produced later were the reports

17   generated by law enforcement and the officer's report of that

18   which is not, to my understanding, required to be produced at

19   this is juncture, but the government did produce any relevant

20   documents.

21           THE COURT:  May I suggest this.  I think Mr. Gelfand

22   is being pretty clear with us that this is an issue that has

23   the capacity to go away, the suppression issue.  So the sooner

24   you can nail down whatever authority he has, assuming that

25   there is authority, it sounds as if that may moot this issue.

A-96.61

1              If he wasn't authorized in whatever the required way,

2       we still have a separate issue which is does the Fourth

3       Amendment have anything to do with that.  But we'll see.  But

4       in any event, why don't you run that to ground.

5              Mr. Gelfand, I'm happy to set that same schedule for

6       the suppression motion.  I don't think -- yes.  You can have

7       your reply by December 18.  I might as well allow you to do it.

8       The reply may be that you're backing down.  We'll see.

9              Here is the question, Mr. Gelfand:  Can you imagine a

10      scenario in which we need to take factual testimony on this

11      issue?  Or is this realistically -- if you get an affidavit

12      that represents whatever the magic words are about

13      authorization, your client and the people on the defense team

14      are in no position to refute that.

15             Can you imagine any scenario in which there is a

16      disputed issue of fact that needs to be resolved in an

17      evidentiary hearing?

18             MR. GELFAND:  Can we confer for one minute?

19             THE COURT:  Yes.  Go ahead.

20             (Defense counsel conferred)

21             MR. GELFAND:  Thank you, your Honor.

22             THE COURT:  Yes.

23             MR. GELFAND:  I think that what we would see is if --

24      and I'm going to try to be very precise.  If the government

25      hypothetically were to provide us an evidentiary basis that

A-96.62

1   basically says he was deputized.  He acted under this

2   authority.  Here is the document that supports it, if there's a

3   document or something like that, I do not anticipate a world

4   where we would request or need factual findings based on

5   evidence in court by the Court about that.

6            But until we know what the government is basically

7   basing that assertion on, it's a tough question to answer.  So

8   I don't want to waive any rights, but I don't anticipate the

9   likelihood of an evidentiary hearing.

10           THE COURT:  Look.  I need to set a hearing date just

11  because trial is close enough that if there is an issue, you're

12  ready to go.

13           One moment.

14           (Pause)

15           THE COURT:  Counsel, I think we already have a

16  conference scheduled for 10:30 a.m. that day.  We'll try to

17  preserve a lot of our time that day as needed.

18           We'll use that conference.  If, heaven forbid, this

19  becomes a disputed factual issue, you'll need to make sure that

20  whoever the body is that is relevant to the issue is prepared

21  to testify then.

22           So, Mr. Gutwillig, that's really a government's side

23  scheduling issue.  So just be mindful.  That would be the date

24  of a hearing if we needed one.  It's my fervent hope of all

25  things that we can moot the need for that and we can resolve it

1   on the papers.

2          Defense, I'm looking for you to be clear in any reply

3   as to whether you're comfortable with the Court resolving it on

4   the papers or whether you're retracting the motion or whether

5   you're insisting on a hearing.

6          MR. GELFAND:  Absolutely, your Honor.

7          THE COURT:  All right.  We've taken care of speedy

8   trial and suppression.  Let's turn to improper venue.

9          Defense, which counts at this point are you

10  potentially going to move against on a venue theory?

11         MR. GELFAND:  Your Honor, our initial intention was to

12  move against all counts on the venue theory.  I do want to go

13  back with respect to the IP address evidence.  That I need to

14  look more into and evaluate the impact that that has on Counts

15  Two, Three, and/or four.

16         THE COURT:  Right.  But as to One, you're definitely

17  intending to move as to improper venue?

18         MR. GELFAND:  Yes, your Honor.

19         THE COURT:  Just articulate briefly, briefly, why your

20  view is that venue is improper for a bank fraud charge on Count

21  One.

22         MR. GELFAND:  Because as the Court no doubt is aware,

23  within the Second Circuit with bank fraud in a broader sense is

24  where the actual conduct comprising the crime from beginning to

25  end occurred, if there was a crime in the first place

1    obviously.

2         In this particular instance, we believe that even as

3    alleged when considered within the context of discovery -- and

4    that doesn't seem to be disputed -- all of the relevant conduct

5    occurred within the Southern District of Florida, not within

6    the Southern District of New York.

7         I agree with what the Court articulated in its

8    questions.  I'm not suggesting it's a finding or a

9    determination with respect to if there was a bank fraud, the

10   bank fraud ended before there was any inter-account transfer.

11        THE COURT:  May I ask you this.  You should both look

12   at *United States v. Morganstern*.  I think it's a 1991 case.  I

13   don't remember if it's reported or not.  I think it is.

14        But it picks up the authority in the area.  The case

15   dealt with issues of what constitutes bank fraud.  And

16   ultimately, it explains why, for example, check kiting isn't

17   bank fraud but why some false statement or misrepresentation

18   needs to be directed to the bank.  But mere insufficient funds,

19   for example, are not bank fraud.

20        So the focus of that line of authority -- and I think

21   *United States v. Williams* is the Supreme Court case that

22   delineates what is bank fraud versus what is not.  That's the

23   one that says check kiting isn't bank fraud.  But the basic

24   idea is the bank fraud is in the false representation or

25   pretense to a bank.

1          Right now, Mr. Gutwillig represents that it's actually

2     not the depositor, the victim companies' bank, at all, that is,

3     the victim.  But it is the bank that receives the fruits of the

4     money that are taken from a different bank based on false or

5     fraudulent representations made to the bank.

6          In other words, based on what Mr. Gutwillig has said,

7     I have no doubt that the Florida bank is a proper victim of the

8     bank fraud based on the conduct described.  The question is

9     whether the bank that receives the fruits of that is the victim

10    of bank fraud.

11         Mr. Gutwillig, fair warning.  This is a new one on me,

12    and I know bank fraud.  I'm extremely worried that you are

13    going to get an unsustainable bank fraud conviction if the

14    theory is that the fruits of a completed bank fraud passed

15    through some other bank.  You need to run that to ground.

16         But your premise though -- and I guess the question,

17    Mr. Gelfand, is what you're describing is really a blend of a

18    venue and a bank fraud, substantive bank fraud question.

19         Right?  If Mr. Gutwillig's premise is correct that the

20    bank fraud continues as the ill-gotten gains pass through

21    different bank accounts of the defendant, eventually, when you

22    get to a New York bank account, you'll have venue.  I know

23    you're calling it improper venue, but I think, for better or

24    worse, these are two halves of the same coin.

25         Am I right about that?

```
1            MR. GELFAND:  Yes, your Honor.  I would add one
2   additional consideration.  And that's that -- first of all, I
3   don't believe that Mr. Gutwillig is correct on the bank fraud
4   analysis.
5            THE COURT:  Right.  But if you're not going to
6   litigate that and you're just going to say there's no venue,
7   I'm ultimately going to have to run to ground what the outer
8   bounds are of bank fraud here.  In other words, this is a case
9   where I think the venue argument I think is inseparable from
10  the bank fraud analysis.
11           MR. GELFAND:  First of all, what's currently alleged
12  in the indictment, notwithstanding what Mr. Gutwillig said the
13  theory might be, doesn't suggest that the other financial
14  institutions are the "victim" of bank fraud.
15           THE COURT:  Well, I disagree.  The "To Wit:" clause
16  here could be read in either way.  It's a good reason why there
17  may be a need for particulars here.
18           But the "To wit:" clause here could be read to focus
19  on the depositing as opposed to the withdrawing institution.
20  The "To Wit:" clause reads:  "Teman deposited counterfeit
21  checks into an account held at a particular institution."
22           It's not crystal clear what the victim is, and I think
23  we need to be.  In no sense has the government returned an
24  indictment that's inconsistent with a description of same by
25  Mr. Gutwillig.  The issue is really whether it's a compliant
```

indictment.

Here is the point:  If you're going to be litigating venue, I don't think you can responsibly litigate it without dealing with the issue of whether this is proper bank fraud. Because if Mr. Gutwillig's theory is correct, there likely is proper venue.  If his theory is incorrect, there likely isn't, but they're two halves of the same coin.

MR. GELFAND:  Understood.

THE COURT:  Let me just ask you the nuts-and-bolts question here.  If you're right, if my suspicion is correct that the only bank fraud victim on the facts as proffered is the bank that surrenders control of the money, not the bank who's lucky enough to have an account holder with more money, if that is correct, it's not a lot of use to your client.

Either your client can be indicted then in Florida for bank fraud or Mr. Gutwillig will come back and say, fine. Count One is now called money laundering.  The bank fraud in Florida is the specified unlawful activity, and the 1957 offense involves his engaging in a financial transaction with the fruits of bank fraud, at which point, you're litigating exactly the same issue with one more step which is did the monies show up in New York.

