# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of June, two thousand twenty-three.

Present:

> JOHN M. WALKER, JR.,
> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v. 21-1920-cr

ARI TEMAN,

> *Defendant-Appellant*.[1]

---

| | |
|---|---|
| For Appellee: | KEDAR S. BHATIA (David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant: | EDEN P. QUAINTON, Quainton Law, PLLC, New York, NY. |

---

[1] The Clerk of Court is respectfully directed to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Ari Teman appeals from a judgment in a criminal case entered on July 29, 2021, in the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*). On January 29, 2020, a jury convicted Teman of two counts of bank fraud in violation of 18 U.S.C. § 1344 and two counts of wire fraud in violation of 18 U.S.C. § 1343. At trial, the government presented evidence that Teman had created and deposited unauthorized checks in the names of four customers of his business, GateGuard, which sold apartment building intercom systems. Teman deposited two such checks, totaling $18,000, on March 28, 2019, and 27 such checks, totaling $297,000, on April 19, 2019. Count Two (bank fraud) and Count Four (wire fraud) relate to the March 2019 checks and Count One (bank fraud) and Count Three (wire fraud) relate to the April 2019 checks. On July 28, 2021, the district court sentenced Teman to a year and a day in prison and three years of supervised release. The court ordered $333,000 in forfeiture penalties, $259,340.32 in restitution, and a mandatory $400 special assessment. The court entered judgment on July 29, 2021. Teman now appeals. We assume the parties' familiarity with the case.

Teman first argues that there was insufficient evidence of venue in the Southern District of New York for any of the four charges. This court reviews venue determinations *de novo*. *United States v. Kirk Tang Yuk*, 885 F.3d 57, 71 (2d Cir. 2018). "Both the Sixth Amendment and Fed. R. Crim. P. 18 require that a defendant be tried in the district where his crime was committed." *United*

*States v. Rutigliano*, 790 F.3d 389, 395 (2d Cir. 2015) (internal quotation marks omitted). The government must prove venue "by a preponderance of the evidence." *United States v. Hoskins*, 44 F.4th 140, 157 (2d Cir. 2022) (internal quotation marks omitted). "Where the Government has prevailed at trial, we review the sufficiency of the evidence as to venue in the light most favorable to the Government, crediting every inference that could have been drawn in its favor." *Id*. (internal quotation marks omitted). In fraud cases, venue is proper "in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003).

The evidence of venue was sufficient for all four Counts. As to Counts Two and Four (the March 2019 checks), the government introduced bank records showing that Teman deposited the checks from a cell phone associated with an IP address traceable to Manhattan. A Bank of America employee testified that the IP address data showed "a distinct location in which an online banking login is being conducted." App'x at 339–40. Teman argues that the address might correspond to the location of the bank server processing the deposit or the location of the node through which the mobile device had been routed to the internet. But viewing the evidence in the light most favorable to the government, a reasonable juror could have concluded that the preponderance of the evidence demonstrated that Teman made the deposits in Manhattan.

Venue was proper on Counts One and Three (the April 2019 checks) because employees of Signature Bank, which held an account on which some of the checks were drawn, reviewed the checks for fraud in Manhattan. This review was an act "in furtherance of the scheme to defraud," because Teman needed the bank to approve the checks to gain access to the full amount. *See United States v. Vilar*, 729 F.3d 62, 95 (2d Cir. 2013). It is immaterial that Signature Bank's

employees intended to defeat, not further, fraud, because even acts of third parties unaware of the attempted fraud can be made part of the fraudulent scheme by the defendant. *See, e.g., United States v. Kim*, 246 F.3d 186, 192–93 (2d Cir. 2001) (wire fraud venue proper in the Southern District of New York where the defendant could reasonably have foreseen that his fraud would cause his employer to direct Chase Manhattan Bank to initiate a wire transfer).