You two need to talk because in the end, to be very blunt, even if I'm completely right in spotting the frailty in the current indictment, which I fear is there but I'm not sure,

1   this is a fixable problem, and your client is going to wind up

2   here in substance dealing with the same problem in the

3   underlying issue.

4           The question is the process by which we get to a place

5   in which a legally secure indictment is the one that he's being

6   charged on.  But in the end, on the factual proffer that

7   Mr. Gutwillig has gotten, your client is engaged in a

8   transaction in New York with the fruits of the same conduct

9   that Mr. Gutwillig calls bank fraud.

10          So if there was a bank fraud here, your client seems

11  extremely likely ultimately to be held to account for it, even

12  if it's in the context of a 1957 charge here.

13          This is all by way of there may be a value in you both

14  talking.  Okay?

15          MR. GELFAND:  Understood.

16          THE COURT:  The schedule you've got for that is fine

17  too.

18          Then as to a bill of particulars, I do not receive

19  bill of particulars motions until counsel have met and

20  conferred and communicated in writing as to a demand for the

21  particulars and the government has had an opportunity to

22  respond.  I don't know if that has happened yet.

23          Has there been a written demand by the defense of the

24  government for particulars?

25          MR. GELFAND:  There was an oral conversation.

1          THE COURT:  Put it in writing, and let me get the

2  response.  I want to resolve that based on a written exchange

3  of communication so that I can see what was asked and what was

4  responded to.  And that, in turn, will make sure that

5  Mr. Gutwillig and his colleagues can evaluate what you're

6  asking for and why.

7          On the assumption that your oral communications

8  preview what the written communications will show, what is the

9  particularization that you have sought and not gotten?

10         MR. GELFAND:  The particularization that was inherent

11  in the motion we intended to file, but I think there are

12  actually more particulars.  Based on what's transpired today,

13  the initial issue was a very simple issue.

14         It was a formal disclosure for record purposes that we

15  were even willing to accept under seal of the name of the two

16  alleged victims for the aggravated identity theft counts.

17         I will represent that Mr. Gutwillig has disclosed to

18  us those names.  It's not like we're not aware of that.

19         THE COURT:  Right.

20         MR. GELFAND:  But when an indictment says victim 3 or

21  victim 4, I think for purposes of ensuring against double

22  jeopardy and certain amendments, those kind of

23  considerations --

24         THE COURT:  Right.  Is your concern just that

25  Mr. Gutwillig has only told you that orally?

JB8S8FM0                                                                                    64

1              MR. GELFAND:  No.  He has actually put that into an

2      email.  Our concern is that we believe that it should be in

3      some sort of a pleading fashion.

4              THE COURT:  It doesn't have to be in a pleading, but I

5      certainly understand your point that you want to preserve a

6      record of it so that three years from now, if he's charged

7      again, you're able to point to something.

8              Is it the concern that the government doesn't want to

9      put that on ECF?

10             MR. GELFAND:  I don't know if that is the concern.  We

11     anticipated that possible concern.  That's why we said it could

12     be under seal.

13             THE COURT:  All right.  May I suggest.  It doesn't

14     sound like the government is breaching anything as to

15     particularizations because it sounds like he's giving you the

16     very information you want.  You have a legitimate interest in

17     memorializing this in a way that protects your client's

18     interest.

19             There are about five different ways I can think of off

20     the top of my head, including putting a letter on the record in

21     the case reflecting that the names of the victims are being

22     filed in a sealed document so that it's available so that there

23     is a determined way of solving this.

24             This will be a waste of my time if creative lawyers

25     can't solve this one without getting to me.  So please solve

 1   that problem.  If that's all you got, you don't need to resolve

 2   that.  You just need to be agreeable.

 3         MR. GELFAND:  That's fair, your Honor.  With respect

 4   to what was said today in court, I anticipate that we're going

 5   to need to have discussions about additional particularities

 6   based on Counts One and Two.

 7         THE COURT:  Then write a letter right away to the

 8   government seeking particulars.  As long as the end date for

 9   the reply brief is the same, I will allow the two of you -- as

10   long as you put it in writing to me, I will approve an

11   agreed-upon modification.

12         So if, for example, you need a few more days to

13   formulate your request and you want to get it to the government

14   next Friday instead of next Wednesday, whatever, as long as you

15   two agree on that, I'm fine.

16         I can see where there may be value in providing a

17   little bit of air space for that conversation, particularly if

18   Mr. Gutwillig is, you know, running facts within his office

19   about the proper formulation of the charges here.

20         I'll approve the schedule, including, as necessary,

21   reply briefs.  At our final pretrial conference, I will need to

22   resolve whatever of these motions actually get made, although

23   it's my hope some will go away or some will be agreed to.

24         I need to set a due date -- I don't think I have

25   yet -- for proposed voir dire and proposed jury charges.  And

A-96.72

1    those are also things that I take up at the final conference.

2              If the final conference is on January 10, then can I

3    have proposed voir dire and requests to charge -- I don't want

4    to mess with your holidays.  Can we say Monday, January 6.

5              So January 6 for voir dire and requests to charge.

6    I'll issue an order along those lines.

7              MR. DiRUZZO:  Your Honor, may I inquire as to how

8    much, if at all, leeway or ability you give counsel to

9    participate in voir dire.  I've had some judges --

10             THE COURT:  The answer is I adhere to the virtually

11   unitary Southern District norm, which is that I'm delighted to

12   get your questions, but I ask the questions.  You don't.

13   That's a conversation for another day -- we've been here for a

14   while -- as to why I feel strongly that that results in a

15   neutral, rigorous, and efficient process.

16             MR. DiRUZZO:  Okay.

17             THE COURT:  A very productive conference.  The main

18   takeaway, beyond my thanks to you, because you've got a number

19   of homework assignments, is really my strong admonition to the

20   government to take a look at all these questions, please, with

21   not a premise that what has been done is correct or the best

22   practice but an independent, fresh premise.

23             There is a viable case to be brought here, but I have

24   considerable worry that the indictment has completely curable

25   flaws but flaws nonetheless.  And I am eager to get to the

1  bottom of the Florida speedy trial issue which also feels to me

2  like one which, if there is a problem, feels curable.  But I

3  don't want to be fretting about that in the days leading up to

4  trial, and I'm sure that's the last thing all of you want to do

5  either.

6           Anything further from you, Mr. Gutwillig?

7           MR. GUTWILLIG:  I would just like to note briefly for

8  your Honor --

9           THE COURT:  I've excluded time through the trial I

10 believe.  Correct?

11          MR. GUTWILLIG:  I just wanted to flag briefly for

12 your Honor -- I've spoken about this with defense counsel and

13 also informed the Court's deputy.  And certainly it doesn't

14 bear on the schedule from the government's perspective.  The

15 government would be ready.

16          I would just note that I have another trial

17 January 13.  So if it's not me, it will be somebody else.  I

18 just wanted to let the Court know.

19          THE COURT:  Fair enough.  Is your other trial likely

20 to go or not?

21          MR. GUTWILLIG:  I would estimate it as very likely to

22 go.

23          THE COURT:  Then you should get somebody on the team

24 who is, frankly, owning these issues now rather than later.

25 It's not fair to them to pick up a hot potato.

1          MR. GUTWILLIG:  And certainly that would not be my

2    intention.

3          THE COURT:  I know it's not your intention, but I want

4    to make sure.  It's the holidays.  I want to make sure you've

5    got somebody lined up that can be held to account for the

6    charging and other decisions the government makes.

7          I won't want to hear, particularly in a case in which

8    the defense is expressing speedy trial concerns, I don't want

9    the new AUSA to come on and say, I was newly added to the case.

10   I see some issues that I felt comfortable with Mr. Gutwillig

11   on.  I think more attention is needed, to which the answer will

12   be Judge Engelmayer on November 22 told Mr. Gutwillig to get

13   his trial partner chosen right away and his successor chosen

14   right away so that those issues can be cured and resolved with

15   dispatch.

16         MR. GUTWILLIG:  To be clear, this has all been

17   discussed internally to ensure that something like that does

18   not happen.

19         THE COURT:  Then let's have that person appear

20   promptly so I know who it is.

21         Mr. Gutwillig, my law clerk tells me I've only

22   excluded time through today.

23         Is there an application to exclude time through trial?

24         MR. GUTWILLIG:  Yes, your Honor.  The government would

25   move to exclude time under the Speedy Trial Act until trial to

A-96.75

                                                                     69
JB...
1    continue with motion practice, producing whatever discovery may

2    continue, and pretrial preparation.

3              THE COURT:  Defense, any objection to that?

4              MR. GELFAND:  No objection, without waiving any prior

5    speedy trial issues.