Teman argues that he could not have reasonably foreseen that the fraudulent checks would be processed by Signature Bank in Manhattan. We disagree. The checks listed Signature Bank's address as 485 Madison Ave., 11th Floor, New York, NY 10022, and Teman knew by April that the March checks had been flagged for fraud, so it was reasonable to foresee that Signature Bank would flag and review the April checks as well. *See Svoboda,* 347 F.3d at 483 (venue proper in the Southern District where the defendant could have reasonably foreseen that his trade would be executed on the New York Stock Exchange).[2]

Teman also argues that the government constructively amended the indictment by arguing to the jury that Teman had presented the banks with "unauthorized" checks—that is, facially valid checks he falsely claimed had been authorized by his customers—rather than "counterfeit" checks, as the indictment alleged. We review claims for constructive amendment to indictments *de novo*. *United States v. Dove*, 884 F.3d 138, 145 & 148 (2d Cir. 2018). We are not persuaded. To establish a constructive amendment, Teman must demonstrate that "the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether

---

[2] Teman also argues that the fraud review cannot establish venue because the fraud was complete when he deposited the checks in Miami. But "a scheme to defraud is not complete until the proceeds have been received." *Rutigliano*, 790 F.3d at 397 (internal quotation marks omitted). And while Teman claims that the account on which the Signature checks had been drawn had been closed before Teman was able to access any of the funds, the evidence established that the fraud review was a critical part of the scheme because it took place while Bank of America had placed a hold on the deposited funds in GateGuard's account.

4

the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021) (internal quotation marks omitted). "[C]ourts have constantly permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 310 (2d Cir. 2009) (emphasis and internal quotation marks omitted). As an initial matter, the definition of "counterfeit" covers the government's theory. *See* Black's Law Dictionary (11th ed. 2019) (defining "counterfeit" to mean, among other things, "to possess . . . an item without authorization and with the intent to deceive or defraud by presenting the item as genuine"). Even if "counterfeit" did not include "unauthorized," the government's case at trial, and the district court's jury instructions, would still have fallen well within the core of criminality alleged in the indictment. *See, e.g., United States v. D'Amelio*, 683 F.3d 412, 416, 421–22 (2d Cir. 2012) (no constructive amendment where jury was instructed it could find the defendant guilty of attempted enticement of a minor based on his use of either the telephone or the internet when the indictment specified only the internet because, whether he used the telephone or the internet, his communications "took place as part of a single course of [fraudulent] conduct" (internal quotation marks omitted)). There is also no indication that Teman was "surprised" by the government's theory of the case at trial, which "is further indication that the [evidence was] encompassed in the core of criminality charged in the indictment." *Id*. at 422 (internal quotation marks omitted). On several occasions before the trial, the government explained its theory that Teman had deposited "unauthorized" checks.

Teman challenges the verdict form, arguing that the district court's failure to require the jury to specify which customers they found had been defrauded may have resulted in Teman being sentenced on an erroneous factual predicate. He argues that because both the March and April

5

deposits contained checks in the name of 518 West 204, LLC, the jury could have convicted on all four counts if the jurors believed that the other companies had authorized the checks, but that 518 West had not—and that in that scenario, the jury would have found Teman had committed only part of the fraud, but he would be punished for the whole thing. Teman did not request a special verdict form below, so we review for plain error. *See United States v. Shaoul*, 41 F.3d 811, 817 (2d Cir. 1994). Teman cannot show that any error was "so plain that the trial judge and prosecutor were derelict in countenancing it" because his proposed jury form would have made no difference. *Id*. (cleaned up). The district court instructed the jury that it must find unanimously that the elements of each offense had been met with respect to at least one applicable entity. Once the jury had found that Teman had defrauded at least one of the companies, the district court was entitled to consider the evidence of the entire fraud as relevant conduct at sentencing. *See* U.S.S.G. § 1B1.3(a) (relevant conduct includes acts taken in the course of commission of the offense of conviction).

Teman next argues that his trial attorneys were ineffective because they called as a defense witness Teman's and GateGuard's corporate counsel, Ariel Reinitz, opening the door to damaging text messages between Teman and Reinitz. This claim is premature. "[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because the trial record "in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis." *Massaro v. United States*, 538 U.S. 500, 504 (2003). That is true here, since the record is not sufficiently developed to allow for appellate review. In the district court, the claim was raised only orally, at a post-sentencing hearing. Teman's trial counsel thus did not have a chance to explain the strategy behind the decision to call Reinitz, and a court facing an ineffective assistance claim "should, except in highly unusual circumstances, offer the assertedly

6

ineffective attorney an opportunity to be heard and to present evidence." *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998). Teman may present this claim in a § 2255 motion.