6              THE COURT:  Let me ask you, Mr. Gelfand:

7    Notwithstanding all the issues that you have raised today,

8    without telling me any more specifics, are there discussions

9    that have commenced between the parties as to the possibility

10   of a resolution here?

11             MR. GELFAND:  Your Honor, what I can represent to the

12   Court is that we have thoroughly discussed that issue with our

13   client, and our client intends to proceed to trial.

14             THE COURT:  Okay.

15             MR. GELFAND:  Because of that, there have been very

16   few, if any, discussions with the government.

17             THE COURT:  As I'm sure you're aware, at a final

18   pretrial conference, one of the things that the judge needs to

19   do is to allocute the defendant after asking the government or

20   the defense about the existence of any formal plea offers that

21   were made.

22             Of course the reason for that is to avoid issues down

23   the road, 2255s and the like, where the allegation is made that

24   a defendant was left unaware of a plea offer.

25             It sounds as if there hasn't been a formal plea offer.

1    Whatever the facts are, I'll ask you, counsel, to get together

2    beforehand and you in turn to speak with your client beforehand

3    because at that final conference, I'll ask the government for

4    its account of plea discussions, I'll ask defense counsel, and

5    then I'll ask the defendant.  Heaven knows, there ought to be a

6    meeting of the minds, but I don't want anyone unprepared for

7    that.

8                MR. GELFAND:  Absolutely, your Honor.

9                THE COURT:  Anything further from the defense?

10               MR. DiRUZZO:  Yes.  Judge, I just want to make sure

11   that we comply with your personal preferences.  Given that

12   we've already talked about the pending motions, I'm going to

13   assume that we don't have to file them with the Court.  We just

14   go right ahead and file the motions.

15               THE COURT:  Yes.  You may do so.  I would ask for two

16   courtesy copies of any motion and attachment to my chambers.

17               MR. DiRUZZO:  Two copies?

18               THE COURT:  Yes.  Two copies, one for me, and one for

19   my law clerk.

20               MR. DiRUZZO:  Yes, Judge.  When I get back to Florida,

21   I will reach out to the Southern District of Florida

22   magistrate.

23               THE COURT:  Why don't you have your office do that

24   before you get back to Florida.

25               MR. DiRUZZO:  I will call my associate and see if I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   can get him to do that.  However, here is my concern, that I

2   get in the transcript request and we don't get the transcript

3   back, even on an expedited basis, before the 27th.

4            THE COURT:  If you and the government speak and agree

5   on a modest extension of time, as long as the reply brief stays

6   the same, as long as you two are in agreement -- I want you to

7   be collegial about this, and I want you to set revised dates

8   that are mutually respectful -- I'm not going to have a problem

9   with a brief adjournment of those dates, particularly to

10  facilitate the transcript.

11           It may be that Mr. Gutwillig's memory of something

12  makes it clear that in some way that transcript would be

13  unhelpful.  But it sure sounds to me as if it would be because

14  I am eager to understand how things were left in Florida.

15           MR. DiRUZZO:  I highly doubt Mr. Gutwillig was the

16  AUSA on the case.

17           THE COURT:  No.  But he would surely have notes.  If

18  he was speaking to a peer AUSA, the natural question is what

19  happened in magistrate's court.

20           MR. DiRUZZO:  Okay.

21           THE COURT:  In any event, I would ultimately like to

22  get that document.  If ultimately Mr. Gutwillig says to you,

23  it's a nothing order.  Nothing happened of any relevance, while

24  I will still need it, you probably want to go ahead and file

25  your brief and just get me the transcript later on when you get

1    it.

2              MR. DiRUZZO:  Understood.

3              THE COURT:  Nothing further from anyone?

4              MR. GELFAND:  No, your Honor.  Thank you.

5              THE COURT:  I wish everyone a healthy and happy

6    holiday, and I look forward to seeing you in January.