There is nothing to Teman's argument that Judge Engelmayer was required to recuse himself, a claim that we review for abuse of discretion. *Sacerdote v. New York University*, 9 F.4th 95, 121 (2d Cir. 2021). Teman points to Judge Engelmayer's disclosed holding in Berkshire Hathaway, which in turn owns stock in Bank of America, the victim in this case. But such an ownership interest "in a mutual or common investment fund that holds securities" does not require recusal because it "is not a 'financial interest' in such securities unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i). Moreover, the interest Teman alleges Judge Engelmayer *indirectly* held in Bank of America amounted to approximately 0.00075 percent of the bank's $265 billion market capitalization during the relevant timeframe, a stake that could not be meaningfully affected by the $259,340.32 in restitution the district court ordered. *See United States v. Ravich*, 421 F.2d 1196, 1205 (2d Cir. 1970) (ownership interest of 0.0072 percent "not merely unsubstantial but non-existent"). And indirect financial interests such as this one do not require recusal or disqualification. *See United States v. Thompson*, 76 F.3d 442, 451 (2d Cir. 1996) ("[R]emote, contingent, indirect or speculative interests" do not require recusal). Here, there is no direct financial interest in a party to the litigation and there is no doubt that Judge Engelmayer promptly disclosed the interest in an "excess of caution" once he learned that the parties disputed Bank of America's entitlement to restitution. App'x at 2223.

Teman also argues that Judge Engelmayer displayed impermissible bias against him, but we can discern no impropriety in the district court's conduct. Teman points to the district court's memorialization of a brief and inconsequential *ex parte* communication with the government, but we find no prejudice, and such a communication "does not require reversal if it does not affect the

fairness of the trial." *United States v. Walsh*, 700 F.2d 846, 858 (2d Cir. 1983). Teman also complains of the court's comment that he timed his deposits of the checks for the eve of Passover to ensure that his counterparties, observant Jews, would not be able to contest the checks for the next two days. But the court's observation was an "opinion[] formed by the judge on the basis of facts introduced . . . in the course of the current proceedings," which does not provide a basis for recusal. *Liteky v. United States*, 510 U.S. 540, 555 (1994). That opinion was, moreover, reasonable: Teman had told one of his clients, "I will . . . place a lien on your building on Pessach," and the checks were, in fact, deposited on the eve of Passover. App'x at 1820. Finally, the district court did not err in failing to hold a hearing under *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), after a post-trial lawyer with an arguable conflict appeared for Teman. The court raised the issue *sua sponte* at the next conference and directed Teman to confer with independent counsel; later that day, Teman terminated the representation of the law firm at issue.[3] Because nothing significant transpired in the case between the attorney's appearance and his dismissal, Teman was not prejudiced.

---

[3] There is likewise no merit to Teman's accusations of prosecutorial misconduct. Teman accuses the government of, *inter alia*, (1) "sandbagging" the defense by turning over documents at the last minute, (2) relying on an affidavit containing an allegedly false statement, (3) failing to disclose supposedly exculpatory evidence, and (4) appealing to antisemitic biases by portraying him as a "bad Jew." Appellant's Br. 71–72, 77. He raised none of these arguments below, so we review only for plain error, a standard Teman cannot satisfy. *Johnson v. United States*, 520 U.S. 461, 466–67 (1997). He does not explain how the late production prejudiced him; why the allegedly false statement in the affidavit did not merely go to credibility; why the government was obliged to introduce the allegedly exculpatory evidence; or how the government raised the specter of antisemitism by noting that he deposited the April checks on the eve of Passover, when it was Teman himself who had threatened to place a lien on the victim's building "on Pessach." App'x at 1820.

We have considered Teman's remaining arguments and find them unpersuasive. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of the Court