7              MR. GELFAND:  Thank you, your Honor.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A-97

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/20/19
```

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

                              Defendant.

19 Cr. 696 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Ari Teman is charged with two counts of bank fraud and two counts of

aggravated identity theft.  Teman moves to dismiss the Superseding Indictment, arguing that the

85-day period between his arrest and his indictment violated the Speedy Trial Act, 18 U.S.C.

§§ 3161–62, and should result in a dismissal, with prejudice, of all counts.

For the reasons that follow, the Court dismisses Count One of the Superseding

Indictment, but without prejudice.

I.    **Background**

      A.    **The Government's Allegations**

      The Government alleges that Teman carried out, sequentially, two distinct fraudulent

schemes.

            1.    **Mobile Deposits of Allegedly Counterfeit Checks**

      On or about March 28, 2019, Teman allegedly made two mobile deposits of fraudulent

checks into an account for GateGuard, Inc. ("GateGuard"), a company that he owned, at

Financial Institution 1.  Dkt. 38 ("Gov. Mem.") at 2; *see also* Dkt. 27 ("Superseding Indictment"

or "S1") ¶ 2.[1]  Those checks appeared to have been issued by two entities, Entity 3 and Entity 4,

---

[1] Unless otherwise indicated, the docket references are to the docket of this case, No. 19 Cr. 696.

and totaled $36,000.  Gov. Mem. at 2; *see also* S1 ¶ 2.  The checks each included a signature,

which the Government alleges was unauthorized.  *See* Dkt. 35 ("Nov. 22 Tr.") at 21.  The

Government also alleges that the IP address for the device that completed the mobile deposits

suggests that such deposits were made within the Southern District of New York.  *See* Gov.

Mem. at 2; Nov. 22 Tr. at 22–24.

On or about March 29, 2019, approximately $35,000 was transferred from the GateGuard

account at Financial Institution 1 to a Financial Institution 1 account for Friend or Fraud, Inc.

("Friend or Fraud"), another company owned by Teman.  *See* Gov. Mem. at 2; Nov. 22 Tr. at 5,

23.

On or about April 2, 2019, Financial Institution 1 issued a "charge-back" to return

$36,000 from the GateGuard account to Entity 3 and Entity 4's accounts, both of which were

held at Financial Institution 2.  Gov. Mem. at 2.

### 2.  Physical Deposit of Allegedly Counterfeit Checks

On or about April 19, 2019, Teman entered a Miami Beach, Florida branch of Financial

Institution 1 and deposited 27 checks, which the Government contends were fraudulent, into the

same GateGuard account as the mobile deposits.  *See* Dkt. 1 ("Complaint" or "Compl.") ¶ 6(a)–

(c); Gov. Mem. at 3; *see also* S1 ¶ 1.  Specifically, Teman deposited 18 checks that were drawn

from Entity 1's account, six from Entity 2's, and three from Entity 3's.  Compl. ¶ 6(c)(i)–(iii);

Dkt. 24 ("Oct. 21 Tr.") at 10–11.  The three entities report that they had not issued or authorized

any of these checks, which totaled $297,000.  Compl. ¶ 6(b), (e); Oct. 21 Tr. at 10.  The checks

did not have a signature, but instead each bore the following words:

> DRAW PER CONTRACT, NO SIGNATURE REQUIRED[.]  NOTE TO BANK:
> This is a valid check.  You are required by law to honor it.  Contract at
> gateguard.xyz/legal/terms.php accepted by above client.  Contact us at 212-203-
> 3714 with questions.

2

Compl. ¶ 6(d); *see also* Oct. 21 Tr. at 11.  The Government alleges that the phone number listed

on the checks is a number associated with Teman and GateGuard.  Compl. ¶ 6(d); Oct. 21 Tr.

at 11.

On or about April 24, 2019, Financial Institution 1 issued a charge-back to transfer

$33,000 from the GateGuard account back to Entity 3's account at Financial Institution 2.

Gov. Mem. at 3.  GateGuard had previously received $33,000 from Entity 3.  *See id.*

On or about April 26, 2019, approximately $225,000 was transferred from the GateGuard

account to the Friend or Fraud account.  *See* Compl. ¶ 6(g); Gov. Mem. at 3.  The same day,

$180,000 was transferred from the Friend or Fraud account to a Financial Institution 1 account

for Touchless Labs LLC, an LLC for which Teman is the sole member, and $4,500 to a Financial

Institution 1 account for Teman.  Gov. Mem. at 3–4.  On or about April 29, 2019, $125,400 was

then transferred from the Touchless Labs LLC account back to the Friend or Fraud account.

Gov. Mem. at 4.  On or about April 29, 2019 and May 1, 2019, approximately $137,930 was

transferred from the Friend or Fraud account to two Chinese accounts.  *See id.*

On or about May 7, 2019, Financial Institution 1 issued another charge-back, attempting

to return $264,000 from the GateGuard account to accounts held by Entities 1 and 2 at Financial

Institution 3.  *Id.*  GateGuard had previously received that same amount from the two entities

collectively.  *Id.*  On or about May 8, 2019, Teman withdrew $4,000 from the Friend or Fraud

account at a Financial Institution 1 branch in Manhattan, New York.  *Id.*; Compl. ¶ 6(h).

Financial Institution 1 then froze all of Teman's accounts.  Gov. Mem. at 4.  In total, the

Government estimates that Financial Institution 1 suffered $289,000 in total loss from the

allegedly fraudulent checks that Teman deposited and transferred.  *Id.*

3

A-100

**B.    History of Teman's Prosecution**

On June 20, 2019, the Hon. Sarah Netburn, a United States Magistrate Judge in this District, approved a sealed Complaint setting out probable cause for Teman's arrest, *see* Compl., and issued a warrant for Teman's arrest, *see* No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 1 at 1. The Complaint charged Teman with one count of bank fraud. Compl. ¶ 1. Drawing on the second set of allegations, above, it alleged that Teman, from in or about April 2019 until in or about June 2019, had knowingly and willfully executed a scheme to defraud a bank insured by the Federal Deposit Insurance Corporation ("FDIC") by depositing counterfeit checks into a bank account at a particular financial institution. *Id.* Specifically, the Complaint alleged that Teman had deposited the 27 allegedly fraudulent checks into the GateGuard account at a Financial Institution 1 branch in Florida. *See* Compl. ¶ 6.

On July 3, 2019, Teman was arrested in the Southern District of Florida pursuant to the arrest warrant and was held in custody. On July 8, 2019, Teman was presented in the Southern District of Florida. No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 3. The magistrate judge there set a $25,000 personal recognizance bond and released Teman from custody. *Id.* The magistrate judge also signed an order of removal, ordering Teman to appear in this District when instructed by this Court. *See* No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 6 ("Order of Removal"). On July 10, 2019, the Southern District of Florida issued a notice of criminal transfer to this District, No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 7, and amended that notice on July 23, 2019, No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 9. On July 23, 2019, this District received from Florida the documents pertaining to Teman's arrest, presentment, and release. Dkt. 3.

On August 21, 2019, the Hon. Gabriel W. Gorenstein, a United States Magistrate Judge in this District, ordered that the Complaint be unsealed. Dkt. 4. On September 6, 2019, Teman appeared for before Judge Netburn for a bond hearing, his first appearance in this District. *See*

4

A-101

Dkt. 7. The Government had delayed this first appearance at defense counsel's request. *See* Dkt. 33 ("Def. Mem.") at 2 n.2. At the bond hearing, Judge Netburn adopted the $25,000 personal recognizance bond, along with conditions of release. *See* Dkt. 7.

On September 26, 2019, a grand jury in this District returned an Indictment charging Teman with one count of bank fraud. Dkt. 9 ¶ 1. The conduct underlying this count was Teman's deposit of 27 fraudulent checks, as described in the Complaint, *i.e.*, the second in time of Teman's two alleged fraudulent schemes. *See* Nov. 22 Tr. at 4–5; Compl. ¶ 6. On October 3, 2019, the Government filed a letter seeking to schedule an arraignment for October 21, 2019, and to exclude time under the Speedy Trial Act through the arraignment. Dkt. 11. The Court approved both requests. Dkt. 12. On October 21, 2019, Teman was arraigned on the Indictment and an initial conference was held. At that conference, the Court excluded time, for purposes of the Speedy Trial Act, through the next conference on November 22, 2019. Oct. 21 Tr. at 40. On October 25, 2019, based on Teman's demand for a prompt trial, *see* Dkt. 22, the Court scheduled the case for trial beginning January 21, 2020. Dkt. 23.

On November 12, 2019, the grand jury returned a Superseding Indictment, charging Teman with two counts of bank fraud and two counts of aggravated identity theft. *See* S1. Count One of the Superseding Indictment relates to the 27 fraudulent checks that underlie both the initial Indictment and the Complaint, *i.e.*, the earlier of the two schemes outlined above. *See* Nov. 22 Tr. at 4–5; *see also* Compl. ¶ 6; S1 ¶ 1. Count Two charges Teman with bank fraud for the two mobile deposits. *See* Nov. 22 Tr. at 19–23; *see also* S1 ¶ 2. Counts Three and Four charge Teman with aggravated identity theft related to the mobile deposit of the two checks addressed in Count Two. *See* Nov. 22 Tr. at 21, 24–25; *see also* S1 ¶¶ 3–4.

On November 12, 2019, the Government requested that Teman be arraigned at the next

conference on November 22, 2019, and again asked that time be excluded through the

arraignment for purposes of the Speedy Trial Act.  Dkt. 26.  The Court approved that motion.

Dkt. 28.  On November 22, 2019, the Court held a second conference and arraigned Teman on

the Superseding Indictment.  It also excluded time through the trial.  Nov. 22 Tr. at 68–69.  On

November 25, 2019, the Court set briefing schedules for anticipated pretrial motions and

reaffirmed its exclusion of time through the January 21, 2020 trial.  Dkt. 31.

On November 27, 2019, Teman filed several pretrial motions, including, relevant here,

his motion to dismiss for a violation of the Speedy Trial Act, based on the Government's failure

to obtain an indictment of him within 30 days of his arrest.  Def. Mem.  On December 12, 2019,

the Government filed its opposition.  Gov. Mem.  On December 18, 2019, Teman filed his reply.

Dkt. 44 ("Def. Reply").

## II.     Applicable Legal Principles

Section 3161(b) of the Speedy Trial Act provides that "[a]ny . . . indictment charging an

individual with the commission of an offense shall be filed within thirty days from the date on

which such individual was arrested or served with a summons in connection with such charges."

18 U.S.C. § 3161(b).

Designated categories of time, however, are excludable from this 30-day period, as set

out in 18 U.S.C. § 3161(h).  Relevant here, § 3161(h)(1)(E) excludes "delay resulting from any

proceeding relating to the transfer of a case or removal of any defendant from another district

under the Federal Rules of Criminal Procedure."  *Id.* § 3161(h)(1)(E).  Section 3161(h)(1)(F)

excludes delays from the "transportation of any defendant from another district," while providing

that such delay will be presumed unreasonable, and thus not excluded, if it is "in excess of ten

days from the date of an order of removal or an order directing such transportation."  *Id.*

6

§ 3161(h)(1)(F).  The Second Circuit has interpreted § 3161(h)(1)(F), including its presumptive

10-day cap on transportation pursuant to a removal order, to relate only to defendants in custody.

*See United States v. Hernandez*, 863 F.2d 239, 242 (2d Cir. 1988).  Although there is no

corresponding presumptive *per se* cap on excludable time for the transport of defendants not in

custody, § 3161(h)(1)(E) does not allow for "an open-ended period of excludable delay." *See id.*

at 242–43.  When considering a defendant not in custody, a court asks whether delay from an

order directing removal of such defendant to a different district was unreasonable. *See id.* at 243

(holding 17-day delay reasonable).

After eliminating properly excluded time, the court calculates the applicable 30-day

period.  If a complaint has been filed against a defendant but the grand jury has failed to return a

corresponding indictment within that 30-day period, "such charge against that individual

contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1).

Such dismissal may occur with or without prejudice.  Congress did not give either

remedy priority, instead leaving that determination to the discretion of district courts. *See United*

*States v. Taylor*, 487 U.S. 326, 334–35 (1988).  When evaluating the appropriateness of a

dismissal with prejudice, the Speedy Trial Act instructs a court to consider factors such as the

seriousness of the offense, the facts and circumstances that led to dismissal, and the impact of

re-prosecution on the administration of the Act and of justice. 18 U.S.C. § 3162(a)(1).  Even

though not a statutorily enumerated factor, a court should also consider prejudice to the

defendant, as "there is little doubt that Congress intended this factor to be relevant for a district

court's consideration." *Hernandez*, 863 F.2d at 243 (quoting *Taylor*, 487 U.S. at 334).

## III.   Discussion

Teman argues first that the Superseding Indictment should be dismissed because the

Government violated the Speedy Trial Act by failing to return an indictment within 30 days of

his arrest. *See* Def. Mem. at 3–4. He then contends that this dismissal should be with prejudice. *See id.* at 4–11. The Court addresses each argument in turn.

### A.      Speedy Trial Act Violation

The Court first addresses Teman's argument that the Superseding Indictment should be dismissed for failure to comply with the Speedy Trial Act.

#### 1.      Applicability of § 3161(h)(1)(E)

Teman argues that the Government's failure to return an indictment within 30 days of his arrest mandates dismissal. *See* Def. Mem. at 3. The Government responds that the delay in procuring the initial indictment was reasonable under § 3161(h)(1)(E) and that the delay between Teman's initial appearance in the Southern District of Florida on July 8, 2019 and his initial appearance in this District on September 6, 2019 is properly excluded.[2] Gov. Mem. at 7. On this point, the Court holds, with Teman, that the delay was unreasonable.

Under § 3161(b), the Government had 30 days after Teman's arrest to obtain an indictment of him. 18 U.S.C. § 3161(b). Teman was arrested in the Southern District of Florida on July 3, 2019. The Government's 30-day window to indict him therefore closed on August 2, 2019. The Government did not, in fact, indict Teman until September 26, 2019. The indictment thus occurred 85 days after his arrest, and 55 days after the 30-day window closed.[3] As a result, § 3162(a)(1) requires dismissal of the charges in the complaint, unless the 55-day delay can be excluded as reasonable under § 3161(h). *See* 18 U.S.C. § 3162(a)(1).

---

[2] The Government contends that Teman was presented in the Southern District of Florida on July 7, 2019. Gov. Mem. at 7. The docket from the Southern District of Florida reflects that Teman was actually presented on July 8, 2019. No. 19-mj-3082-JJO-1 (S.D. Fla.), Dkt. 3.

[3] The defense contends that the grand jury indicted Teman 98 days after his arrest. Def. Mem. at 7. The Government states that there were 84 days between Teman's arrest and indictment. Gov. Mem. at 6. By the Court's calculation, Teman was first indicted 85 days after his arrest.

The Government argues that much of the delay is excludable under § 3161(h)(1)(E).  *See* Gov. Mem. at 7.  That section addresses delays from proceedings related to the transfer of cases or removal of defendants to different districts under the Federal Rules of Criminal Procedure. 18 U.S.C. §3161(h)(1)(E).  Such a delay may be justified in situations where, as here, a defendant is arrested in a district other than the one that issued the warrant for his arrest, and the defendant must later appear in the latter district.  *Abdallah v. United States*, No. 14 Civ. 4037 (JFB), 2015 WL 7454182, at *8 (E.D.N.Y. Nov. 24, 2015); *see Hernandez*, 863 F.2d at 242–43 (applying then § 3161(h)(1)(G), now § 3161(h)(1)(E), where defendant was arrested in Nevada on a warrant issued in Vermont).  But the delay between a defendant's order of removal in the district of arrest and his initial appearance in the district where he is charged can be excluded only if the delay is reasonable.  *See Abdallah*, 2015 WL 7454182, at *8 (citing *Hernandez*, 863 F.2d at 243–44).  Section 3161(h)(1)(E) does not supply "an open-ended period of excludable delay" when an order of removal is issued.  *Hernandez*, 863 F.2d at 243.

The Government contends that the delay between Teman's appearance in the Southern District of Florida and his initial appearance in this District, 60 days later, was reasonable because the Government had scheduled Teman's appearance in this District on a date that accommodated both his schedule and that of his counsel.  *See* Gov. Mem. at 7.  This argument is not persuasive (and the Government has not claimed, let alone documented, that it discussed with the defense delaying the return of an indictment until Teman appeared in this District).  While a defendant's role in the delay may be considered when analyzing whether the defendant was prejudiced by the delay, a defendant has "no obligation to take affirmative steps to insure that [he will] be tried in a timely manner." *United States v. Bert*, 814 F.3d 70, 82 (2d Cir. 2016) (alteration in original) (quoting *United States v. Tunnessen*, 763 F.2d 74, 79 (2d Cir. 1985)).

A-106

Instead, the Government has an "obligation . . . to obtain promptly the defendant's presence in this district by way of removal." *Hernandez*, 863 F.2d at 243 (internal quotation marks and citation omitted). Here, had the Government been attentive to its Speedy Trial obligations, it could have insisted on an earlier appearance date, sought a continuance under § 3161(h)(7)(A), or mooted the issue by asking the grand jury to return an indictment. It did none of these.

The assembled record instead suggests that the Government was not alert to its Speedy Trial obligations in the context at hand, involving the transfer between districts of an arrested but not yet indicted defendant. At Teman's first conference before this Court, notably, the Government took the position that the Speedy Trial Act was not applicable, and that the Speedy Trial clock did not begin to run until Teman's initial appearance in this District. *See* Oct. 21 Tr. at 23–24. While the good-faith nature of a misapprehension along these lines is relevant to whether a dismissal is to be with or without prejudice, it is not a basis to avoid dismissal for a clear breach of the statute. *See United States v. Falvo*, 598 F. Supp. 873, 874 (E.D.N.Y. 1984) (rejecting, in context of § 3161(c)(1)'s 70-day post-indictment window, Government's argument that Speedy Trial clock re-set upon district transfer and dismissing indictment).

The length of the delay here further compels the Court to find it unreasonable. Courts in this Circuit have countenanced shorter delays under § 3161(h)(1)(E) as reasonable where a defendant is appearing in a district other than that of his arrest, but none have upheld a nearly two-month delay beyond that permitted by the statute. *See Hernandez*, 863 F.2d at 243

10

(excluding 17-day delay as reasonable)[4]; *Abdallah*, WL 2015 WL 7454182, at *8 (same for

seven days)[5]; *United States v. Etwaroo*, No. 07 Cr. 26 (FB), 2008 WL 5435882, at *2 (E.D.N.Y.

Dec. 31, 2008) (same for three days); *United States v. Govan*, No. 98 Cr. 565 (LAP), 1998 WL

889067, at *3 (S.D.N.Y. Dec. 18, 1998) (same for seven days); *United States v. El-Jassem*, Cr.

No. 73-500 (JBW), 1994 WL 45313, at *2 (E.D.N.Y. Feb. 17, 1994) (same for 21 days); *United

States v. Jervey*, 630 F. Supp. 695, 696–97 (S.D.N.Y. 1986) (same for seven days).[6]  As noted,

more than 10 days for a district-to-district transfer of a defendant in custody is presumed

unreasonable. *See Hernandez*, 863 F.2d at 242; *see also Jervey*, 630 F. Supp. at 697 (applying

§ 3161(h)(1)(F)'s presumption and finding unreasonable three-week trip to transport custodial

defendant from California to New York).  Although there is no corresponding presumption of

---

[4] The Government states that, in *Hernandez*, the Circuit excluded a 14-day delay between the defendant's arrest in Nevada and initial appearance in Vermont. Gov. Mem. at 6.  The 14-day delay referenced in *Hernandez* is actually the time that the district court found the Government had exceeded § 3161(b)'s 30-day window for indictment.  *See Hernandez*, 863 F.2d at 243–44. With regard to § 3161(h)(2)(E), the Circuit found that a 17-day delay between an initial appearance in Nevada and the date that the defendant was directed to appear in Vermont was reasonable (although the defendant actually appeared in Vermont one day earlier). *See id.* at 240, 243.

[5] In his reply, Teman faults the Government for relying on *Abdallah*. *See* Def. Reply at 2.  He argues that *Abdallah* is distinguishable because the defendant there was released on bail with instructions to appear in New York seven days later, whereas, here, he did not have instructions to appear in this District on any particular date and the Government did not obtain an indictment "anywhere close to the thirty day-deadline required by the Act." *Id.* at 2–3.  While the shorter scale of delay makes *Abdallah* distinguishable, Teman's distinctions are unconvincing. Although Teman was not instructed to appear on a particular date, he was ordered to appear in this District "at such times and places as may be ordered by that District Court." *See* Order of Removal.

[6] The indicated time in these cases was excluded pursuant to § 3161(h)(1)(E) or its predecessor § 3161(h)(1)(G).  Some of these cases also excluded additional time under § 3161(h)(1)(F) or its predecessor § 3161(h)(1)(H), because the defendants were transported between districts while in custody. *See, e.g.*, *Etwaroo*, 2008 WL 5435882, at *2; *Govan*, 1998 WL 889067, at *3. Teman, however, was not in custody after his initial appearance in Florida.

unreasonableness for a defendant not in custody, such as Teman, the Government has not

directed the Court to any authority that would make the two-month delay here reasonable. *Cf.*

*Falvo*, 598 F. Supp. at 874 (holding eight-month delay unreasonable).

The Court therefore cannot find a § 3161(h)(1)(E) exclusion applicable to the extent

necessary to salvage the Government's cause here. And the Government does not argue that any

other exclusion fits. As a result, the Court holds that the Government exceeded, by an

unreasonable 55 days, its 30-day window provided by § 3161(b) to indict Teman, violating the

Speedy Trial Act.

### 2.       Counts to Dismiss

The remedy for a violation of § 3161(b) is dismissal of the charges contained in the

Complaint. *See* 18 U.S.C. § 3162(a)(1). Teman argues that all four counts of the Superseding

Indictment "fall within the scope" of the bank fraud alleged in the Complaint, and therefore all

four should be dismissed.[7] *See* Def. Mem. at 4. The Government contends that any violation of

the Speedy Trial Act taints only Count One of the Superseding Indictment, as just the conduct

charged in Count One tracks the conduct and charge in the Complaint. *See* Gov. Mem. at 7–8.

On this point, the Court holds with the Government, and will dismiss only Count One.

Section 3161(a)(2)'s dismissal remedy has a "very limited application," applying only to

dismiss "*such* charge against the individual contained in *such* complaint." *United States v.*

*Napolitano*, 761 F.2d 135, 137–38 (2d Cir. 1985) (emphasis in original) (quoting 18 U.S.C.

§ 3162(a)(1)). A court will not dismiss charges that differ from those outlined in the complaint,

even when they "arise from the same criminal episode as those specified in the original

complaint." *United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004) (quoting *Napolitano*, 761

---

[7] Teman states that he is seeking dismissal of the entire Superseding Indictment, or, in the
alternative, dismissal of Count One. Def. Mem. at 1 n.1.

F.2d at 137).  Here, Count One of the Superseding Indictment tracks the charge in the Complaint.
*See* Nov. 22 Tr. at 4–5; Compl. ¶ 6.  Count One charges Teman with bank fraud for his deposit
of 27 allegedly fraudulent checks to a GateGuard account at a Financial Institution 1 branch in
Florida; his transfer of some of those funds to other accounts associated with him; and his
withdrawal of some of those funds at a Financial Institution 1 branch in Manhattan, New York.
*See* Nov. 22 Tr. at 4–6.  That is the same conduct charged in the Complaint.  *See* Compl. ¶ 6.
Count One therefore must be dismissed.

Counts Three and Four, in contrast, clearly are outside the scope of proper dismissal, as
they charge a different offense entirely—aggravated identity theft, not bank fraud.  These counts
relate to the mobile deposits targeted by the bank fraud alleged in Count Two, not the bank fraud
charged in Count One and the Complaint, which involves physical deposits.  *See* Nov. 22 Tr.
at 21.  But even if Counts Three and Four had been factually associated with the scheme
underlying Count One, they would withstand dismissal.  That is because "dismissal is not
warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or
in addition to those necessary to prove crimes pleaded in the complaint," even where "a
complaint charge and an indictment charge involve overlapping or even identical facts."  *Gaskin*,
364 F.3d at 453.  Here, the aggravated identity theft charged in Counts Three and Four requires
proof of elements different from the bank fraud alleged in the Complaint.

As for Count Two, while it—like the Complaint and Count One—charges bank fraud, it
concerns conduct separate from the events on which the Complaint and Count One rest.  The
separate factual bases for these charges save Count Two from dismissal.  Section 3162(a)(1)
allows for dismissal only where the charges in the indictment are "those specifically pleaded in
the complaint."  *Id.* at 452.  Even where "generic elements" alleged by the complaint and

13

relevant count "do not vary," a count is not subject to dismissal where the conduct alleged

materially differs from that alleged in the Complaint. *See United States v. Oberoi*, 547 F.3d 436,

447 (2d Cir. 2008), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010)

(declining to dismiss indictment charge of mail fraud where complaint also charged mail fraud

but did not describe particular mailing, patient, or health plan that were the subject of the fraud).

     Here, Count Two focuses on bank fraud stemming from Teman's alleged mobile

deposits, in March 2019, of two fraudulent checks purportedly from Entities 3 and 4 for a total of

$36,000. *See* Nov. 22 Tr. at 21–24. Count Two alleges that Teman forged the signatures for the

checks and deposited such checks in Manhattan, New York. *See id.* The Complaint and Count

One, on the other hand, are based on Teman's physical deposits, later, in April 2019, of 27

allegedly fraudulent checks from largely different entities—Entities 1, 2, and 3—for $297,000.

*See* Compl. ¶ 6; Oct. 21 Tr. at 10–11. Unlike Count Two, Teman allegedly did not sign these

checks but caused text to be printed on the check that purported to authorize the deposit, and he

completed the deposit in Florida, not New York. *See* Compl. ¶ 6; Oct. 21 Tr. at 10–11.

     The Court "need not define what features would make two charges the same for purposes

of the Speedy Trial Act," because it is clear that Count Two and the Complaint charge different

incidents of bank fraud. *Oberoi*, 547 F.3d at 447. The incidents differ in various ways,

including the physical checks at issue, the amount of money at stake, the purported persons or

entities authorizing the checks, the form of endorsement, the form of deposit, the time of deposit,

and the location of deposit. *Cf. Jervey*, 630 F. Supp. at 696–98 (dismissing charge for mail theft

where defendant stole and deposited the same check described in indictment and complaint, but

declining to dismiss charges related to other checks also stolen from the mail and deposited).

14

Accordingly, the Court dismisses Count One, but not Counts Two, Three, or Four, of the Superseding Indictment.

**B.**       **Dismissal With or Without Prejudice**

The Court next addresses Teman's argument that any dismissal should be with prejudice. *See* Def. Mem. at 4–11.  Congress left this aspect of the remedy for Speedy Trial Act violations to the district court's discretion.  *See Taylor*, 487 U.S. at 335.  In exercising such discretion, the district court must consider four factors: (1) the seriousness of the offense, (2) the facts and circumstances leading to the dismissal of the charge, (3) prejudice to the defendant, and (4) the effect of re-prosecution on the administration of the Speedy Trial Act and of justice.  *See Hernandez*, 863 F.2d at 243.  The Court will discuss each factor in turn.

**1.**       **Seriousness of the Offense**

Teman argues that the bank fraud alleged in Count One is not serious because the Government has charged "a purely civil contractual billing dispute" as a federal crime.  Def. Mem. at 5–6.  Teman's argument boils down to his depiction of his offense as not serious and of the Government's case against him as weak.  *See id.* at 6 ("[E]ven taking the Government's allegations at face value, there was NO cognizable bank fraud.").  Teman is flatly wrong.

The seriousness of the offense is an important factor in the prejudice analysis.  Where the indictment charges a serious offense, it is less likely that the charge will be dismissed with prejudice.  *United States v. Montecalvo*, 861 F. Supp. 2d 110, 114 (E.D.N.Y. 2012); *see also United States v. Slayton*, 791 F.2d 17, 21 (2d Cir. 1986) ("Where the crime charged is serious; the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." (brackets omitted) (quoting *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir. 1986)).  This factor, contrary to Teman's argument, "focuses solely on the charge rather than, e.g., the strength of the government's case or the likely outcome of the proceedings." *United States v. Mancuso*,

302 F. Supp. 2d 23, 26 n.1 (E.D.N.Y. 2004).  The analysis therefore focuses on the charge of

bank fraud and not the likelihood that, at trial, the Government will prevail on that charge.

Bank fraud is undeniably a serious offense.  *United States v. Agugbo*, No. 00 Cr. 94

(RPP), 2000 WL 666341, at *2 (S.D.N.Y. May 22, 2000); *see also United States v. Castle*, 906

F.2d 134, 138 (5th Cir. 1990).  It carries a maximum sentence of 30 years in prison and a

maximum fine of $1 million.  18 U.S.C. § 1344; *see also Agugbo*, 2000 WL 666341, at *2.  And

the instance of bank fraud, as charged, cannot be minimized.  As alleged, it involved a scheme to

defraud a financial institution of $297,000.  *See United States v. Cjo*, 630 F. App'x 83, 86

(2d Cir. 2015) (finding wire fraud serious where victims lost $80,000); *United States v. Alston*,

699 F. Supp. 386, 388 (E.D.N.Y. 1988) (finding conspiracy to commit theft of $300,000

serious); *see also United States v. Solnin*, 81 F. Supp. 3d 193, 202–03 (E.D.N.Y. 2015) (finding

seriousness factor inconclusive where theft involved sums of $8,000 and $5,000, which was

"not, in relative terms, substantial").  The general offense of bank fraud and the specific

allegations regarding the bank fraud here compel finding this a serious offense.

To be sure, courts have been particularly apt to find that violent offenses are serious.  *See,

e.g.*, *United States v. Bert*, 814 F.3d 591, 592 (2d Cir. 2016) (Jacobs, J., dissenting from denial of

rehearing *en banc*) (defendant's offense was serious when he was charged with being a felon in

possession of a loaded firearm that he threw into hallway when police approached).  But violence

is not required for an offense to be serious.  *See Cjo*, 630 F. App'x at 86 ("The nonviolent nature

of this [wire fraud] cannot overcome these indicia of seriousness."); *Montecalvo*, 861 F. Supp. 2d

at 115 ("Although the crime was non-violent in nature, this does not necessarily render it non-

serious.").  Indeed, the required mental-state element of the crime of bank fraud—intent to

defraud—underscores the seriousness of the offense.  *See Agugbo*, 2000 WL 666341, at *2.

16

>    2.    **Facts and Circumstances Surrounding the Delay**

Next, Teman argues that the facts and circumstances surrounding the delay warrant

dismissal with prejudice because the Government waited until July 3, 2019, the day before a

federal holiday, to arrest him, leaving him in custody for a five-day weekend. Def. Mem. at 7.

Further, Teman argues that the Government had "no good reason" to fail to indict within 30

days, and that he played no role in the delay. *Id.* at 7–8. For the reasons described below, these

circumstances surrounding the delay here do not require a dismissal with prejudice.

As to this factor, courts consider a variety of facts and circumstances leading to the delay

at issue. These principally concern the existence of (1) bad faith on the part of the Government,

(2) a lackadaisical attitude from the Assistant United States Attorney ("AUSA"), (3) patterns of

neglect from the United States Attorney's Office ("USAO"), or (4) a long delay in excess of

Speedy Trial deadlines. *See United States v. Zedner*, No. 96 Cr. 285 (TCP), 2006 WL 3050888,

at *3 & n.3 (E.D.N.Y. Oct. 13, 2006). These factors here strongly support dismissal without

prejudice.

First, Teman appears to accuse the Government of bad faith. *See Taylor*, 487 U.S. at 339.

There is simply no evidence for that claim. Teman has presented no reason to infer that that the

Government acted in bad faith or an attempt to gain "a tactical advantage." *Hernandez*, 863 F.2d

at 244. Teman has not substantiated his claim that the date chosen for his arrest (July 3, 2019)

was selected to engineer a longer period in custody. The Court will not lightly impute such a

misanthropic intent to the Government. And Teman's allegation that the Government had "no

good reason" for failing to seek an indictment merely describes the fact of the violation. It does

not describe outsized inattention. On the contrary, although inattentive to the Speedy Trial Act

requirement to seek a timely indictment, the AUSA demonstrably was not lackadaisical or lax

with regard to the case. On the contrary, the AUSA reached out repeatedly to defense counsel

A-114

and indeed accommodated Teman's schedule when setting a date for the initial appearance in this District. *See* Gov. Mem. at 6–7; Def. Mem. at 2 n.2; *cf. United States v. Wells*, 893 F.2d 525, 539 (2d Cir. 1990) (crediting Government attempts to locate and contact defendant).

Second, Teman has also completely failed to present any evidence of a pattern of neglect on the part of the United States Attorney's Office for this District. He has not demonstrated "a cavalier attitude toward speedy trial rights was characteristic" of that Office, and the Court is unaware of any evidence whatsoever that would support such a claim. *United States v. Giambrone*, 920 F.2d 176, 182 (2d Cir. 1990). Teman has not, for example, martialed other Speedy Trial Act cases from this District so as to make "a strong suggestion of a pattern of neglect." *See id.* (citation omitted) (finding pattern of neglect in Western District of New York USAO and dismissing, with prejudice, due to 20-day delay); *cf. Agugbo*, 2000 WL 666341, at *2 (finding no evidence of pattern of neglect at Southern District of New York USAO).

To be sure, the Government's lapse here was regrettable, requiring dismissal. But all indications are that the AUSA was "operating under the good faith belief" that the time from Teman's appearance in Florida to his appearance in New York was excludable, and that the Speedy Trial clock did not begin until his presentation in this District. *See Hernandez*, 863 F.2d at 244; *see also* Oct. 21 Tr. at 23–24. Such good faith is evidenced by the fact that Teman's indictment was returned by the grand jury 20 days after his initial New York appearance. *See Hernandez*, 863 F.2d at 244 (finding AUSA acted in good faith where defendant was indicted within 28 days of his presentment in new district). Far from acting in bad faith or with a pattern of neglect, this appears to be "an isolated unwitting violation" of the Speedy Trial Act, supporting dismissal without prejudice. *Taylor*, 487 U.S. at 339.

18

Finally, the length of delay, which is "firmly established" as "a measure of the seriousness of the speedy trial violation," *Bert*, 814 F.3d at 81 (quoting *Taylor*, 487 U.S. at 340), is not so extreme as to justify the extreme remedy of precluding prosecution on the charge in question.   Here, although the 55 days by which the Government exceeded its 30-day window is not a *de minimis* or trivial delay, it is within the realm of delays that have resulted in dismissal without prejudice.  *See Hernandez*, 863 F.2d at 244 (characterizing 14-day delay as "border[ing] on being *de minimis*").   The Second Circuit has, when considering the context presented by each case, dismissed counts without prejudice for delays ranging from two weeks to more than four months in excess of the Speedy Trial clock.  *See United States v. Wilson*, 11 F.3d 346, 352–53 (2d Cir. 1993) ("at most" 42-day delay); *Wells*, 893 F.2d at 540–41 (32-day delay); *United States v. Kiszewski*, 877 F.2d 210, 214–15 (2d Cir. 1989) (district court found 57-day delay, but Circuit stated that "the number may actually have been as high as 130," with some delay caused by defense counsel's conflict of interest); *Hernandez*, 863 F.2d at 243–44 (14-day delay); *Simmons*, 786 F.2d at 485–86 (four-month delay, where "significant portion of the delay was excludable"). There is no bright-line test for when a delay is sufficiently long to require dismissal with prejudice.  But the 55-day delay here falls short of being of such "sheer length" as to be a "dominating consideration" dictating that extreme outcome.  *See Slayton*, 791 F.2d at 21–22 (dismissing with prejudice for 23-month delay); *see also Montecalvo*, 861 F. Supp. 2d at 117 (same for four-year delay); *Mancuso*, 302 F. Supp. 2d at 27 (same for three-year delay).  The Court here, finding a lack of bad faith or a pattern of negligence, finds that the facts and circumstances surrounding the violation here do not warrant dismissal with prejudice.

### 3.    Prejudice to the Defendant

Teman claims next that he has been "severely prejudiced" because of the Government's delay in seeking an indictment.  Def. Mem. at 10.  He notes that until he was indicted and

arraigned he lacked subpoena power; that he spent five days in custody; and that the pending

charge subjected him to bail conditions and collateral consequences. *See id.* at 10–11. The

Court, however, does not find the circumstances alleged to persuasively show prejudice.

    The Second Circuit has identified two types of prejudice: (1) trial prejudice, and (2) non-

trial prejudice. *Bert*, 814 F.3d at 82.

    Trial prejudice diminishes a defendant's ability to present a defense at trial. *Id.* Teman

argues that he experienced such prejudice because he was unable to obtain by subpoena relevant

surveillance footage from third parties until he was arraigned. Def. Mem. at 11. Teman's claim

is wrong. Under Federal Rule of Criminal Procedure 17(c)(3), for example, he had the ability to

seek court approval for such a subpoena after his "*complaint*, indictment, or information was

filed." Fed. R. Crim. P. 17(c)(3) (emphasis added). There is no evidence that Teman did so.

After the Government raised this point in its opposition, *see* Gov. Mem. at 12, Teman offered no

response in his reply. The Court finds no trial prejudice.[8]

    Non-trial prejudice is delay that "may seriously interfere with a defendant's liberty,

whether he is free on bail or not," and may also, *inter alia*, "disrupt his employment, drain his

financial resources, curtail his associations, subject him to public obloquy, and create anxiety."

*Bert*, 814 F.3d at 82 (quoting *Taylor*, 487 U.S. at 340–41). Teman has pointed to his five days in

custody after his arrest and before his first appearance in Florida, his conditions of release, and

collateral consequences associated with a federal charge. These do not suffice to establish the

requisite prejudice.

---

[8] Teman, while so claiming, has also failed to establish that any materials he might wish to
subpoena became unavailable during the period between arrest and indictment.

20

First, as to the five days in custody, they are unrelated to the delay at issue here.  His time in custody preceded his appearance in Florida.  And between that appearance and his indictment, Teman was not in custody.  His detention in Florida prior to his appearance there was unrelated to the subsequent decision by prosecutors in New York not to seek an indictment within 30 days of his arrest.  Teman cannot claim relevant prejudice as a result of his time in custody.

Second, as to the conditions of release and collateral consequences, Teman has not identified any specific condition or collateral consequence that has caused him concrete prejudice.  And Teman presumably would have been subjected to the same or similar restrictions following indictment.  *See Taylor*, 487 U.S. at 341 (finding no prejudice where defendant was also being held on separate charges that were not associated with a Speedy Trial Act violation).

The length of delay is also relevant to the prejudice analysis.  *Id.* at 340.  "The longer the delay, the greater the presumptive or actual prejudice to the defendant."  *Id.*  As noted, the 55-day delay, while not minimal, is also not so long as to be clearly prejudicial, particularly insofar as Teman was not in custody.  Relevant too, while Teman had no obligation to take affirmative steps to ensure that he would be tried in a timely manner, he did nothing to mitigate this situation, and instead sought and obtained the agreement of the AUSA to delays in the date of his appearance.  *Cf. Taylor*, 487 U.S. at 340 (considering defendant's failure to appear as contributing to delay); *Wells*, 893 F.2d at 539 (same).  The deferral of Teman's initial appearance—to which the Government agreed at Teman's request—likely played an informal role in the Government's decision as to when to pursue an indictment.  *Cf. Wells*, 893 F.2d at 539 ("quite likely" that defendant's failure to appear for his initial hearing in transferee district contributed to delay in indictment).

For all these reasons, the Court finds only minimal prejudice.

#### 4.    Impact of Re-Prosecution

Finally, Teman argues that re-prosecution would not serve well the administration of the Speedy Trial Act or the administration of justice because the bank fraud should not have been prosecuted in the first place. Def. Mem. at 9. Here, Teman regurgitates many of his earlier arguments that the offense was not serious—he contends that his was a civil billing dispute, which the Government failed to investigate within the 30-day period. *See id.* at 9–10. These arguments are totally unconvincing.

Under this factor, the court should consider the impact of re-prosecution on the administration of the Speedy Trial Act and of the cause of justice, including whether re-prosecution might disserve the societal interest in prompt adjudication. *See Bert*, 814 F.3d at 83. "[I]f the defendant is innocent, he has an interest in early vindication; and if he is guilty, the public has an interest in expeditious punishment . . . ." *Giambrone*, 920 F.2d at 181. The Speedy Trial Act is intended to help serve this goal by "avoiding extended pretrial delays," encouraging "the deterrent effect of punishment," and decreasing the "risk [of] loss of important evidence." *Bert*, 814 F.3d at 83 (citations omitted). Violations of the Speedy Trial Act's time limits negatively impact the administration of the Act and of justice. *See id.* Dismissing with prejudice "always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *Taylor*, 487 U.S. at 342. However, the Supreme Court has been clear that the Act does not require that remedy in every situation. *See id.* And, dismissal without prejudice is not "a toothless sanction"; if it were, Congress would not have included it as a remedy for Speedy Trial Act violations. *Kiszewski*, 877 F.2d at 214 (quoting *Taylor*, 487 U.S. at 342). Thus, there are thus many cases in which a dismissal without prejudice better serves the administration of the Act and of justice.

22

Such is the case here. In considering whether re-prosecution serves the interests in the swift administration of justice, courts may again consider any bad faith, lax attitude, or pattern of neglect from the government. *See Wilson*, 11 F.3d at 352. This is because "the more egregious the Government's role in the violation and the more severe the delay, the more dismissal with prejudice is warranted." *Montecalvo*, 861 F. Supp. 2d at 118 (citation omitted). Here, for the reasons discussed, there is no basis on which to find that the Government acted in bad faith or in accordance with a pattern of neglect to manipulate the system or delay justice. The assigned AUSA appears simply to have acted on the good faith but mistaken belief that the Speedy Trial clock did not begin to run until Teman's appearance in this District. *See* Oct. 21 Tr. at 23–24. While "the Government bears some responsibility for the Speedy Trial Act violation[]" here, such a violation will be "adequately redressed by requiring the Government to seek another indictment." *Wilson*, 11 F.3d at 353. And the corresponding harm to the interest of justice caused by a dismissal with prejudice—which would allow Teman permanently to escape criminal liability for a nearly $300,000 bank fraud on which a grand jury has found probable cause of his guilt—strongly outweighs any interest conceivably served by a dismissal with prejudice. *See United States v. Munlyn*, 607 F. Supp. 2d 394, 401 (E.D.N.Y. 2009) ("[W]hen the charged crime is a serious one, permitting the government to re-file the indictment benefits the administration of justice as a whole." (citing *Kiszewski*, 877 F.2d at 214)); *see also Bert*, 814 F.3d at 593 (Jacobs, J., dissenting from denial of rehearing *en banc*).

The Court accordingly holds that a dismissal of Count One, without prejudice, is warranted.

A-120

**CONCLUSION**

For the foregoing reasons, the Court dismisses Count One of the Superseding Indictment,

without prejudice.  The Clerk of Court is respectfully directed to close the motion pending at

docket 33.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: December 20, 2019
       New York, New York

24

A-121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -   X
                              :
UNITED STATES OF AMERICA      :    SECOND
                              :    SUPERSEDING
        - v. -                :    INDICTMENT
                              :
ARI TEMAN,                    :    S2 19 Cr. 696 (PAE)
                              :
        Defendant.            :
                              :
- - - - - - - - - - - - - -   X

## COUNT ONE
### (Bank Fraud)

The Grand Jury charges:

1.    From at least in or about April 2019 up to and
including at least in or about June 2019, in the Southern
District of New York and elsewhere, ARI TEMAN, the defendant,
willfully and knowingly, did execute and attempt to execute a
scheme and artifice to defraud a financial institution, the
deposits of which were then insured by the Federal Deposit
Insurance Corporation, and to obtain moneys, funds, credits,
assets, securities, and other property owned by, and under the
custody and control of, such financial institution, by means of
false and fraudulent pretenses, representations, and promises,
to wit, TEMAN deposited counterfeit checks in the name of three
third parties (respectively, "Entity-1," "Entity-2," and
"Entity-3") into an account held at a particular financial

institution ("Financial Institution-1"), and subsequently
attempted to and did use those funds for his personal benefit.

(Title 18, United States Code, Section 1344.)

**COUNT TWO**
**(Bank Fraud)**

The Grand Jury further charges:

2.    In or about March 2019, in the Southern District of
New York and elsewhere, ARI TEMAN, the defendant, willfully and
knowingly, did execute and attempt to execute a scheme and
artifice to defraud a financial institution, the deposits of
which were then insured by the Federal Deposit Insurance
Corporation, and to obtain moneys, funds, credits, assets,
securities, and other property owned by, and under the custody
and control of, such financial institution, by means of false
and fraudulent pretenses, representations, and promises, to wit,
TEMAN deposited counterfeit checks in the name of Entity-3 and
another third party ("Entity-4") into an account held at
Financial Institution-1, and subsequently attempted to and did
use those funds for his personal benefit.

(Title 18, United States Code, Section 1344.)

**COUNT THREE**
**(Wire Fraud)**

The Grand Jury further charges:

3.    From at least in or about April 2019 up to and
including at least in or about June 2019, in the Southern

2

A-123

District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing funds from accounts belonging to "Entity-1," "Entity-2," and "Entity-3" and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

(Title 18, United States Code, Section 1343.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

4.   In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of

wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing funds from accounts belonging to Entity-3 and Entity-4 and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

(Title 18, United States Code, Section 1343.)

## COUNT FIVE
### (Aggravated Identity Theft)

The Grand Jury further charges:

5.    In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, did knowingly transfer, possess, and use, without lawful authority a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, during and in relation to the bank fraud charged in Count Two of this Indictment, TEMAN deposited a check using the personal identifying information of an individual associated with Entity-3.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

4

## COUNT SIX
### (Aggravated Identity Theft)

The Grand Jury further charges:

6.    In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, did knowingly transfer, possess, and use, without lawful authority a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, during and in relation to the bank fraud charged in Count Two of this Indictment, TEMAN deposited a check using the personal identifying information of an individual associated with Entity-4.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## FORFEITURE ALLEGATION

7.    As a result of committing the offenses alleged in Counts One and Two of this Indictment, ARI TEMAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

8.    As a result of committing the offenses alleged in

5

Counts Three and Four of this Indictment, ARI TEMAN, the

defendant shall forfeit to the United States, pursuant to Title

18, United States Code, Section 981(a)(1)(C) and Title 28 United

States Code, Section 2461(c), any and all property, real and

personal, that constitutes or is derived from proceeds traceable

to the commission of said offenses, including but not limited to

a sum of money in United States currency representing the amount

of proceeds traceable to the commission of said offenses.

### Substitute Asset Provision

9.    If any of the above-described forfeitable property, as

a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due

diligence;

b.    has been transferred or sold to, or deposited

with, a third party;

c.    has been placed beyond the jurisdiction of the

court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 982(b)(1), Title 21, United States

Code, Section 853(p) and Title 28, United States Code, Section

6

2461(c), to seek forfeiture of any other property of the

defendant up to the value of the forfeitable property described

above.

                    (Title 18, United States Code, Section 981;
                     Title 18, United States Code, Section 982;
                   Title 21, United States Code, Section 853; and
                    Title 28, United States Code, Section 2461.)


FOREPERSON                                    GEOFFREY S. BERMAN
                                              United States Attorney


7

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

v.

**ARI TEMAN,**

**Defendant.**

**SECOND**
**SUPERSEDING**
**INDICTMENT**

S2 19 Cr. 696 (PAE)

(18 U.S.C. §§ 1028A, 1343, 1344.)

GEOFFREY S. BERMAN
United States Attorney

_Foreperson_   1/3/20

Filed Superseding Indictment

1/3/2020

Stewart D Aaron
U.S.M.J.